*Appeal No. 21-11521-G*

_____

*In the*
United States Court of Appeals
*For the*
Eleventh Circuit

_____

OJ COMMERCE LLC, and
NAOMI HOME, INC.,
*Plaintiffs-Appellants,*
vs.
KIDKRAFT, INC., and
MID-OCEAN PARTNERS IV, L.P.,
*Defendants-Appellees*

_____

On Appeal from the United States District Court
for the Southern District of Florida
Hon. Marcia G. Cooke
Case No. 19-60341-Civ-COOKE/SNOW

**PLAINTIFFS-APPELLANTS' PUBLIC APPENDIX**

Velvel (Devin) Freedman
Constantine Economides
ROCHE FREEDMAN LLP
P.O. Box 654139
Miami, Florida 33265

Shlomo Y. Hecht
SHLOMO Y. HECHT, PA
3076 N. Commerce Pkwy
Pembroke Pines, FL 33025

*Attorneys for Plaintiffs-Appellants*

# INDEX of APPENDIX

## PUBLIC PORTION OF THE APPENDIX

| Description of Document | Docket/Tab # |
|---|---|
| District Court Docket Sheet | A |
| Complaint | 1 |
| Exhibit A to the Complaint | 1-1 |
| Defendants' Answer to Plaintiffs' Complaint | 72 |
| Defendants' Motion for Summary Judgment (Redacted) | 130 |
| Order on Defendants' Motion for Summary Judgment | 255 |
| Plaintiffs' Notice of Appeal | 256 |

# A – DOCKET SHEET

**U.S. District Court**
**Southern District of Florida (Ft Lauderdale)**
**CIVIL DOCKET FOR CASE #: 0:19-cv-60341-MGC**

OJ Commerce LLC et al v. KidKraft, Inc. et al
Assigned to: Judge Marcia G. Cooke
Referred to: Magistrate Judge Lurana S. Snow
Case in other court: 21-11521-G
Cause: 15:0001 Antitrust Litigation

Date Filed: 02/07/2019
Date Terminated: 03/31/2021
Jury Demand: Plaintiff
Nature of Suit: 410 Anti-Trust
Jurisdiction: Federal Question

**Plaintiff**

**OJ Commerce LLC**                    represented by    **Robert George Keefe**
Boies Schiller Flexner LLP
100 SE 2nd Street
Ste. 2800
Miami, FL 33131
3055398400
Email: rkeefe@bsfllp.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Carl Edward Goldfarb**
Boies Schiller & Flexner
401 E Las Olas Boulevard
Suite 1200
Fort Lauderdale, FL 33301
954-356-0011
Fax: 356-0022
Email: cgoldfarb@bsfllp.com
*ATTORNEY TO BE NOTICED*

**Constantine Philip Economides**
Roche Cyrulnik Freedman LLP
200 S. Biscayne Blvd.
Suite 5500
Miami, FL 33131
805-886-5256
Email: ceconomides@rcfllp.com
*ATTORNEY TO BE NOTICED*

**Mark A Schweikert**
Schweikert Law PLLC
90 SW 3rd Street, #700B
Miami, FL 33130
305 926 9452
Email: mark@schweikertlaw.com
*ATTORNEY TO BE NOTICED*

**Shlomo Y Hecht**
Shlomo Y Hecht PA
3076 N Commerce Parkway
Miramar, FL 33025
9548610025
Email: sam@hechtlawpa.com
*ATTORNEY TO BE NOTICED*

**Devin Freedman**
Roche Cyrulnik Freedman LLP
200 South Biscayne Blvd.
Suite 5500
Miami, FL 33131
305-357-3861
Email: vel@rcfllp.com
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Naomi Home, Inc.**                    represented by **Robert George Keefe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Constantine Philip Economides**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark A Schweikert**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Shlomo Y Hecht**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Devin Freedman**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

<u>**Defendant**</u>

**KidKraft, Inc.**                    represented by **Alexandra M. Mora**
Akerman LLP
Brickell City Centre
98 Southeast 7th Street
Suite 1100
Miami, FL 33131
305-374-5600
Fax: 305-374-5095
Email: alexandra.mora@akerman.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Lawrence Dean Silverman**
Akerman LLP
Three Brickell City Centre
98 SE 7th Street, Suite 1100
Miami, FL 33131
305-374-5600
Fax: 305-374-5095
Email: lawrence.silverman@akerman.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Barbara Joy Riesberg**
RiesbergLaw
2601 South Bayshore Drive
Suite 1100
Miami, FL 33133
305-371-9617
Fax: 1-305-397-2194
Email: barbara@baileyduquette.com
*ATTORNEY TO BE NOTICED*

**Joshua Lipton**
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
(202) 955-8226
Email: jlipton@gibsondunn.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott K. Hvidt**
Gibson, Dunn & Crutcher LLP
2100 McKinney Avenue
Dallas, TX 75201
214-698-3317
Email: shvidt@gibsondunn.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **MidOcean Partners IV, L.P.** | represented by | **Alexandra M. Mora** |

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lawrence Dean Silverman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua Lipton**
(See above for address)

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*


**Scott K. Hvidt**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/07/2019 | 1 | COMPLAINT against All Defendants. Filing fees $ 400.00 receipt number 113C-11378239, filed by OJ Commerce LLC, Naomi Home, Inc... (Attachments: # 1 Exhibit A, # 2 Civil Cover Sheet, # 3 Summon(s) KidKraft LP, # 4 Summon(s) Mid-Ocean Partners LP)(Freedman, Devin) (Entered: 02/07/2019) |
| 02/07/2019 | 2 | Clerks Notice of Judge Assignment to Judge Marcia G. Cooke. Pursuant to 28 USC 636(c), the parties are hereby notified that the U.S. Magistrate Judge Patrick M. Hunt is available to handle any or all proceedings in this case. If agreed, parties should complete and file the Consent form found on our website. It is not necessary to file a document indicating lack of consent. Pro se (NON-PRISONER) litigants may receive Notices of Electronic Filings (NEFS) via email after filing a Consent by Pro Se Litigant (NON-PRISONER) to Receive Notices of Electronic Filing. The consent form is available under the forms section of our website. (bb) (Entered: 02/08/2019) |
| 02/08/2019 | 3 | Summons Issued as to Kidkraft LP, Mid-Ocean Partners LP. (bb) (Entered: 02/08/2019) |
| 02/22/2019 | 4 | ORDER OF REFERRAL AND ORDER REGARDING COURT PRACTICES AND PROCEDURES. Signed by Judge Marcia G. Cooke on 2/22/2019. *See attached document for full details.* (kou) (Entered: 02/22/2019) |
| 02/26/2019 | 5 | NOTICE of Attorney Appearance by Alexandra M. Mora on behalf of Kidkraft LP, Mid-Ocean Partners LP. Attorney Alexandra M. Mora added to party Kidkraft LP(pty:dft), Attorney Alexandra M. Mora added to party Mid-Ocean Partners LP(pty:dft). (Mora, Alexandra) (Entered: 02/26/2019) |
| 02/26/2019 | 6 | Unopposed MOTION for Extension of Time to Respond to Complaint re 1 Complaint, by Kidkraft LP, Mid-Ocean Partners LP. Responses due by 3/12/2019 (Attachments: # 1 Text of Proposed Order Proposed Order)(Mora, Alexandra) (Entered: 02/26/2019) |
| 02/26/2019 | 7 | NOTICE of Attorney Appearance by Lawrence Dean Silverman on behalf of Kidkraft LP, Mid-Ocean Partners LP. Attorney Lawrence Dean Silverman added to party Kidkraft LP(pty:dft), Attorney Lawrence Dean Silverman added to party Mid-Ocean Partners LP(pty:dft). (Silverman, Lawrence) (Entered: 02/26/2019) |
| 02/26/2019 | 8 | Corrected MOTION for Extension of Time to Respond to Complaint re 1 Complaint, by Kidkraft LP, Mid-Ocean Partners LP. Responses due by 3/12/2019 (Attachments: # 1 Text of Proposed Order Proposed Order)(Mora, Alexandra) (Entered: 02/26/2019) |
| 02/26/2019 | 9 | ENDORSED ORDER denying as moot 6 Motion for Extension of Time. Signed by Judge Marcia G. Cooke on 2/26/2019. (kou) (Entered: 02/26/2019) |
| 02/26/2019 | 10 | ENDORSED ORDER granting 8 Motion for Extension of Time. Defendants shall file a response/answer to the 1 complaint on or before April 1, 2019. Signed by Judge Marcia G. Cooke on 2/26/2019. (kou) (Entered: 02/26/2019) |

| 02/26/2019 | | Set/Reset Answer Due Deadline: Kidkraft LP response due 4/1/2019; Mid-Ocean Partners LP response due 4/1/2019. SEE DE 10 ORDER (ail) (Entered: 02/27/2019) |
|---|---|---|
| 04/01/2019 | 11 | Corporate Disclosure Statement by Kidkraft LP (Silverman, Lawrence) (Entered: 04/01/2019) |
| 04/01/2019 | 12 | Corporate Disclosure Statement by Mid-Ocean Partners LP (Silverman, Lawrence) (Entered: 04/01/2019) |
| 04/01/2019 | 13 | Defendant's MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Joshua Lipton. Filing Fee $ 75.00 Receipt # 113C-11520999 by Kidkraft LP, Mid-Ocean Partners LP. Responses due by 4/15/2019 (Silverman, Lawrence) (Entered: 04/01/2019) |
| 04/01/2019 | 14 | Defendant's MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Scott K. Hvidt. Filing Fee $ 75.00 Receipt # 113C-11521041 by Kidkraft LP, Mid-Ocean Partners LP. Responses due by 4/15/2019 (Silverman, Lawrence) (Entered: 04/01/2019) |
| 04/01/2019 | 15 | Defendant's MOTION to Dismiss with Prejudice 1 Complaint, by Kidkraft LP, Mid-Ocean Partners LP. Responses due by 4/15/2019 (Silverman, Lawrence) (Entered: 04/01/2019) |
| 04/15/2019 | 16 | RESPONSE in Opposition re 15 Defendant's MOTION to Dismiss with Prejudice 1 Complaint, filed by Naomi Home, Inc., OJ Commerce LLC. Replies due by 4/22/2019. (Freedman, Devin) (Entered: 04/15/2019) |
| 04/22/2019 | 17 | REPLY to Response to Motion re 15 Defendant's MOTION to Dismiss with Prejudice 1 Complaint, filed by Kidkraft LP, Mid-Ocean Partners LP. (Mora, Alexandra) (Entered: 04/22/2019) |
| 05/02/2019 | 18 | MOTION to Stay *Discovery Pending The Court's Determination of their Motion to Dismiss* by Kidkraft LP, Mid-Ocean Partners LP. Responses due by 5/16/2019 (Mora, Alexandra) (Entered: 05/02/2019) |
| 05/06/2019 | 19 | ENDORSED ORDER REFERRING CASE to Magistrate Judge Patrick M. Hunt for Pretrial Non-Dispositive Matters. Signed by Judge Marcia G. Cooke on 5/6/2019. (kou) (Entered: 05/06/2019) |
| 05/06/2019 | 20 | ORDER denying 18 Motion to Stay. Signed by Judge Marcia G. Cooke on 5/6/2019. *See attached document for full details.* (kou) (Entered: 05/06/2019) |
| 05/07/2019 | 21 | NOTICE of Attorney Appearance by Robert George Keefe on behalf of Naomi Home, Inc., OJ Commerce LLC. Attorney Robert George Keefe added to party Naomi Home, Inc.(pty:pla), Attorney Robert George Keefe added to party OJ Commerce LLC(pty:pla). (Keefe, Robert) (Entered: 05/07/2019) |
| 05/09/2019 | 22 | Joint SCHEDULING REPORT - **Rule** by Naomi Home, Inc., OJ Commerce LLC (Attachments: # 1 Exhibit A)(Freedman, Devin) (Entered: 05/09/2019) |
| 05/10/2019 | 23 | PAPERLESS ORDER granting 13 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Attorney(s) Joshua Lipton ; granting 14 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Attorney(s) Scott K. Hvidt. Signed by Magistrate Judge Patrick M. Hunt on 5/10/2019. (sl00) (Entered: 05/10/2019) |
| 05/10/2019 | 24 | GENERAL ORDER ON DISCOVERY OBJECTIONS AND PROCEDURES BEFORE UNITED STATES MAGISTRATE JUDGE PATRICK M. HUNT. The parties should |

| | | |
|---|---|---|
| | | carefully review the Order in that it requires expedited briefing, provides for modified page limitations and special conferral requirements before a motion is filed, limits the type of permissible discovery objections as well as modifying other discovery procedures. Signed by Magistrate Judge Patrick M. Hunt on 5/10/2019. *See attached document for full details.* (sl00) (Entered: 05/10/2019) |
| 05/13/2019 | 25 | ORDER SETTING CIVIL TRIAL DATE AND PRETRIAL DEADLINES. Signed by Judge Marcia G. Cooke on 5/13/2019. *See attached document for full details.* (kou)<br><br>**Pattern Jury Instruction Builder -** To access the latest, up to date changes to the 11th Circuit Pattern Jury Instructions go to https://pji.ca11.uscourts.gov or click here. (Entered: 05/13/2019) |
| 05/13/2019 | 26 | NOTICE of Attorney Appearance by Carl Edward Goldfarb on behalf of OJ Commerce LLC. Attorney Carl Edward Goldfarb added to party OJ Commerce LLC(pty:pla). (Goldfarb, Carl) (Entered: 05/13/2019) |
| 05/14/2019 | 27 | STIPULATION *Joint Stipulation to Substitute Party Defendants and Amend Case Caption* by Naomi Home, Inc., OJ Commerce LLC (Attachments: # 1 Text of Proposed Order)(Freedman, Devin). Added MOTION to Amend/Correct on 5/15/2019 (ail). (Entered: 05/14/2019) |
| 05/15/2019 | 28 | Clerks Notice to Filer re 27 Stipulation. **Wrong Event Selected - Document is a Motion**; ERROR - The Filer selected the wrong event. A motion event must always be selected when filing a motion. The correction was made by the Clerk. It is not necessary to refile this document. (ail) (Entered: 05/15/2019) |
| 05/16/2019 | 29 | ORDER ON JOINT STIPULATION TO SUBSTITUTE PARTY DEFENDANTS AND TO AMEND CASE CAPTION. *Clerks Notice: Filer must separately re-file the amended pleading pursuant to Local Rule 15.1, unless otherwise ordered by the Judge.* Signed by Judge Marcia G. Cooke on 5/16/2019. *See attached document for full details.* (kou) (Entered: 05/16/2019) |
| 05/31/2019 | 30 | Joint MOTION for Extension of Time to select a mediator re 25 Scheduling Order, by Naomi Home, Inc., OJ Commerce LLC. Responses due by 6/14/2019 (Attachments: # 1 Text of Proposed Order)(Freedman, Devin) (Entered: 05/31/2019) |
| 06/24/2019 | 31 | NOTICE of Mediator Selection. Added Harry R. Schafer. (Freedman, Devin) (Entered: 06/24/2019) |
| 06/26/2019 | 32 | Joint MOTION for Protective Order *and Stipulation to Confidenitalty Agreement* by KidKraft, Inc., MidOcean Partners IV, L.P.. (Mora, Alexandra) (Entered: 06/26/2019) |
| 06/26/2019 | 33 | ORDER granting 32 Entry of Agreed Motion for Protective Order and Stipulation to Confidentiality Agreement. Signed by Magistrate Judge Patrick M. Hunt on 6/26/2019. *See attached document for full details.* (sl00) (Entered: 06/26/2019) |
| 07/03/2019 | 34 | Defendant's MOTION to Compel *Plaintiff's Fed. R. Civ. P. 26(A) Initial Disclosure Damages Information* by KidKraft, Inc., MidOcean Partners IV, L.P.. Responses due by 7/17/2019 (Attachments: # 1 Affidavit, # 2 Exhibit, # 3 Text of Proposed Order)(Mora, Alexandra) (Entered: 07/03/2019) |
| 07/07/2019 | 35 | RESPONSE in Opposition re 34 Defendant's MOTION to Compel *Plaintiff's Fed. R. Civ. P. 26(A) Initial Disclosure Damages Information* filed by Naomi Home, Inc., OJ Commerce LLC. Replies due by 7/15/2019. (Freedman, Devin) (Entered: 07/07/2019) |
| 07/10/2019 | 36 | REPLY to Response to Motion re 34 Defendant's MOTION to Compel *Plaintiff's Fed. R. Civ. P. 26(A) Initial Disclosure Damages Information* filed by KidKraft, Inc., MidOcean Partners IV, L.P.. (Mora, Alexandra) (Entered: 07/10/2019) |

| 07/11/2019 | 37 | ENDORSED ORDER REFERRING 34 Defendant's MOTION to Compel *Plaintiff's Fed. R. Civ. P. 26(A) Initial Disclosure Damages Information* filed by MidOcean Partners IV, L.P., KidKraft, Inc. Motion referred to Judge Patrick M. Hunt. Signed by Judge Marcia G. Cooke on 7/11/2019. (kou) (Entered: 07/11/2019) |
| --- | --- | --- |
| 07/12/2019 | 38 | PAPERLESS ORDER granting in part and denying in part 34 Defendants' Motion to Compel finding that the Rule 26 obligations as to damages have been satisfied regarding the calculations of the $10 million in damages alleged. Plaintiff clarifies for Defendant how these damages were calculated on pages 2-3 of its Response. Plaintiff has also indicated that its calculations are based on its historical database. As to the additional $69 million in damages claimed, the motion is GRANTED. Plaintiff must supplement its information by at least identifying future products and retailers to whom they would be sold, and how those damages are being calculated. Plaintiff should further state that no business projections have been located to date or produce them by Monday, July 22, 2019. Signed by Magistrate Judge Patrick M. Hunt on 7/12/2019. (sl00) (Entered: 07/12/2019) |
| 08/07/2019 | 39 | NOTICE by OJ Commerce LLC *Notice of Change of Firm* (Freedman, Devin) (Entered: 08/07/2019) |
| 09/10/2019 | 40 | Defendant's MOTION for Attorney Fees *Arising from their Motion to Compel (Dkt. 34)* by KidKraft, Inc., MidOcean Partners IV, L.P.. Responses due by 9/24/2019 (Attachments: # 1 Exhibit A and B)(Mora, Alexandra) (Entered: 09/10/2019) |
| 09/13/2019 | 41 | Cross MOTION to Bifurcate *so as to determine entitlement prior to submission on amount* by Naomi Home, Inc., OJ Commerce LLC. Responses due by 9/27/2019 (Attachments: # 1 Text of Proposed Order)(Freedman, Devin) (Entered: 09/13/2019) |
| 09/17/2019 | 42 | RESPONSE to Motion re 41 Cross MOTION to Bifurcate *so as to determine entitlement prior to submission on amount* filed by KidKraft, Inc., MidOcean Partners IV, L.P.. Replies due by 9/24/2019. (Mora, Alexandra) (Entered: 09/17/2019) |
| 09/22/2019 | 43 | REPLY to 41 Cross MOTION to Bifurcate *so as to determine entitlement prior to submission on amount* by Naomi Home, Inc., OJ Commerce LLC. (Freedman, Devin) (Entered: 09/22/2019) |
| 09/24/2019 | 44 | PAPERLESS ORDER denying 40 Defendants' Motion for Attorney Fees Arising from Their Motion to Compel finding the request for fees inappropriate under the circumstances of this case; denying as moot 41 Plaintiffs' Cross Motion to Determine Entitlement Prior to Submission on Amount having resolved ECF No. 40 on the merits. Signed by Magistrate Judge Patrick M. Hunt on 9/24/2019. (sl00) (Entered: 09/24/2019) |
| 10/15/2019 | 45 | Notification of Ninety Days Expiring *on the Motion to Dismiss* by KidKraft, Inc., MidOcean Partners IV, L.P. re 17 Reply to Response to Motion filed by MidOcean Partners IV, L.P., KidKraft, Inc., 15 Defendant's MOTION to Dismiss with Prejudice 1 Complaint, filed by MidOcean Partners IV, L.P., KidKraft, Inc., 16 Response in Opposition to Motion filed by Naomi Home, Inc., OJ Commerce LLC (Mora, Alexandra) (Entered: 10/15/2019) |
| 10/25/2019 | | ENDORSED ORDER Setting Hearing on Motion. Oral argument regarding 15 Defendants Motion to Dismiss shall be heard on November 13, 2019 at 2:00 PM in Miami Division before Judge Marcia G. Cooke. Signed by Judge Marcia G. Cooke on 10/25/2019. (kou) (Entered: 10/25/2019) |
| 10/28/2019 | 46 | Unopposed MOTION to Continue *November 13th Hearing on Defendants' Motion to Dismiss* re Set/Reset Motion/R&R Deadlines and Hearings, by Naomi Home, Inc., OJ |

| | | |
|---|---|---|
| | | Commerce LLC. Responses due by 11/12/2019 (Attachments: # 1 Text of Proposed Order)(Freedman, Devin) (Entered: 10/28/2019) |
| 10/30/2019 | 47 | ENDORSED ORDER Re-setting Hearing on Motion. Oral argument regarding 15 Defendants Motion to Dismiss shall be heard on November 18, 2019 at 10:00 AM in Miami Division before Judge Marcia G. Cooke. Signed by Judge Marcia G. Cooke on 10/30/2019. (kou) (Entered: 10/30/2019) |
| 11/18/2019 | 48 | PAPERLESS Minute Entry for proceedings held before Judge Marcia G. Cooke: Motion Hearing held on 11/18/2019 re 15 Defendant's MOTION to Dismiss with Prejudice 1 Complaint, filed by MidOcean Partners IV, L.P., KidKraft, Inc. Total time in court: 30 minutes. Attorney Appearances: Lawrence Dean Silverman, Joshua Lipton, Scott K. Hvidt, Shlomo Y Hecht. Court Reporter: Jill Felicetti, 305-523-5158 / Jill_Felicetti@flsd.uscourts.gov. (im) (Entered: 11/19/2019) |
| 11/19/2019 | 49 | ORDER denying 15 Motion to Dismiss. Signed by Judge Marcia G. Cooke on 11/19/2019. *See attached document for full details.* (kou) (Entered: 11/19/2019) |
| 11/22/2019 | 50 | NOTICE of Attorney Appearance by Angel Castillo, Jr on behalf of Teamson Design Corp.. Attorney Angel Castillo, Jr added to party Teamson Design Corp.(pty:obj). (Castillo, Angel) (Entered: 11/22/2019) |
| 11/22/2019 | 51 | MOTION to Quash *subpoena* by Teamson Design Corp.. (Castillo, Angel) (Entered: 11/22/2019) |
| 11/22/2019 | 52 | NOTICE by Teamson Design Corp. re 51 MOTION to Quash *subpoena of filing Exhibit A to DKT #51 motion* (Castillo, Angel) (Entered: 11/22/2019) |
| 11/22/2019 | 53 | Corrected MOTION to Quash *subpoena* by Teamson Design Corp.. (Castillo, Angel) (Entered: 11/22/2019) |
| 11/25/2019 | 54 | Defendant's MOTION to Strike 51 MOTION to Quash *subpoena Defendants' Motion to Strike Teamson's Motion to Quash (Dkt. 51) for Failure to Confer Under Local Rule 7.1(a)(3)* by KidKraft, Inc., MidOcean Partners IV, L.P.. Responses due by 12/9/2019 (Mora, Alexandra) (Entered: 11/25/2019) |
| 11/25/2019 | 55 | ENDORSED ORDER denying as moot 51 Motion to Quash pursuant to 53 Corrected Motion to Quash. Signed by Judge Marcia G. Cooke on 11/25/2019. (kou) (Entered: 11/25/2019) |
| 11/25/2019 | 56 | Amended MOTION to Quash *subpoena from Defendant KidKraft* by Teamson Design Corp.. (Castillo, Angel) (Entered: 11/25/2019) |
| 11/25/2019 | 57 | PAPERLESS ORDER denying as moot 54 Motion to Strike DE 51 in light of ECF No. 55. Signed by Magistrate Judge Patrick M. Hunt on 11/25/2019. (sl00) (Entered: 11/25/2019) |
| 11/25/2019 | 58 | ENDORSED ORDER REFERRING 53 Corrected Motion to Quash and 56 Amended Motion to Quash to Judge Patrick M. Hunt. Signed by Judge Marcia G. Cooke on 11/25/2019. (kou) (Entered: 11/25/2019) |
| 11/25/2019 | 59 | PAPERLESS ORDER denying as moot 53 Corrected Motion to Quash in light of the Amended Motion to Quash filed at ECF No. 56. Signed by Magistrate Judge Patrick M. Hunt on 11/25/2019. (sl00) (Entered: 11/25/2019) |
| 11/25/2019 | 60 | Joint MOTION for Extension of Time of Discovery Cutoff Deadline , Joint MOTION to Continue *other case deadlines set in the Court's Scheduling Order (DE 25]* ( Responses due by 12/9/2019) by Naomi Home, Inc., OJ Commerce LLC. (Attachments: # 1 Text of Proposed Order)(Freedman, Devin) (Entered: 11/25/2019) |

| 11/27/2019 | 61 | Defendant's MOTION for Extension of Time to File Response/Reply/Answer as to 1 Complaint, *(KDT. No. 1) and Memorandum of Law in Support Thereof* by KidKraft, Inc., MidOcean Partners IV, L.P.. (Silverman, Lawrence) (Entered: 11/27/2019) |
|---|---|---|
| 12/02/2019 | 62 | ENDORSED ORDER granting 61 Motion for Extension of Time. Defendants shall file a responsive pleading to 1 the Complaint on or before December 20, 2019. Signed by Judge Marcia G. Cooke on 12/2/2019. (kou) (Entered: 12/02/2019) |
| 12/03/2019 | 63 | Defendant's MOTION to Compel *Teamson to Comply with Defendants' Non-Party Subpoena Defendants' Opposition to Teamson's Corrected Motion to Quash (Dkt. 56) and Motion to Compel Teamson to Comply with Defendants' Non-Party Subpoena and Memorandum of Law in Support Thereof* by KidKraft, Inc., MidOcean Partners IV, L.P.. Responses due by 12/17/2019 (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Mora, Alexandra) (Entered: 12/03/2019) |
| 12/06/2019 | 64 | STIPULATION re 56 Amended MOTION to Quash *subpoena from Defendant KidKraft*, 63 Defendant's MOTION to Compel *Teamson to Comply with Defendants' Non-Party Subpoena Defendants' Opposition to Teamson's Corrected Motion to Quash (Dkt. 56) and Motion to Compel Teamson to Comply with Defendants' Non-Pa Joint Stipulation and [Proposed] Order Regarding Withdrawal of Teamson's Corrected Motion to Quash (Dkt. 56) and Defendants' Motion to Compel Teamson to Comply with Defendants' Non-Party Subpoena (Dkt. 63)* by KidKraft, Inc., MidOcean Partners IV, L.P. (Mora, Alexandra) *(Entered: 12/06/2019)* |
| 12/06/2019 | 65 | ENDORSED ORDER REFERRING 56 Amended Motion to Quash *subpoena from Defendant KidKraft* filed by Teamson Design Corp., 63 Defendant's Motion to Compel *Teamson to Comply with Defendants' Non-Party Subpoena Defendants' Opposition to Teamson's Corrected Motion to Quash (Dkt. 56) and Motion to Compel Teamson to Comply with Defendants' Non-Pa* filed by MidOcean Partners IV, L.P, KidKraft, Inc.. *Motions referred to Judge Patrick M. Hunt. Signed by Judge Marcia G. Cooke on 12/6/2019. (kou) (Entered: 12/06/2019)* |
| 12/09/2019 | 66 | PAPERLESS ORDER denying as moot 56 Motion to Quash; denying as moot 63 Motion to Compel in light of the Joint Stipulation and Withdrawal without prejudice of these Motions pursuant to ECF No. 64. Signed by Magistrate Judge Patrick M. Hunt on 12/9/2019. (sl00) (Entered: 12/09/2019) |
| 12/11/2019 | 67 | NOTICE of Attorney Appearance by Barbara Joy Riesberg on behalf of KidKraft, Inc.. Attorney Barbara Joy Riesberg added to party KidKraft, Inc.(pty:dft). (Riesberg, Barbara) (Entered: 12/11/2019) |
| 12/12/2019 | 68 | STRICKEN NOTICE OF UNAVAILABILITY by IKEA North America Services, LLC for dates of March 16-20, March 31-April 3, September 16-28. Attorney Gerard Andrew Tuzzio added to party IKEA North America Services, LLC(pty:dft). (Tuzzio, Gerard) Modified on 12/20/2019 per DE 71 Notice (kpe). (Entered: 12/12/2019) |
| 12/13/2019 | 69 | NOTICE of Attorney Appearance by Constantine Philip Economides on behalf of Naomi Home, Inc., OJ Commerce LLC. Attorney Constantine Philip Economides added to party Naomi Home, Inc.(pty:pla), Attorney Constantine Philip Economides added to party OJ Commerce LLC(pty:pla). (Economides, Constantine) (Entered: 12/13/2019) |
| 12/16/2019 | 70 | FINAL MEDIATION REPORT by Harry R. Schafer. Disposition: Case did not settle. (Freedman, Devin) (Entered: 12/16/2019) |
| 12/20/2019 | 71 | NOTICE of Striking 68 Notice of Unavailability by IKEA North America Services, LLC (Tuzzio, Gerard) Modified text on 12/20/2019 (kpe). (Entered: 12/20/2019) |
| 12/20/2019 | | Attorney Gerard Andrew Tuzzio terminated per DE 71 Notice. (kpe) (Entered: |

| | | |
|---|---|---|
| | | 12/20/2019) |
| 12/20/2019 | 72 | *Defendants KidKraft, Inc. and MidOcean Partners IV, L.P.'s* ANSWER to Complaint *Defendants' Answer to Plaintiffs' Complaint* by KidKraft, Inc., MidOcean Partners IV, L.P.. (Mora, Alexandra) (Entered: 12/20/2019) |
| 12/23/2019 | 73 | AMENDED SCHEDULING ORDER: re 60 Joint Motion for Extension of Time of Discovery Cutoff Deadline; Joint Motion to Continue other case deadlines set in the Court's 25 Scheduling Order. Signed by Judge Marcia G. Cooke on 12/23/2019. *See attached document for full details.* (kou)<br><br>**Pattern Jury Instruction Builder -** To access the latest, up to date changes to the 11th Circuit Pattern Jury Instructions go to https://pji.ca11.uscourts.gov or click here. (Entered: 12/23/2019) |
| 01/10/2020 | 74 | NOTICE OF UNAVAILABILITY by KidKraft, Inc. for dates of January 15-24, 2020 and January 30-31, 2020 (Riesberg, Barbara) (Entered: 01/10/2020) |
| 01/21/2020 | 75 | Defendant's MOTION to Compel *Plaintiffs' Response to Requests for Production 44 and 45* by KidKraft, Inc., MidOcean Partners IV, L.P.. Responses due by 2/4/2020 (Attachments: # 1 Affidavit Declaration of Joshua Lipton In Support of Defendants' Motion to Compel, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4)(Mora, Alexandra) (Entered: 01/21/2020) |
| 01/21/2020 | 76 | PAPERLESS ORDER requiring Defendants to file an amended certification of conferral by January 23, 2020, indicating that Defendants meaningfully conferred by phone or in person with Plaintiffs as required by this Court's General Discovery Order. Signed by Magistrate Judge Patrick M. Hunt on 1/21/2020. (sl00) (Entered: 01/21/2020) |
| 01/22/2020 | 77 | NOTICE by KidKraft, Inc., MidOcean Partners IV, L.P. re 75 Defendant's MOTION to Compel *Plaintiffs' Response to Requests for Production 44 and 45* , 76 Order, *Defendants' Notice of FIling Amended Certification of Conference* (Mora, Alexandra) (Entered: 01/22/2020) |
| 01/24/2020 | 78 | NOTICE of Attorney Appearance by Mark A Schweikert on behalf of Naomi Home, Inc., OJ Commerce LLC. Attorney Mark A Schweikert added to party Naomi Home, Inc. (pty:pla), Attorney Mark A Schweikert added to party OJ Commerce LLC(pty:pla). (Schweikert, Mark) (Entered: 01/24/2020) |
| 01/27/2020 | 79 | RESPONSE in Opposition re 75 Defendant's MOTION to Compel *Plaintiffs' Response to Requests for Production 44 and 45* filed by Naomi Home, Inc., OJ Commerce LLC. Replies due by 2/3/2020. (Freedman, Devin) (Entered: 01/27/2020) |
| 01/30/2020 | 80 | REPLY to Response to Motion re 75 Defendant's MOTION to Compel *Plaintiffs' Response to Requests for Production 44 and 45 Defendants' Reply in Further Support of their Motion to Compel Plaintiffs' Response to Requests for Production Nos. 44 and 45* filed by KidKraft, Inc., MidOcean Partners IV, L.P.. (Mora, Alexandra) (Entered: 01/30/2020) |
| 02/04/2020 | 81 | PAPERLESS ORDER granting in part and denying in part 75 Defendants' Motion to Compel Plaintiffs' Response to Requests for Production (RFP) Nos. 44 and 45. Plaintiffs are ordered to produce any responsive documents to RFP 44 and 45, as modified by Defendants in ECF No. 80. Any documents withheld on the basis of privilege shall be noted in a privilege log that complies with this Court's local rules. This production shall occur no later than 2/14/2020. To the extent that Plaintiffs indicate that no responsive documents exist, Plaintiffs shall serve a verified Response to the RFPs indicating same no later than 2/14/2020. If Defendants later determine that this verification is not accurate, |

| | | |
|---|---|---|
| | | Defendant may seek relief from this Court at that time. Signed by Magistrate Judge Patrick M. Hunt on 2/4/2020. (sl00) (Entered: 02/04/2020) |
| 02/12/2020 | 82 | Unopposed MOTION for Extension of Time to Comply with the Court's February 4, 2020 Order re 81 Order on Motion to Compel,,, by Naomi Home, Inc., OJ Commerce LLC. Responses due by 2/26/2020 (Attachments: # 1 Text of Proposed Order)(Freedman, Devin) (Entered: 02/12/2020) |
| 02/13/2020 | 83 | PAPERLESS ORDER granting 82 Plaintiff's Unopposed Motion for Extension of Time to Comply with Court's February 4, 2020 Order. Signed by Magistrate Judge Patrick M. Hunt on 2/13/2020. (bse) (Entered: 02/13/2020) |
| 02/19/2020 | 84 | MOTION to Compel *De-designation of "highly confidential" documents* by Naomi Home, Inc., OJ Commerce LLC. Responses due by 3/4/2020 (Attachments: # 1 Text of Proposed Order)(Freedman, Devin) (Entered: 02/19/2020) |
| 02/19/2020 | 85 | NOTICE by Naomi Home, Inc., OJ Commerce LLC *of Errata* (Attachments: # 1 Corrected Proposed Order) (Freedman, Devin) (Entered: 02/19/2020) |
| 02/19/2020 | 86 | Defendant's MOTION to Compel *Plaintiffs' Response to Requests for Production Nos. 60-63* by KidKraft, Inc., MidOcean Partners IV, L.P.. Responses due by 3/4/2020 (Attachments: # 1 Exhibit A - Declaration of Scott Hvidt)(Mora, Alexandra) (Entered: 02/19/2020) |
| 02/21/2020 | 87 | MOTION TO FILE DISCOVERY MOTION UNDER SEAL BECAUSE IT CONTAINS DEFENDANTS ALLEGED HIGHLY CONFIDENTIAL INFORMATION by Naomi Home, Inc., OJ Commerce LLC. (Attachments: # 1 Exhibit A - Proposed Order) (Schweikert, Mark) Text Modified on 2/24/2020 (ail). (Entered: 02/21/2020) |
| 02/21/2020 | 88 | MOTION to Compel *Document Custodians and Discovery Responses in Redacted Format* by Naomi Home, Inc., OJ Commerce LLC. Responses due by 3/6/2020 (Attachments: # 1 Exhibit A - Memorandum, # 2 Exhibit B - Defendants' Interrogatory Answers, # 3 Exhibit C - Defendants' Responses to Request for Production, # 4 Exhibit D - Proposed Order)(Schweikert, Mark) (Entered: 02/21/2020) |
| 02/24/2020 | 89 | PAPERLESS ORDER granting 87 Motion to Seal. Matters unsealed upon case closing. Signed by Magistrate Judge Patrick M. Hunt on 2/24/2020. (bse) (Entered: 02/24/2020) |
| 02/24/2020 | | SYSTEM ENTRY - Docket Entry 90 [motion] restricted/sealed until further notice. (1153006) (Entered: 02/24/2020) |
| 02/26/2020 | 91 | RESPONSE to Motion re 84 MOTION to Compel *De-designation of "highly confidential" documents Defendants' Response to Plaintiffs' Motion to Compel Defendants into De-Designating their"Highly Confidential" Documents and Request for an Award of Fees* filed by KidKraft, Inc., MidOcean Partners IV, L.P.. Replies due by 3/4/2020. (Attachments: # 1 Exhibit 1 - Declaration of Scott Hvidt, Esq., # 2 Appendix A)(Mora, Alexandra) (Entered: 02/26/2020) |
| 02/26/2020 | 92 | RESPONSE in Opposition re 86 Defendant's MOTION to Compel *Plaintiffs' Response to Requests for Production Nos. 60-63* filed by Naomi Home, Inc., OJ Commerce LLC. Replies due by 3/4/2020. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Freedman, Devin) (Entered: 02/26/2020) |
| 02/28/2020 | 93 | RESPONSE to Motion re 88 MOTION to Compel *Document Custodians and Discovery Responses in Redacted Format* filed by KidKraft, Inc., MidOcean Partners IV, L.P.. Replies due by 3/6/2020. (Attachments: # 1 Affidavit J. Lipton Declaration, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D)(Mora, Alexandra) (Entered: 02/28/2020) |
| 03/02/2020 | 94 | Defendant's MOTION to Seal *Defendants' Reply in Support of their Motion to Compel* |

| | | |
|---|---|---|
| | | *Plaintiffs' Response to Requests for Production Nos. 60-63* per Local Rule 5.4 by KidKraft, Inc., MidOcean Partners IV, L.P.. (Attachments: # [1] Text of Proposed Order Proposed Order) (Mora, Alexandra) (Entered: 03/02/2020) |
| 03/02/2020 | [95] | REPLY to Response to Motion re [86] Defendant's MOTION to Compel *Plaintiffs' Response to Requests for Production Nos. 60-63 REDACTED Defendants' Reply in Support of their Motion to Compel Plaintiffs' Response to Requests for Production Nos. 60-63* filed by KidKraft, Inc., MidOcean Partners IV, L.P.. (Attachments: # [1] Affidavit of Scott Hvidt, Esq., # [2] Exhibit 5, # [3] Exhibit 6, # [4] Exhibit 7, # [5] Exhibit 8, # [6] Exhibit 9, # [7] Exhibit 10, # [8] Exhibit 11, # [9] Exhibit 12, # [10] Exhibit 13, # [11] Exhibit 14, # [12] Exhibit 15, # [13] Exhibit 16)(Mora, Alexandra) (Entered: 03/02/2020) |
| 03/02/2020 | [96] | REPLY to Response to Motion re [84] MOTION to Compel *De-designation of "highly confidential" documents* filed by Naomi Home, Inc., OJ Commerce LLC. (Schweikert, Mark) (Entered: 03/02/2020) |
| 03/03/2020 | 97 | PAPERLESS ORDER granting [94] Defendants' Motion to Seal Defendants' Reply. Matters unsealed upon case closing. Signed by Magistrate Judge Patrick M. Hunt on 3/3/2020. (bse) (Entered: 03/03/2020) |
| 03/03/2020 | [98] | Sealed Document *[DE98] Defendants' Notice of Sealed Filing of Defendants' Reply in Support of their Motion to Compel Plaintiffs' Response to Requests for Production Nos. 60-63* by KidKraft, Inc., MidOcean Partners IV, L.P.. (Attachments: # [1] Exhibit A) (Mora, Alexandra) Modified by Unsealing Document per Unsealing Deadline on 4/1/2021 (nc). (Entered: 03/03/2020) |
| 03/04/2020 | 99 | ENDORSED ORDER REFERRING 90 Plaintiff's SEALED MOTION *to Compel Document Custodians and Discovery Responses* filed by Naomi Home, Inc., OJ Commerce LLC, [84] MOTION to Compel *De-designation of "highly confidential" documents* filed by Naomi Home, Inc., OJ Commerce LLC, [88] MOTION to Compel *Document Custodians and Discovery Responses in Redacted Format* filed by Naomi Home, Inc., OJ Commerce LLC, [86] Defendant's MOTION to Compel *Plaintiffs' Response to Requests for Production Nos. 60-63* filed by MidOcean Partners IV, L.P., KidKraft, Inc. All Motions are referred to Judge Patrick M. Hunt. Signed by Judge Marcia G. Cooke on 3/4/2020. (kou) (Entered: 03/04/2020) |
| 03/04/2020 | [100] | REPLY to Response to Motion re [88] MOTION to Compel *Document Custodians and Discovery Responses in Redacted Format* filed by Naomi Home, Inc., OJ Commerce LLC. (Schweikert, Mark) (Entered: 03/04/2020) |
| 03/09/2020 | [101] | TRANSCRIPT of Motion Hearing held on 11/18/19 before Judge Marcia G. Cooke, 1-38 pages, Court Reporter: Jill Wells, 305-523-5158 / Jill_Wells@flsd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased by contacting the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/30/2020. Redacted Transcript Deadline set for 4/9/2020. Release of Transcript Restriction set for 6/8/2020. (jfi) (Entered: 03/09/2020) |
| 03/10/2020 | 102 | PAPERLESS ORDER Setting Hearing on Motions [84] , [86] , [88] , and 90 . Motion Hearing is set for 3/23/2020 at 1:00 p.m. in the Fort Lauderdale Division before Magistrate Judge Patrick M. Hunt. Signed by Magistrate Judge Patrick M. Hunt on 3/10/2020. (bse) (Entered: 03/10/2020) |
| 03/11/2020 | [103] | MOTION to Seal *Plaintiffs' Motion to Compel Discovery of Documents Relevant to Key Witnesses' Credibility* per Order authorizing the submission of this document under seal by Naomi Home, Inc., OJ Commerce LLC. (Attachments: # [1] Exhibit A - Proposed Order) (Schweikert, Mark) (Entered: 03/11/2020) |

| | | |
|---|---|---|
| 03/11/2020 | 104 | WITHDRAWN MOTION to Compel *Discovery of Documents Relevant to Key Witnesses' Credibility in REDACTED Format* by Naomi Home, Inc., OJ Commerce LLC. Responses due by 3/25/2020 (Attachments: # 1 Exhibit A - Defendants' Response to Plaintiffs' Second Set of Requests for Production, # 2 Exhibit B - Daniel Barr's LinkedIn Profile, # 3 Exhibit C - Chris Light's LinkedIn Profile, # 4 Exhibit D - Plaintiffs' Responses to Defendants' First Set of Requests for Production, # 5 Exhibit E - Proposed Order)(Schweikert, Mark) Modified on 3/25/2020 withdrawn per de#118(dj). (Entered: 03/11/2020) |
| 03/12/2020 | 105 | ENDORSED ORDER REFERRING 90 Plaintiff's SEALED MOTION to Compel Document Custodians and Discovery Responses 104 Motion to Compel Discovery of Documents Relevant to Key Witnesses' Credibility, 103 MOTION to Seal Plaintiffs' Motion to Compel Discovery of Documents Relevant to Key Witnesses' Credibility, 84 Motion to Compel De-designation of "highly confidential" documents, 88 Motion to Compel Document Custodians and Discovery Responses, 86 Defendant's MOTION to Compel Plaintiffs' Response to Requests for Production Nos. 60-63. All Motions are referred to Judge Patrick A. Hunt. Signed by Judge Marcia G. Cooke on 3/12/2020. (kou) (Entered: 03/12/2020) |
| 03/12/2020 | 106 | Defendant's MOTION to Seal *Exhibits 2 and 3 to Defendants' Motion to Enforce the Protective Order* per Local Rule 5.4 by KidKraft, Inc., MidOcean Partners IV, L.P.. (Mora, Alexandra) (Entered: 03/12/2020) |
| 03/12/2020 | 107 | Defendant's MOTION for Protective Order *Defendants' Motion to Enforce the Protective Order* by KidKraft, Inc., MidOcean Partners IV, L.P.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Mora, Alexandra) (Entered: 03/12/2020) |
| 03/18/2020 | 108 | RESPONSE to Motion re 104 MOTION to Compel *Discovery of Documents Relevant to Key Witnesses' Credibility in REDACTED Format Defendants' Response to Plaintiffs' Motion to Compel the Production of Personnel Files of Defendants' Former Employees* filed by KidKraft, Inc., MidOcean Partners IV, L.P.. Replies due by 3/25/2020. (Mora, Alexandra) (Entered: 03/18/2020) |
| 03/19/2020 | 109 | RESPONSE to 107 Defendant's MOTION for Protective Order *Defendants' Motion to Enforce the Protective Order* by Naomi Home, Inc., OJ Commerce LLC. (Attachments: # 1 Affidavit 1)(Freedman, Devin) (Entered: 03/19/2020) |
| 03/20/2020 | 110 | REPLY to Response to Motion re 107 Defendant's MOTION for Protective Order *Defendants' Motion to Enforce the Protective Order Defendants' Reply in Support of their Motion to Enforce the Protective Order* filed by KidKraft, Inc., MidOcean Partners IV, L.P.. (Mora, Alexandra) (Entered: 03/20/2020) |
| 03/20/2020 | 111 | ENDORSED ORDER REFERRING 107 Defendant's Motion for Protective Order to Judge Patrick M. Hunt. Signed by Judge Marcia G. Cooke on 3/20/2020. (kou) (Entered: 03/21/2020) |
| 03/22/2020 | 112 | MOTION to Seal *their Notice of Filing Exhibits to Telephonic Omnibus Hearing Scheduled for March 23, 2020* per Order authorizing the submission of this document under seal by Naomi Home, Inc., OJ Commerce LLC. (Schweikert, Mark) (Entered: 03/22/2020) |
| 03/23/2020 | 113 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge Patrick M. Hunt: Motion Hearing held on 3/23/2020 re 90 Plaintiff's SEALED MOTION *to Compel Document Custodians and Discovery Responses* filed by Naomi Home, Inc., OJ Commerce LLC, 84 MOTION to Compel *De-designation of "highly confidential" documents* filed by Naomi Home, Inc., OJ Commerce LLC, 88 MOTION to Compel *Document Custodians and Discovery Responses in Redacted Format* filed by Naomi |

| | | |
|---|---|---|
| | | Home, Inc., OJ Commerce LLC, 86 Defendant's MOTION to Compel *Plaintiffs' Response to Requests for Production Nos. 60-63* filed by MidOcean Partners IV, L.P., KidKraft, Inc. Order to follow. Attorney Appearance(s): Alexandra M. Mora, Lawrence Dean Silverman, Joshua Lipton, Scott K. Hvidt, Mark A Schweikert, Devin Freedman, (Digital 13:10:45) (tw) (Entered: 03/23/2020) |
| 03/23/2020 | 114 | REPLY to Response to Motion re 104 MOTION to Compel *Discovery of Documents Relevant to Key Witnesses' Credibility in REDACTED Format* filed by Naomi Home, Inc., OJ Commerce LLC. (Attachments: # 1 Exhibit A - March 23, 2020 Email Correspondence)(Schweikert, Mark) (Entered: 03/23/2020) |
| 03/24/2020 | 115 | PAPERLESS ORDER granting 112 Motion to Seal. Matters unsealed upon case closing. Signed by Magistrate Judge Patrick M. Hunt on 3/24/2020. (bse) (Entered: 03/24/2020) |
| 03/24/2020 | 116 | GENERAL ORDER ON DISCOVERY OBJECTIONS AND PROCEDURES BEFORE UNITED STATES MAGISTRATE JUDGE PATRICK M. HUNT. The parties should carefully review the Order. Any discovery motion filed shall include a certification of conferral that indicates specifically that conferral in person or by phone was performed but unsuccessful. Leaving messages shall not satisfy this Court's requirement of a meaningful conferral. FURTHER, Counsel is unable to file any discovery motions without obtaining permission from Chambers first. *See attached document for full details.* Signed by Magistrate Judge Patrick M. Hunt on 3/24/2020. (bse) (Entered: 03/24/2020) |
| 03/24/2020 | | SYSTEM ENTRY - Docket Entry 117 [misc] restricted/sealed until further notice. (1153006) (Entered: 03/24/2020) |
| 03/24/2020 | 118 | NOTICE OF WITHDRAWAL OF MOTION by Naomi Home, Inc., OJ Commerce LLC re 104 MOTION to Compel *Discovery of Documents Relevant to Key Witnesses' Credibility in REDACTED Format* filed by Naomi Home, Inc., OJ Commerce LLC (Attachments: # 1 Exhibit A - Email Agreement) (Schweikert, Mark) (Entered: 03/24/2020) |
| 03/30/2020 | 119 | ORDER granting 84 Plaintiffs' Motion to Compel Defendants' into De-designating Their Highly Confidential Documents; granting in part and denying in part 86 Defendants' Motion to Compel Plaintiffs' Responses; denying 88 , 90 , Plaintiffs' Motion and Sealed Motion to Compel Document Custodians without prejudice; and denying 107 Defendants' Motion for Protective Order. Signed by Magistrate Judge Patrick M. Hunt on 3/30/2020. *See attached document for full details.* (bse) (Entered: 03/30/2020) |
| 03/30/2020 | 120 | PAPERLESS ORDER denying as moot 106 Defendants' Motion to Seal, in light of 119 . Signed by Magistrate Judge Patrick M. Hunt on 3/30/2020. (bse) (Entered: 03/30/2020) |
| 04/14/2020 | 121 | PAPERLESS ORDER denying as moot 103 Motion to Seal in light of 118 . Signed by Magistrate Judge Patrick M. Hunt on 4/14/2020. (bse) (Entered: 04/14/2020) |
| 04/14/2020 | 122 | MOTION for Extension of Time of Discovery Cutoff Deadline *and Remaining Pre-Trial Deadlines, and for Continuance of Trial Date* by Naomi Home, Inc., OJ Commerce LLC. (Attachments: # 1 Text of Proposed Order Exhibit A)(Schweikert, Mark) (Entered: 04/14/2020) |
| 04/16/2020 | 123 | RESPONSE to Motion re 122 MOTION for Extension of Time of Discovery Cutoff Deadline *and Remaining Pre-Trial Deadlines, and for Continuance of Trial Date Defendants' Response to Plaintiffs' Motion to Continue the Trial Date and Extend the Pretrial Deadlines* filed by KidKraft, Inc., MidOcean Partners IV, L.P.. Replies due by 4/23/2020. (Mora, Alexandra) (Entered: 04/16/2020) |
| 04/20/2020 | 124 | REPLY to Response to Motion re 122 MOTION for Extension of Time of Discovery Cutoff Deadline *and Remaining Pre-Trial Deadlines, and for Continuance of Trial Date* |

| | | |
|---|---|---|
| | | filed by Naomi Home, Inc., OJ Commerce LLC. (Attachments: # 1 Exhibit A - Docket Sheet in Martinez v. Cherry Bekaert, LLP, No. 18-cv-25429-COOKE/GOODMAN (S.D. Fla.), # 2 Exhibit B - Plaintiffs' First Request for Production to Defendants, # 3 Exhibit C - Defendants' Response to Plaintiffs' First Request for Production)(Schweikert, Mark) (Entered: 04/20/2020) |
| 05/04/2020 | 125 | ENDORSED ORDER granting in part and denying in part 122 Motion for Extension of Time of Discovery Cutoff Deadline. The discovery deadline in this matter is hereby extended to July 20,2020. All other pending deadlines remain the same. The Court will not grant any further extensions in this matter absent extenuating circumstances. Should the parties require any further extensions, the parties are instructed to file a Motion for Extension of time at least one week in advance of the deadline. Any such Motions that are not filed a week in advance will be denied. Signed by Judge Marcia G. Cooke on 5/4/2020. (kou) (Entered: 05/04/2020) |
| 05/04/2020 | 126 | ENDORSED ORDER Regarding Phone Calls to Chambers.<br><br>The following rules apply in this and all other civil matters pending before Judge Marcia G. Cooke:<br><br>1. Do not call Chambers to ask about the status of pending motions, including motions for extension of time. The Court is aware of all pending motions and will address each of them in due course.<br><br>2. Do not call Chambers if the information you seek, or seek to provide, can be conveyed through a filing on the docket.<br><br>3. Do not call Chambers if the information you seek is available from other sources, including Court Orders and the Local Rules.<br><br>4. If you call Chambers for a permissible purpose, counsel for all affected parties must be on the line. Calls from non-attorneys and *ex parte* calls will not be accepted.<br><br>Signed by Judge Marcia G. Cooke on 5/4/2020. (kou) (Entered: 05/04/2020) |
| 05/27/2020 | 127 | Defendant's MOTION to Seal *Defendants' Unopposed Motion to Seal Defendants' Motion for Summary Judgment* per Local Rule 5.4 by KidKraft, Inc., MidOcean Partners IV, L.P.. (Attachments: # 1 Text of Proposed Order) (Mora, Alexandra) (Entered: 05/27/2020) |
| 05/28/2020 | 128 | PAPERLESS ORDER granting 127 Motion to Seal. Matters unsealed upon case closing. Signed by Magistrate Judge Patrick M. Hunt on 5/28/2020. (bse) (Entered: 05/28/2020) |
| 05/28/2020 | 129 | Statement of: Material Facts (Redacted) *Defendants' Statement of Material Facts in Support of their Motion for Summary Judgment* by KidKraft, Inc., MidOcean Partners IV, L.P. (Silverman, Lawrence) (Entered: 05/28/2020) |
| 05/28/2020 | 130 | Defendant's MOTION for Summary Judgment *Defendants' Motion for Summary Judgment and Memoradum of Law in Support Thereof (Redacted)* by KidKraft, Inc., MidOcean Partners IV, L.P.. Responses due by 6/11/2020 (Silverman, Lawrence) (Entered: 05/28/2020) |
| 05/28/2020 | | SYSTEM ENTRY - Docket Entry 131 [misc] restricted/sealed until further notice. (694386) (Entered: 05/28/2020) |
| 06/02/2020 | 132 | ORDER OF RECUSAL. Magistrate Judge Patrick M. Hunt recused. Case reassigned to Magistrate Judge Alicia O. Valle for all further proceedings. Signed by Magistrate Judge |

| | | |
|---|---|---|
| | | Patrick M. Hunt on 6/2/2020. *See attached document for full details.* (bms) (Entered: 06/03/2020) |
| 06/03/2020 | [133](#) | Plaintiff's MOTION for Extension of Time to File Response/Reply/Answer as to [130](#) Defendant's MOTION for Summary Judgment *Defendants' Motion for Summary Judgment and Memoradum of Law in Support Thereof (Redacted)* by Naomi Home, Inc., OJ Commerce LLC. (Attachments: # [1](#) Text of Proposed Order)(Freedman, Devin) (Entered: 06/03/2020) |
| 06/04/2020 | [134](#) | RESPONSE in Opposition re [133](#) Plaintiff's MOTION for Extension of Time to File Response/Reply/Answer as to [130](#) Defendant's MOTION for Summary Judgment *Defendants' Motion for Summary Judgment and Memoradum of Law in Support Thereof (Redacted) Defendants' Opposition to Plaintiffs' Motion for an Eleven-Day Extension to Respond to Defendants' Motion for Summary Judgment* filed by KidKraft, Inc., MidOcean Partners IV, L.P.. Replies due by 6/11/2020. (Mora, Alexandra) (Entered: 06/04/2020) |
| 06/04/2020 | [135](#) | ORDER OF RECUSAL. Magistrate Judge Alicia O. Valle recused. Case reassigned to Magistrate Judge Lurana S. Snow for all further proceedings Signed by Magistrate Judge Alicia O. Valle on 6/3/2020. *See attached document for full details.* (jc) (Entered: 06/04/2020) |
| 06/05/2020 | [136](#) | GENERAL ORDER ON DISCOVERY OBJECTIONS AND PROCEDURES signed by Magistrate Judge Lurana S. Snow on 6/5/2020. (jz) (Entered: 06/05/2020) |
| 06/08/2020 | [137](#) | REPLY to Response to Motion re [133](#) Plaintiff's MOTION for Extension of Time to File Response/Reply/Answer as to [130](#) Defendant's MOTION for Summary Judgment *Defendants' Motion for Summary Judgment and Memoradum of Law in Support Thereof (Redacted)* filed by Naomi Home, Inc., OJ Commerce LLC. (Freedman, Devin) (Entered: 06/08/2020) |
| 06/10/2020 | [138](#) | MOTION to Seal *Certain Exhibits to Expedited Motion to Compel and Request for Hearing* per Order authorizing the submission of this document under seal by Naomi Home, Inc., OJ Commerce LLC. (Attachments: # [1](#) Exhibit A - Proposed Order) (Schweikert, Mark) (Entered: 06/10/2020) |
| 06/10/2020 | [139](#) | EXPEDITED MOTION Compel Production of Documents *and Request for Discovery Hearing* by Naomi Home, Inc., OJ Commerce LLC. (Attachments: # [1](#) Exhibit A - May 13, 2020 Email Correspondence, # [2](#) Exhibit B - May 18, 2020 Email Correspondence, # [3](#) Exhibit C - Plaintiffs' Meet-and-Confer Letter to Defendants, Defendants' Letter in Response, and Copy of Defendants' Responses to Plaintiffs' Requests for Admissions, # [4](#) Exhibit D - Plaintiffs' Third Request for Production, # [5](#) Exhibit E - February 2017 Confidential Email (filed under seal), # [6](#) Exhibit F - November 2017 Confidential Email (filed under seal), # [7](#) Exhibit G - November 2016 Confidential Email (filed under seal), # [8](#) Exhibit H - July 2016 Confidential Email (filed under seal), # [9](#) Exhibit I - December 2016 Confidential Email (filed under seal), # [10](#) Exhibit J - June 2020 Email Correspondence, # [11](#) Exhibit K - April 2020 Email Correspondence, # [12](#) Exhibit L - Proposed Order)(Schweikert, Mark). Added MOTION for Discovery Hearing on 6/11/2020 (ail). Added MOTION to Expedite Ruling per Chambers on 6/12/2020 (wc). (Entered: 06/10/2020) |
| 06/10/2020 | [140](#) | Corrected MOTION to Seal *Certain Exhibits to Expedited Motion to Compel and Request for Hearing* re ECF No. [138](#) per Order authorizing the submission of this document under seal by Naomi Home, Inc., OJ Commerce LLC. (Attachments: # [1](#) Exhibit A - Proposed Order) (Schweikert, Mark) (Entered: 06/10/2020) |
| 06/11/2020 | [141](#) | MOTION to Seal *Plaintiffs' Responses to Defendants' Summary Judgment Motion and* |

| | | |
|---|---|---|
| | | *Statement of Facts and Exhibits Thereto, As They Contain Confidential or Highly Confidential Information Under the Protective Order* per Order authorizing the submission of this document under seal by Naomi Home, Inc., OJ Commerce LLC. (Attachments: # 1 Exhibit A - Proposed Order) (Schweikert, Mark) (Entered: 06/11/2020) |
| 06/12/2020 | | SYSTEM ENTRY - Docket Entry 142 [misc] restricted/sealed until further notice. (1428742) (Entered: 06/12/2020) |
| 06/12/2020 | 143 | RESPONSE in Opposition re 130 Defendant's MOTION for Summary Judgment *Defendants' Motion for Summary Judgment and Memoradum of Law in Support Thereof (Redacted) (redacted version)* filed by Naomi Home, Inc., OJ Commerce LLC. Replies due by 6/19/2020. (Attachments: # 1 Exhibit 1)(Freedman, Devin) (Entered: 06/12/2020) |
| 06/12/2020 | | SYSTEM ENTRY - Docket Entry 144 [misc] restricted/sealed until further notice. (1428742) (Entered: 06/12/2020) |
| 06/12/2020 | 145 | PAPERLESS ORDER denying as moot 138 Plaintiffs' Motion to File Certain Exhibits to Discovery Motion Under Seal in light of Plaintiffs' Corrected Motion filed at ECF No. 140 ; granting 140 Plaintiffs' Corrected Motion to File Certain Exhibits to Discovery Motion, ECF No. 139, Under Seal. The exhibits filed, E,F,G, H and I, shall remain sealed until further notice. Signed by Magistrate Judge Lurana S. Snow on 6/12/2020. (sl00) (Entered: 06/12/2020) |
| 06/12/2020 | 146 | PAPERLESS ORDER deferring ruling on 139 Plaintiffs' Request [Motion] for Discovery Hearing. The Court will determine if a hearing is necessary after the Expedited Motion to Compel is fully briefed.; granting in part and denying in part 139 Plaintiffs' Request [Motion] for Expedited Ruling. To the extent that Plaintiffs seek to expedite the briefing on the Expedited Motion to Compel, that part of the request is GRANTED. Accordingly, Defendants shall file a Response to the Motion no later than June 17, 2020, at 5:00 p.m. The parties are further ordered to meaningfully confer by setting a one hour telephone or video-teleconference on June 18, 2020, to discuss the specific alleged deficiencies that Plaintiffs have set forth in an attempt to resolve same without court intervention. If after reviewing each other's positions, and meaningfully conferring the parties resolve their outstanding discovery issues, they shall file a notice of withdrawing the motion. Should the parties only partially resolve the issues, Plaintiffs' shall file a notice of the remaining issues requiring resolution by June 19, 2020. Plaintiffs' Reply shall be filed no later than June 22, 2020. The request for a ruling on this Motion by June 19, 2020, is DENIED. Finally, the undersigned cautions the parties that in the future they will be expected to strictly comply with this Court's Discovery Order regarding page limitations and the Local Rules regarding spacing, format etc. Failure to do so may result in the striking of a motion. Signed by Magistrate Judge Lurana S. Snow on 6/12/2020. (sl00) (Entered: 06/12/2020) |
| 06/12/2020 | | SYSTEM ENTRY - Docket Entry 147 [misc] restricted/sealed until further notice. (1153006) (Entered: 06/12/2020) |
| 06/17/2020 | 148 | RESPONSE in Opposition re 139 EXPEDITED MOTION Compel Production of Documents *and Request for Discovery Hearing* MOTION for Hearing MOTION to Expedite *Defendants' Opposition to Plaintiffs' Expedited Motion to Compel and Request for Discovery Hearing* filed by KidKraft, Inc., MidOcean Partners IV, L.P.. Replies due by 6/24/2020. (Attachments: # 1 Appendix, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J)(Mora, Alexandra) (Entered: 06/17/2020) |
| 06/18/2020 | 149 | Defendant's MOTION to Seal *Defendants' Unopposed Motion to File Under Seal Defendants' Reply in Support of Defendants' Motion for Summary Judgment and* |

| | | |
|---|---|---|
| | | *Supporting Material* per Local Rule 5.4 by KidKraft, Inc., MidOcean Partners IV, L.P.. (Attachments: # 1 Text of Proposed Order) (Mora, Alexandra) (Entered: 06/18/2020) |
| 06/18/2020 | 150 | REPLY to Response to Motion re 130 Defendant's MOTION for Summary Judgment *Defendants' Motion for Summary Judgment and Memoradum of Law in Support Thereof (Redacted) Defendants' Reply in Support of their Motion for Summary Judgment (Redacted)* filed by KidKraft, Inc., MidOcean Partners IV, L.P.. (Mora, Alexandra) (Entered: 06/18/2020) |
| 06/18/2020 | 151 | APPENDIX to 150 Reply to Response to Motion, *(Redacted) Defendants' Appendix in Support of their Reply in Support of their Motion for Summary Judgment* by KidKraft, Inc., MidOcean Partners IV, L.P. (Attachments: # 1 Affidavit Tab H Velturro Rebuttal Report, # 2 Affidavit Tab I Whitbeck Declaration, # 3 Affidavit Tab J Hvidt Declaration, # 4 Exhibit Exhibit 60, # 5 Exhibit Exhibit 61, # 6 Exhibit Exhibit 62, # 7 Exhibit Exhibit 63, # 8 Exhibit Exhibit 64, # 9 Exhibit Exhibit 65, # 10 Exhibit Exhibit 66, # 11 Exhibit Exhibit 67, # 12 Exhibit Exhibit 68)(Mora, Alexandra) (Entered: 06/18/2020) |
| 06/18/2020 | 152 | Statement of: *(Redacted) Defendants' Statement of Material Facts in Support of their Motion for Summary Judgment* by KidKraft, Inc., MidOcean Partners IV, L.P. re 150 Reply to Response to Motion, (Mora, Alexandra) (Entered: 06/18/2020) |
| 06/19/2020 | 153 | NOTICE OF STATUS OF DISCOVERY DISPUTE FOLLOWING PARTIES TELEPHONE CONFERENCE by Naomi Home, Inc., OJ Commerce LLC re 146 Order on Motion for Hearing, Order on Motion to Expedite (Attachments: # 1 Exhibit A - Plaintiffs' Proposal to Resolve Dispute Over Document Deficiencies) (Schweikert, Mark) Text Modified on 6/22/2020 (ail). (Entered: 06/19/2020) |
| 06/22/2020 | 154 | ENDORSED ORDER REFERRING 139 EXPEDITED MOTION Compel Production of Documents to Judge Lurana S. Snow. Signed by Judge Marcia G. Cooke on 6/22/2020. (kou) (Entered: 06/22/2020) |
| 06/22/2020 | 155 | ENDORSED ORDER granting 141 Motion to Seal. Plaintiffs shall file under seal their responses to Defendants Motion for Summary Judgment and Statement of Facts and all exhibits thereto. The filings shall remain under permanent seal or, alternatively, be expunged upon the conclusion of the case or until otherwise ordered by the Court. Signed by Judge Marcia G. Cooke on 6/22/2020. (kou) (Entered: 06/22/2020) |
| 06/22/2020 | 156 | ENDORSED ORDER granting 149 Motion to Seal. Defendants shallfile their Reply in Support of their Motion for Summary Judgment and supporting material UNDER SEAL. The Reply in Support of Defendants Motion for Summary Judgment and supporting material shall remain under permanent seal or until otherwise ordered by the Court or, alternatively, be expunged upon the conclusion of the case. Signed by Judge Marcia G. Cooke on 6/22/2020. (kou) (Entered: 06/22/2020) |
| 06/22/2020 | | SYSTEM ENTRY - Docket Entry 157 [misc] restricted/sealed until further notice. (1087879) (Entered: 06/22/2020) |
| 06/22/2020 | 158 | ENDORSED ORDER denying as moot 133 Motion for Extension of Time. Signed by Judge Marcia G. Cooke on 6/22/2020. (kou) (Entered: 06/22/2020) |
| 06/22/2020 | 159 | ENDORSED ORDER REFERRING 139 EXPEDITED MOTION Compel Production of Documents to Judge Lurana S. Snow. Signed by Judge Marcia G. Cooke on 6/22/2020. (kou) (Entered: 06/22/2020) |
| 06/23/2020 | 160 | REPLY in Support re 139 EXPEDITED MOTION Compel Production of Documents *and Request for Discovery Hearing* MOTION for Hearing MOTION to Expedite filed by Naomi Home, Inc., OJ Commerce LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Schweikert, Mark)Text Modified on 6/23/2020 (ail). (Entered: 06/23/2020) |

| | | |
|---|---|---|
| 06/23/2020 | 161 | MOTION for Protective Order *, or in the Alternative, to Amend the Protective Order* by KidKraft, Inc., MidOcean Partners IV, L.P.. (Attachments: # 1 Text of Proposed Order Proposed Order)(Mora, Alexandra) (Entered: 06/23/2020) |
| 06/24/2020 | 162 | ENDORSED ORDER REFERRING 161 MOTION for Protective Order to Judge Lurana S. Snow. Signed by Judge Marcia G. Cooke on 6/24/2020. (kou) (Entered: 06/24/2020) |
| 06/24/2020 | 163 | ORDER GRANTING IN PART AND DEFERRING IN PART 161 Defendants' Motion for Protective Order, or in the alternative, To Amend the Protective Order. *See attached document for full details.* Signed by Magistrate Judge Lurana S. Snow on 6/24/2020. (sl00) (Entered: 06/24/2020) |
| 06/24/2020 | 164 | RESPONSE in Opposition re 161 MOTION for Protective Order *, or in the Alternative, to Amend the Protective Order* filed by Naomi Home, Inc., OJ Commerce LLC. Replies due by 7/1/2020. (Schweikert, Mark) (Entered: 06/24/2020) |
| 06/24/2020 | 165 | NOTICE by Naomi Home, Inc., OJ Commerce LLC re 164 Response in Opposition to Motion -- *NOTICE OF FILING EXHIBITS OF DEFENDANTS AGREEMENT TO PARAGRAPHS 17 AND 25 OF PROTECTIVE ORDER* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D) (Schweikert, Mark) (Entered: 06/24/2020) |
| 06/24/2020 | 166 | ORDER granting in part and denying in part 139 Plaintiffs' Expedited Motion to Compel ; denying 139 Request for Hearing. *See attached document for full details.* Signed by Magistrate Judge Lurana S. Snow on 6/24/2020. (sl00) (Entered: 06/24/2020) |
| 06/25/2020 | 167 | REPLY to Response to Motion re 161 MOTION for Protective Order *, or in the Alternative, to Amend the Protective Order Defendants' Reply in Support of their Expedited Motion for Protective Order, or in the Alternative, to Amend the Protective Order* filed by KidKraft, Inc., MidOcean Partners IV, L.P.. (Mora, Alexandra) (Entered: 06/25/2020) |
| 06/25/2020 | 168 | EXPEDITED MOTION Reconsideration of Order *Granting Expedited Motion to Compel Production of Documents* re 166 Order on Expedited Motion,, Order on Motion for Hearing, by KidKraft, Inc., MidOcean Partners IV, L.P.. (Attachments: # 1 Exhibit 1) (Mora, Alexandra) (Entered: 06/25/2020) |
| 06/29/2020 | 169 | PAPERLESS ORDER requiring expedited briefing, conferral of counsel and setting hearing on pending, expedited discovery motions, ECF Nos. 161, 168. The parties are hereby ordered to set aside one hour to meet and confer by telephone or by Zoom regarding Defendants' Motion for Reconsideration no later than Tuesday, June 30, 2020. Specifically, consistent with the Order at ECF No. 166, the parties are to determine what subject matters/category of documents, in accordance with any previous agreements, that need not be produced; as well as all categories of any additional documents that the parties agree need not be produced. Further, the parties shall explore the method of production including, but not limited to, whether a sampling as previously suggested by Plaintiffs will accommodate the needs of the parties, including any other suggested methodology. Finally, the parties are to discuss a date for production in light of the current deadlines in place. If the parties are able to resolve these issues amicably, as well as any agreement on the interim Protective Order, they are to file a Notice with the Court by Wednesday, July 1, 2020. If the parties are unable to resolve these issues, Plaintiffs shall respond to Defendants' Expedited Motion for Reconsideration on or before 5:00 p.m., Wednesday, July 1, 2020. Defendants shall file a Reply by 5:00 p.m., Thursday, July 2, 2020. If the parties are unable to resolve some or all of the issues above, a Zoom hearing on all pending, unresolved, expedited discovery motions, ECF Nos. 161, 168 shall be conducted on Tuesday, July 7, 2020, at 11:00 a.m. and will be noticed in a separate Order. Signed by Magistrate Judge Lurana S. Snow on 6/29/2020. (sl00) (Entered: 06/29/2020) |

| | | |
|---|---|---|
| 06/29/2020 | 170 | RESPONSE in Opposition re 168 EXPEDITED MOTION Reconsideration of Order *Granting Expedited Motion to Compel Production of Documents* re 166 Order on Expedited Motion,, Order on Motion for Hearing, *AND REQUEST FOR EXPEDITED HEARING* filed by Naomi Home, Inc., OJ Commerce LLC. Replies due by 7/6/2020. (Attachments: # 1 Exhibit 1)(Freedman, Devin) (Entered: 06/29/2020) |
| 06/29/2020 | 171 | MOTION for Expedited Hearing by Naomi Home, Inc., OJ Commerce LLC. SEE DE 170 IMAGE (ail) (Entered: 06/30/2020) |
| 06/30/2020 | 172 | Clerks Notice to Filer re 170 Response in Opposition to Motion,. **Two or More Document Events Filed as One**; ERROR - Only one event was selected by the Filer but more than one event was applicable to the document filed. The docket entry was corrected by the Clerk. It is not necessary to refile this document but in the future, the Filer must select all applicable events. (ail) (Entered: 06/30/2020) |
| 06/30/2020 | 173 | PAPERLESS ORDER deferring ruling on 171 Plaintiffs' Request for Expedited Hearing. The Plaintiffs shall file no later than 2:00 p.m. today, along with the Notice of Status of Conferral ordered by ECF No. 169, a schedule of the depositions currently scheduled including the date, time of the deposition, the expected length of same, and the person being deposed. Upon receipt of that information, this Court will determine if the hearing set for Tuesday, July 7, 2020, will be rescheduled to July 1, 2020. Signed by Magistrate Judge Lurana S. Snow on 6/30/2020. (sl00) (Entered: 06/30/2020) |
| 06/30/2020 | 174 | Notice of Compliance to 173 Order on Motion for Hearing,, by Naomi Home, Inc., OJ Commerce LLC. (Attachments: # 1 Exhibit 1)(Freedman, Devin) (Entered: 06/30/2020) |
| 06/30/2020 | 175 | PAPERLESS NOTICE of HEARING: ORAL ARGUMENT on Defendants' 161 Expedited Motion for Protective Order, or in the Alternative, to Amend the Protective Order and 168 Expedited Motion for Reconsideration of Order 166 is set for 7/1/2020 @ 1:00 p.m. via Zoom before Magistrate Judge Lurana S. Snow.

The Court has been advised of the deposition that is being conducted commencing at 10:00 a.m. on July 1, 2020, therefore, the parties will take a break from the deposition to conduct the expedited hearing at 1:00 p.m. The deponent shall make himself available after the hearing to ensure the full seven (7) hours of the scheduled deposition is conducted, should it be necessary.

All counsel appearing at the hearing shall provide a telephone number and e-mail address by e-mail to snow@flsd.uscourts.gov no later than 6:00 p.m., today.

Further, all parties are advised that in accordance with Local Rule 77.1, all forms of equipment or means of photographing, audio- or video- recording, broadcasting or televising are prohibited during and after the hearing. (jz) (Entered: 06/30/2020) |
| 06/30/2020 | 176 | REPLY to Response to Motion re 168 EXPEDITED MOTION Reconsideration of Order *Granting Expedited Motion to Compel Production of Documents* re 166 Order on Expedited Motion,, Order on Motion for Hearing, filed by KidKraft, Inc., MidOcean Partners IV, L.P.. (Mora, Alexandra) (Entered: 06/30/2020) |
| 06/30/2020 | 177 | NOTICE *Of Status of Conferral* by KidKraft, Inc., MidOcean Partners IV, L.P. re 173 Order on Motion for Hearing,, 169 Order (Mora, Alexandra) Modified on 7/1/2020 (ail). (Entered: 06/30/2020) |
| 07/01/2020 | 179 | AMENDED PAPERLESS MINUTE ENTRY correcting date of hearing for proceedings held before Magistrate Judge Lurana S. Snow:

Oral Argument held on 7/1/2020 on Defendants' 161 Expedited Motion for Protective |

| | | |
|---|---|---|
| | | Order, or in the Alternative, to Amend the Protective Order and 168 Expedited Motion for Reconsideration of Order 166 . Written order to be entered.<br><br>Constantine Economides, Mark Schweikert and Devin Freedman appeared on behalf of the Plaintiffs.<br><br>Alexandra Mora, Lawrence Silverman, Joshua Lipton and Scott K. Hvidt appeared on behalf of the Defendants.<br><br>(Digital 13:14:06 - 14:16:43) (jz) Text modified on 7/2/2020 (jz). (Entered: 07/02/2020) |
| 07/02/2020 | 178 | ***STRICKEN*** See Docket Entry 179. PAPERLESS MINUTE ENTRY for proceedings held before Magistrate Judge Lurana S. Snow:<br><br>Oral Argument held on 7/2/2020 on Defendants' 161 Expedited Motion for Protective Order, or in the Alternative, to Amend the Protective Order and 168 Expedited Motion for Reconsideration of Order 166 . Written order to be entered.<br><br>Constantine Economides, Mark Schweikert and Devin Freedman appeared on behalf of the Plaintiffs.<br><br>Alexandra Mora, Lawrence Silverman, Joshua Lipton and Scott K. Hvidt appeared on behalf of the Defendants.<br><br>(Digital 13:14:06 - 14:16:43) (jz) (Entered: 07/02/2020) |
| 07/02/2020 | 180 | OMNIBUS ORDER ON DISCOVERY MOTIONS - granting 161 Defendants' Expedited Motion for Protective Order, or in the alternative, to Amend the Protective Order; denying 168 Defendants' Expedited Motion for Reconsideration of Order (ECF No. 166) on Plaintiffs' Expedited Motion to Compel, but Amending Order at ECF No. 166 in light of the conferral of counsel; granting nunc pro tunc 171 Motion for Expedited Hearing. *See attached document for full details.* Signed by Magistrate Judge Lurana S. Snow on 7/2/2020. (sl00) (Entered: 07/02/2020) |
| 07/02/2020 | 181 | MOTION for Extension of Time of Discovery Cutoff Deadline by OJ Commerce LLC. (Attachments: # 1 Text of Proposed Order)(Freedman, Devin) (Entered: 07/02/2020) |
| 07/06/2020 | 182 | **WITHDRAWN** EXPEDITED MOTION to Compel Production *of Plaintiffs' Chief Operating Officer Eshwar Sivan's Documents* by KidKraft, Inc., MidOcean Partners IV, L.P.. (Attachments: # 1 Exhibit 1)(Mora, Alexandra) Text Modified on 7/8/2020 per DE 184 NOTICE(ail). (Entered: 07/06/2020) |
| 07/06/2020 | 183 | PAPERLESS ORDER deferring ruling on 182 Defendant's Expedited Motion To Compel Plaintiffs' COO's Documents. Defendants' request for expedited briefing is GRANTED. The undersigned finds that the conferral referenced in the Motion does not provide the Court with a definitive conclusion regarding Plaintiffs' position regarding the existence and location of the documents at issue. Therefore, Plaintiffs shall provide Defendants with a sworn and verified answer by Mr. Sivan regarding the existence of the custodial documents at issue by 2:00 p.m. on July 7, 2020. Counsel shall thereafter confer meaningfully in an effort to resolve these issues by phone by 3:00 p.m. on July 7, 2020. A Notice of Withdrawal of the Motion shall be filed by 5:00 p.m. on July 7, 2020, if the parties resolve the issue without Court intervention. Should the parties be unable to resolve the issue of the production of the documents at issue, Plaintiffs' shall file their Response by noon on July 8, 2020. Defendants' Reply shall be filed on or before noon on July 9, 2020. Signed by Magistrate Judge Lurana S. Snow on 7/6/2020. (sl00) (Entered: 07/06/2020) |

| | | |
|---|---|---|
| 07/07/2020 | 184 | NOTICE OF WITHDRAWAL OF MOTION by KidKraft, Inc., MidOcean Partners IV, L.P. re 182 EXPEDITED MOTION to Compel Production *of Plaintiffs' Chief Operating Officer Eshwar Sivan's Documents* filed by MidOcean Partners IV, L.P., KidKraft, Inc. *Defendants' Notice of Withdrawal of [D.E. 182] Defendants' Expedited Motion to Compel Production of Plaintiffs' Chief Operating Officer Eshwar Sivan's Documents* (Attachments: # 1 Exhibit 1 - Eshwar Sivan's Verified Response) (Mora, Alexandra) (Entered: 07/07/2020) |
| 07/09/2020 | 185 | Defendant's MOTION to Seal *Defendants' Unopposed Motion to File Under Seal Defendants' Appendix in Support of their Daubert Motion to Exclude the Testimony of Jennifer Vanderhart, Ph.D., and Motion to Strike New "Addendum Expert Report"* per Local Rule 5.4 by KidKraft, Inc., MidOcean Partners IV, L.P.. (Attachments: # 1 Text of Proposed Order) (Mora, Alexandra) (Entered: 07/09/2020) |
| 07/09/2020 | 186 | ENDORSED ORDER granting 185 Motion to Seal. Defendants shall file their Appendix in Support of their Daubert Motion to Exclude the Testimony of Jennifer Vanderhart, Ph.D., and their Motion to Strike New "Addendum Expert Report" UNDER SEAL. The Appendix in Support of their Daubert Motion to Exclude the Testimony of Jennifer Vanderhart, Ph.D., and their Motion to Strike New "Addendum Expert Report" shall remain under permanent seal or until otherwise ordered by the Court or, alternatively, be expunged upon the conclusion of the case. Signed by Judge Marcia G. Cooke on 7/9/2020. (kou) (Entered: 07/09/2020) |
| 07/09/2020 | 187 | MOTION Daubert Motion *to Exclude the Testimony of Jennifer Vanderhart, Ph.D.*, MOTION to Strike *New "Addendum Expert Report"* ( Responses due by 7/23/2020) by KidKraft, Inc., MidOcean Partners IV, L.P.. (Mora, Alexandra) (Entered: 07/09/2020) |
| 07/09/2020 | 188 | APPENDIX to 187 MOTION Daubert Motion *to Exclude the Testimony of Jennifer Vanderhart, Ph.D.* MOTION to Strike *New "Addendum Expert Report" (Redacted) Defendants' Appendix in Support of ther Daubert Motion to Exclude the Testimony of Jennifer Vanderhart, Ph.D., and Motion to Strike New "Addendum Expert Report"* by KidKraft, Inc., MidOcean Partners IV, L.P. (Attachments: # 1 Tab A (Redacted), # 2 Tab A-1 (Redacted), # 3 Tab A-2 (Redacted), # 4 Tab A-3 (Redacted), # 5 Tab B (Redacted)) (Mora, Alexandra) (Entered: 07/09/2020) |
| 07/09/2020 | | SYSTEM ENTRY - Docket Entry 189 [misc] restricted/sealed until further notice. (1087879) (Entered: 07/09/2020) |
| 07/10/2020 | 190 | ENDORSED ORDER granting in part and denying in part 181 Motion for Extension of Time. The Discovery Deadline in this matter is hereby extended to July 31, 2020 This deadline will not be extended any further absent extenuating circumstances. All other pretrial deadlines remain unchanged. Signed by Judge Marcia G. Cooke on 7/10/2020. (kou) (Entered: 07/10/2020) |
| 07/10/2020 | 191 | AMENDED GENERAL ORDER ON DISCOVERY OBJECTIONS AND PROCEDURES signed by Magistrate Judge Lurana S. Snow on 7/9/2020. Text modified on 7/10/2020 to correct date signed by Judge Snow. (jz) (Entered: 07/10/2020) |
| 07/11/2020 | 192 | EXPEDITED MOTION for Protective Order as to the Proposed Deposition of MidOcean's CEO, Ted Virtue by KidKraft, Inc., MidOcean Partners IV, L.P.. (Attachments: # 1 Exhibit 1-Notice of Videotaped Deposition of Ted Virtue)(Mora, Alexandra) (Entered: 07/11/2020) |
| 07/11/2020 | 193 | ENDORSED ORDER REFERRING 192 EXPEDITED MOTION for Protective Order as to the Proposed Deposition of MidOcean's CEO, Ted Virtue to Judge Lurana S. Snow. Signed by Judge Marcia G. Cooke on 7/11/2020. (kou) (Entered: 07/11/2020) |
| 07/12/2020 | 194 | MOTION to Seal *Plaintiffs' Response and Exhibits Thereto to Defendants' Expedited* |

| | | |
|---|---|---|
| | | *Motion for a Protective Order as to the Proposed Deposition of MidOcean's CEO, Ted Virtue* per Order authorizing the submission of this document under seal by Naomi Home, Inc., OJ Commerce LLC. (Attachments: # 1 Exhibit A - Proposed Order) (Schweikert, Mark) (Entered: 07/12/2020) |
| 07/13/2020 | 195 | PAPERLESS ORDER granting Defendants' Request for Expedited Briefing on Defendants' Expedited Motion for Protective Order 192 , deferring ruling on on the substantive Motion 192 until full briefing and; granting 194 Plaintiffs' Motion to Seal Response to Defendants' Expedited Motion for Protective Order as to the Deposition of MidOcean's CEO, Ted Virtue. In light of this Court's Order herein granting expedited briefing on Defendants' Expedited Motion for Protective Order 192 , Plaintiffs' Sealed Response shall be filed on or before July 14, 2020, at 10 a.m. Thereafter, Mr. Virtue shall provide a verified statement that he has no information regarding the areas of inquiry requested by Plaintiffs by 1:00 p.m., July 14, 2020, and the parties shall confer again by phone by 3:00 p.m., July 14, 2020. If the parties resolve the issues presented in Defendants' Motion for Protective Order, they shall file a Notice of Withdrawal by 6:00 p.m., July 14, 2020. If the parties fail to resolve the issues presented, Defendants' Reply shall be filed on or before 10 a.m., July 15, 2020. Signed by Magistrate Judge Lurana S. Snow on 7/13/2020. (sl00) (Entered: 07/13/2020) |
| 07/14/2020 | | SYSTEM ENTRY - Docket Entry 196 [misc] restricted/sealed until further notice. (1153006) (Entered: 07/14/2020) |
| 07/14/2020 | 197 | RESPONSE in Opposition re 192 EXPEDITED MOTION for Protective Order as to the Proposed Deposition of MidOcean's CEO, Ted Virtue *(REDACTED VERSION)* filed by Naomi Home, Inc., OJ Commerce LLC. Replies due by 7/21/2020. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G)(Schweikert, Mark) (Entered: 07/14/2020) |
| 07/14/2020 | 198 | Defendants' Notice of Filing the Declaration of MidOcean Partners, L.P.'s CEO, Ted Virtue by KidKraft, Inc., MidOcean Partners IV, L.P. (Attachments: # 1 Exhibit 1 Declaration of MidOcean Partners, L.P.s CEO, Ted Virtue) (Mora, Alexandra) Text Modified on 7/15/2020 (ail). (Entered: 07/14/2020) |
| 07/14/2020 | 199 | NOTICE *of Conferral Regarding Defendants' Motion for Protective Order as to the Proposed Deposition of MidOcean's CEO, Ted Virtue* by KidKraft, Inc., MidOcean Partners IV, L.P. re 195 Order on Expedited Motion,,,,, Order on Motion to Seal,,,, 192 EXPEDITED MOTION for Protective Order as to the Proposed Deposition of MidOcean's CEO, Ted Virtue (Mora, Alexandra) Text Modified on 7/15/2020 (ail). (Entered: 07/14/2020) |
| 07/15/2020 | 200 | REPLY to Response to Motion re 192 EXPEDITED MOTION for Protective Order as to the Proposed Deposition of MidOcean's CEO, Ted Virtue *Defendants' Reply in Support of their Expedited Motion for Protective Order as to the Proposed Deposition of Midocean, L.P.'s CEO, Ted Virtue* filed by KidKraft, Inc., MidOcean Partners IV, L.P.. (Mora, Alexandra) (Entered: 07/15/2020) |
| 07/15/2020 | 201 | PAPERLESS ORDER denying 192 Defendants' Expedited Motion for Protective Order as to the Deposition of MidOcean's CEO, Ted Virtue. Having carefully reviewed the Motion, Response and Reply and all attachments thereto, the undersigned finds that Plaintiffs have satisfied the Court that the witness potentially has unique, non-repetitive, firsthand knowledge of facts at issue. The deposition of Mr. Virtue shall go forward as scheduled. Signed by Magistrate Judge Lurana S. Snow on 7/15/2020. (sl00) (Entered: 07/15/2020) |
| 07/23/2020 | 202 | MOTION to Seal *Plaintiffs' Response to Defendants' Daubert Motion to Exclude the Testimony of Jennifer Vanderhart, Ph.D.* per Order authorizing the submission of this |

| | | |
|---|---|---|
| | | document under seal by Naomi Home, Inc., OJ Commerce LLC. (Attachments: # 1 Exhibit A - Proposed Order) (Schweikert, Mark) (Entered: 07/23/2020) |
| 07/23/2020 | 203 | EXPEDITED MOTION FOR LEAVE TO TAKE FOUR 90-MINUTE DEPOSITIONS by Naomi Home, Inc., OJ Commerce LLC. (Hecht, Shlomo) (Entered: 07/23/2020) |
| 07/23/2020 | 204 | PAPERLESS ORDER requiring expedited briefing on Plaintiffs' Expedited Motion for Leave to Take Four 90 Minute Depositions, ECF No. 203. Defendants' Response to the Motion shall be due no later than 3:00 p.m., July 24, 2020, the Reply shall be filed no later than 5:00 p.m., July 24, 2020. Signed by Magistrate Judge Lurana S. Snow on 7/23/2020. (sl00) (Entered: 07/23/2020) |
| 07/23/2020 | 205 | RESPONSE in Opposition re 187 MOTION Daubert Motion *to Exclude the Testimony of Jennifer Vanderhart, Ph.D.* MOTION to Strike *New "Addendum Expert Report" in REDACTED Format Due to Confidential Information* filed by Naomi Home, Inc., OJ Commerce LLC. Replies due by 7/30/2020. (Attachments: # 1 Exhibit A - Sept. 2016 Email Between Walmart and KidKraft, # 2 Exhibit B - Lazard Middle Market LLCs Conf. Memo., # 3 Exhibit C - Defs. Expert Report, # 4 Exhibit D - Defs. Re-Notice of Taking Videotaped Dep. of Dr. Vanderhart, # 5 Exhibit E - Pltfs. Counsels July 7, 2020 Email)(Schweikert, Mark) (Entered: 07/23/2020) |
| 07/24/2020 | 206 | RESPONSE in Opposition re 203 EXPEDITED MOTION FOR LEAVE TO TAKE FOUR 90-MINUTE DEPOSITIONS *Defendants' Response to Plaintifffs' Motion for Leave to Take Additional Depositions, and Cross-Motion for Protective Order* filed by KidKraft, Inc., MidOcean Partners IV, L.P.. Replies due by 7/31/2020. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Mora, Alexandra) Modified to a motion for protective order per chambers on 7/27/2020 (mf). (Entered: 07/24/2020) |
| 07/24/2020 | 207 | PAPERLESS ORDER ADVISING THE PARTIES that the undersigned will not entertain separate briefing of Defendants' Cross Motion for Protective Order, finding that the requested relief is related to Plaintiffs' Motion for Leave to Take Additional Depositions. Therefore, Plaintiff shall be permitted to file a five page Reply, if necessary, to address Defendants' Response and Cross-Motion for Protective Order. No further briefing on these Motions be permitted unless ordered by the Court. Signed by Magistrate Judge Lurana S. Snow on 7/24/2020. (sl00) (Entered: 07/24/2020) |
| 07/24/2020 | 208 | MOTION to Seal *PLAINTIFFS' REPLY IN SUPPORT OF EXPEDITED MOTION FOR LEAVE TO TAKE FOUR 90-MINUTE DEPOSITIONS* per Order authorizing the submission of this document under seal by Naomi Home, Inc., OJ Commerce LLC. (Attachments: # 1 Exhibit A - Proposed Order) (Schweikert, Mark) (Entered: 07/24/2020) |
| 07/24/2020 | | SYSTEM ENTRY - Docket Entry 209 [misc] restricted/sealed until further notice. (1428742) (Entered: 07/24/2020) |
| 07/24/2020 | 210 | PAPERLESS ORDER granting 208 Plaintiffs' Motion to File Plaintiffs' Reply to Motion for Additional Depositions and Response to Defendants' Cross Motion for Protective Order Under Seal. Signed by Magistrate Judge Lurana S. Snow on 7/24/2020. (sl00) (Entered: 07/24/2020) |
| 07/27/2020 | 211 | ENDORSED ORDER REFERRING 203 EXPEDITED MOTION FOR LEAVE TO TAKE FOUR 90-MINUTE DEPOSITIONS to Judge Lurana S. Snow. Signed by Judge Marcia G. Cooke on 7/27/2020. (kou) (Entered: 07/27/2020) |
| 07/27/2020 | 212 | ORDER granting 203 Plaintiffs' Expedited Motion to Take Depositions ; denying 206 Defendants' Cross-Motion for Protective Order. *See attached document for full details.* Signed by Magistrate Judge Lurana S. Snow on 7/27/2020. (sl00) (Entered: 07/27/2020) |
| 07/29/2020 | 213 | MOTION to Quash *Subpoena for Deposition Directed at Nonparty BBVA Financial* |

| | | |
|---|---|---|
| | | *Corporation* by BBVA Financial Corporation. Attorney Kimberly De La Cruz added to party BBVA Financial Corporation(pty:obj). (De La Cruz, Kimberly) (Entered: 07/29/2020) |
| 07/29/2020 | 214 | ENDOSED ORDER REFERRING 213 MOTION to Quash *Subpoena for Deposition Directed at Nonparty BBVA Financial Corporation* to Judge Lurana S. Snow. Signed by Judge Marcia G. Cooke on 7/29/2020. (kou) (Entered: 07/29/2020) |
| 07/29/2020 | 215 | MOTION to Seal *PLAINTIFFS' EXPEDITED MOTION FOR SANCTIONS* per Order authorizing the submission of this document under seal by Naomi Home, Inc., OJ Commerce LLC. (Attachments: # 1 Exhibit A - Proposed Order) (Schweikert, Mark) (Entered: 07/29/2020) |
| 07/29/2020 | 216 | EXPEDITED MOTION FOR DISCOVERY SANCTIONS PURSUANT TO FED. R. CIV. P. 37(c) AND 26(g), THE COURT'S ORDER 180 , AND ITS INHERENT AUTHORITY -- FILED IN REDACTED FORMAT PENDING RUELING ON MOTION TO FILE UNDER SEAL 215 by Naomi Home, Inc., OJ Commerce LLC. (Attachments: # 1 Exhibit A - Transcript of July 1, 2020 Discovery Hearing, # 2 Exhibit B - Chart of Wrongfully Withheld Responsive Documents, # 3 Exhibit C - Compilation of Samples of Wrongfully Withheld Responsive Documents, # 4 Exhibit D - September 2016 "Smoking Gun" Email, # 5 Exhibit E - Defendants' April 29, 2020 Letter to Plaintiffs, # 6 Exhibit F - November 2016 "Smoking Gun" Email, # 7 Exhibit G - Proposed Order)(Schweikert, Mark) (Entered: 07/29/2020) |
| 07/30/2020 | | SYSTEM ENTRY - Docket Entry 217 [motion] restricted/sealed until further notice. (1153006) (Entered: 07/30/2020) |
| 07/30/2020 | 218 | PAPERLESS ORDER granting 215 Plaintiffs' Motion to Seal. Signed by Magistrate Judge Lurana S. Snow on 7/30/2020. (sl00) (Entered: 07/30/2020) |
| 07/30/2020 | 219 | PAPERLESS ORDER denying without prejudice 213 Non-Party BBVA Financial Corporation's Motion to Quash for failing to meaningfully confer regarding the relief requested prior to filing the Motion. Counsel are instructed to meaningfully confer no later than 3:00p.m. today by telephone to resolve the issues raised in the Motion in light of the alleged misidentification of the non-party with information. Signed by Magistrate Judge Lurana S. Snow on 7/30/2020. (sl00) (Entered: 07/30/2020) |
| 07/30/2020 | 220 | ENDORSED ORDER REFERRING 216 Expedited Motion For Discovery Sanctions and 217 Sealed Motion Expedited Motion For Discovery Sanctions. Motions referred to Judge Lurana S. Snow. Signed by Judge Marcia G. Cooke on 7/30/2020. (kou) (Entered: 07/30/2020) |
| 07/30/2020 | 221 | Defendant's MOTION to Seal *Defendants' Unopposed Motion to File Under Seal Defendants' Appendix in Support of their Daubert Motion to Exclude the Testimony of Jennifer Vanderhart, Ph.D., and Motion to Strike New "AddendumExpertReport"* per Local Rule 5.4 by KidKraft, Inc., MidOcean Partners IV, L.P.. (Attachments: # 1 Text of Proposed Order) (Mora, Alexandra) (Entered: 07/30/2020) |
| 07/30/2020 | 222 | PAPERLESS ORDER REQUIRING EXPEDITED BRIEFING on Plaintiffs' Sealed Expedited Motion for Sanctions, ECF No. 217. Defendants' shall file their Response no later than 9:00 a.m., July 31, 2020; and Plaintiffs' Reply shall be filed no later than noon, July 31, 2020. Signed by Magistrate Judge Lurana S. Snow on 7/30/2020. (sl00) (Entered: 07/30/2020) |
| 07/30/2020 | 223 | PAPERLESS ORDER denying as moot 216 Plaintiffs' Redacted Expedited Motion for Sanctions in that the Court will address the duplicated Motion filed under seal at ECF No. 217. Signed by Magistrate Judge Lurana S. Snow on 7/30/2020. (sl00) (Entered: 07/30/2020) |

| 07/30/2020 | 224 | MOTION for Extension of Time to File Response/Reply/Answer as to 222 Order, *to File Response to Plaintiffs' Motion for Sanctions* by KidKraft, Inc., MidOcean Partners IV, L.P.. (Attachments: # 1 Exhibit Comp. Ex. 1-Notices of Deposition)(Mora, Alexandra) (Entered: 07/30/2020) |
|---|---|---|
| 07/30/2020 | 225 | ORDER denying 217 Plaintiffs' Sealed Motion for Sanctions ; denying as moot 224 Defendants' Motion for Extension of Time to File Response to Expedited Motion for Sanctions. Signed by Magistrate Judge Lurana S. Snow on 7/30/2020. *See attached document for full details.* (sl00) Modified to Unseal on 7/31/2020 (ra). (Entered: 07/30/2020) |
| 07/30/2020 | 226 | REPLY to Response to Motion re 187 MOTION Daubert Motion *to Exclude the Testimony of Jennifer Vanderhart, Ph.D.* MOTION to Strike *New "Addendum Expert Report" Defendants' Reply Brief in Support of Daubert Motion to Exclude the Testimony of Jennifer Vanderhart, Ph.D and Motion to Strike New "Addendum Expert Report"* filed by KidKraft, Inc., MidOcean Partners IV, L.P.. (Mora, Alexandra) (Entered: 07/30/2020) |
| 07/30/2020 | 227 | APPENDIX to 226 Reply to Response to Motion, *Defendants' Appendix in Support of their Reply Brief in Support of their Daubert Motion to Exclude the Testimony of Jennifer Vanderhart, Ph.D, and Motion to Strike New "Addendum Expert Report"* by KidKraft, Inc., MidOcean Partners IV, L.P. (Attachments: # 1 Tab A, # 2 Tab B, # 3 Tab C)(Mora, Alexandra) (Entered: 07/30/2020) |
| 07/31/2020 | 228 | **WITHDRAWN** RESPONSE in Opposition re 216 EXPEDITED MOTION FOR DISCOVERY SANCTIONS PURSUANT TO FED. R. CIV. P. 37(c) AND 26(g), THE COURT'S ORDER 180 , AND ITS INHERENT AUTHORITY -- FILED IN REDACTED FORMAT PENDING RULING ON MOTION TO FILE UNDER SEAL 215 filed by KidKraft, Inc., MidOcean Partners IV, L.P.. Replies due by 8/7/2020. (Attachments: # 1 Exhibit A-Declaration of Joshua Lipton, # 2 Exhibit B-Analysis of Purportedly "Withheld" Documents Claimed by Plaintiffs)(Mora, Alexandra) Text Modified on 8/3/2020 (ail). (Entered: 07/31/2020) |
| 07/31/2020 | 229 | NOTICE of Withdrawal of Motion to Extend Time to File Response to Plaintiffs' Motion for Sanctions by KidKraft, Inc., MidOcean Partners IV, L.P. re 224 MOTION for Extension of Time to File Response/Reply/Answer as to 222 Order (Mora, Alexandra)Text Modified on 8/3/2020 (ail). (Entered: 07/31/2020) |
| 07/31/2020 | 230 | NOTICE by KidKraft, Inc., MidOcean Partners IV, L.P. re 228 Response in Opposition to Motion,, *of Withdrawal of Defendants' Response to Plaintiffs' Motion for Sanctions* (Mora, Alexandra) (Entered: 07/31/2020) |
| 08/13/2020 | 231 | Unopposed MOTION for Leave to File *Supplements to Plaintiff' Original Summary Judgment Response, But Partially Opposed by Defendants as Set Forth in Position Statement* by Naomi Home, Inc., OJ Commerce LLC. (Attachments: # 1 Exhibit A - Plaintiffs' Proposed Order, # 2 Exhibit B - Defendants' Proposed Order)(Schweikert, Mark) (Entered: 08/13/2020) |
| 08/14/2020 | 232 | ENDORSED ORDER granting in part and denying in part 231 Motion for Leave to File. It is hereby Ordered and Adjudged as follows:<br><br>1. Plaintiffs shall file a supplemental brief not to exceed five (5) pages in length on or before August 24, 2020.<br><br>2. Defendants then shall file a supplemental brief not to exceed five (5) pages in length on or before August 31, 2020.<br><br>Signed by Judge Marcia G. Cooke on 8/14/2020. (kou) (Entered: 08/14/2020) |

| 08/24/2020 | 233 | Joint MOTION for Extension of Time of Certain Pretrial Deadlines re 73 Scheduling Order,,, Set/Reset Deadlines,, by KidKraft, Inc., MidOcean Partners IV, L.P.. Responses due by 9/8/2020 (Mora, Alexandra) (Entered: 08/24/2020) |
|---|---|---|
| 08/24/2020 | 234 | Plaintiff's MOTION to Seal *THEIR SUPPLEMENT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT* per Local Rule 5.4 by OJ Commerce LLC. (Attachments: # 1 Text of Proposed Order) (Economides, Constantine) (Entered: 08/24/2020) |
| 08/25/2020 | | SYSTEM ENTRY - Docket Entry 235 [misc] restricted/sealed until further notice. (1428742) (Entered: 08/25/2020) |
| 08/25/2020 | 236 | ENDORSED ORDER granting 234 Motion to Seal. Plaintiffs shall file under seal their Supplement in Opposition to Defendants' Motion for Summary Judgment and the exhibits thereto. The filings shall remain under seal until otherwise ordered by the Court. Signed by Judge Marcia G. Cooke on 8/25/2020. (rrt) (Entered: 08/25/2020) |
| 08/25/2020 | 237 | ENDORSED ORDER granting 202 Motion to Seal. Plaintiffs shall file under seal their response and the exhibits thereto to Defendants' Daubert Motion to Exclude the Testimony of Jennifer Vanderhart, Ph.D. The filings shall remain under seal until otherwise ordered by the Court. Signed by Judge Marcia G. Cooke on 8/25/2020. (rrt) (Entered: 08/25/2020) |
| 08/25/2020 | 238 | ENDORSED ORDER granting 221 Motion to Seal. Defendants shall file their Appendix in Support of their Reply Brief in Support of their Daubert Motion to Exclude the Testimony of Jennifer Vanderhart, Ph.D., and their Motion to Strike New "Addendum Expert Report" UNDER SEAL. The Appendix in Support of their Reply Brief in Support of their Daubert Motion to Exclude the Testimony of Jennifer Vanderhart, Ph.D., and their Motion to Strike New "Addendum Expert Report" shall remain under seal until otherwise ordered by the Court. Signed by Judge Marcia G. Cooke on 8/25/2020. (rrt) (Entered: 08/25/2020) |
| 08/25/2020 | | SYSTEM ENTRY - Docket Entry 239 [misc] restricted/sealed until further notice. (1087879) (Entered: 08/25/2020) |
| 08/25/2020 | | SYSTEM ENTRY - Docket Entry 240 [misc] restricted/sealed until further notice. (1153006) (Entered: 08/25/2020) |
| 08/31/2020 | 241 | Defendant's MOTION to Seal *Defendants' Motion to File Under Seal Defendants' Supplemental Brief in Support of their Motion for Summary Judgment* per Local Rule 5.4 by KidKraft, Inc., MidOcean Partners IV, L.P.. (Attachments: # 1 Text of Proposed Order) (Mora, Alexandra) (Entered: 08/31/2020) |
| 08/31/2020 | 242 | SUPPLEMENT to 130 Defendant's MOTION for Summary Judgment *Defendants' Motion for Summary Judgment and Memoradum of Law in Support Thereof (Redacted) Defendants' Supplemental Brief in Support of their Motion for Summary Judgment (REDACTED)* by KidKraft, Inc., MidOcean Partners IV, L.P. (Attachments: # 1 Appendix, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7)(Mora, Alexandra) (Entered: 08/31/2020) |
| 09/17/2020 | 243 | Notification of Ninety Days Expiring *(Defendants' Notification of Ninety (90) Days Expiring on the Motion for Summary Judgment* by KidKraft, Inc., MidOcean Partners IV, L.P. (Mora, Alexandra) (Entered: 09/17/2020) |
| 09/24/2020 | 244 | PRETRIAL STIPULATION *Joint Pretrial Stipulation* by Naomi Home, Inc., OJ Commerce LLC (Economides, Constantine) (Entered: 09/24/2020) |
| 09/24/2020 | 245 | Joint MOTION in Limine *Summary of the Parties' Motions in Limine* by KidKraft, Inc., MidOcean Partners IV, L.P.. (Mora, Alexandra) (Entered: 09/24/2020) |

| | | |
|---|---|---|
| 10/01/2020 | 246 | Joint EXPEDITED MOTION Continuance of trial date and associated trial deadlines *Joint Expedited Motion for Continuance of Trial Date and Associated Trial Deadlines* by KidKraft, Inc., MidOcean Partners IV, L.P.. (Attachments: # 1 Text of Proposed Order) (Mora, Alexandra) (Entered: 10/01/2020) |
| 10/20/2020 | 247 | ENDORSED ORDER granting in part and denying in part 233 Motion for Extension of Time; and 246 Expedited Motion. On August 11, 2020, the Honorable Chief Judge K. Michael Moore entered Administrative Order 2020-53, Sixth Order Concerning Jury Trials and Other Proceedings, continuing all jury trials in the Southern District of Florida scheduled to begin on or after March 30, 2020, until January 4, 2021. Accordingly, the trial in this matter is continued until further Order of the Court. Likewise, the Court will provide a new deadline for the parties to provide the Court with proposed jury instructions, witness lists, proposed voir dire questions, deposition designations, and exhibit lists at a later date. Signed by Judge Marcia G. Cooke on 10/20/2020. (rrt) (Entered: 10/20/2020) |
| 12/10/2020 | 248 | Notification of Ninety Days Expiring *Defendants' Supplemental Notification of Ninety (90) Days Expiring on the Motion for Summary Judgment* by KidKraft, Inc., MidOcean Partners IV, L.P. re 130 Defendant's MOTION for Summary Judgment *Defendants' Motion for Summary Judgment and Memoradum of Law in Support Thereof (Redacted)* filed by MidOcean Partners IV, L.P., KidKraft, Inc. (Mora, Alexandra) (Entered: 12/10/2020) |
| 12/10/2020 | 249 | Notice of Supplemental Authority re 130 Defendant's MOTION for Summary Judgment *Defendants' Motion for Summary Judgment and Memoradum of Law in Support Thereof (Redacted) Defendants' Notice of Supplemental Authority in Support of Motion for Summary Judgment [ECF No. 130]* by KidKraft, Inc., MidOcean Partners IV, L.P. (Attachments: # 1 Supplement Attachment - Order/Opinion) (Mora, Alexandra) (Entered: 12/10/2020) |
| 01/04/2021 | 250 | Notice of Supplemental Authority *in Opposition to Defendants' Motion for Summary Judgment (ECF No. 130)* by OJ Commerce LLC (Attachments: # 1 M & M Realty Partners at Hagen Ranch LLC v. Mazzoni) (Freedman, Devin) (Entered: 01/04/2021) |
| 01/27/2021 | 251 | NOTICE of Change of Address, Email or Law Firm Name by Barbara Joy Riesberg (Riesberg, Barbara) (Entered: 01/27/2021) |
| 01/27/2021 | 252 | ENDORSED ORDER granting 241 Motion to Seal. Defendants shall file their Supplemental Brief in Support of their Motion for Summary Judgment and supporting documents UNDER SEAL by January 28, 2021. The Supplemental Brief in Support of Defendants' Motion for Summary Judgment and supporting documents shall remain under seal until otherwise ordered by the Court or, alternatively, be expunged upon the conclusion of the case. Signed by Judge Marcia G. Cooke on 1/27/2021. (rrt) (Entered: 01/27/2021) |
| 01/27/2021 | 253 | STIPULATION re 251 Notice of Change of Address, Email or Law Firm Name *for Substitution of Counsel* by KidKraft, Inc. (Attachments: # 1 Text of Proposed Order Approving Substitution of Counsel)(Riesberg, Barbara)Event Modified on 1/28/2021 (ail). (Entered: 01/27/2021) |
| 01/28/2021 | | SYSTEM ENTRY - Docket Entry 254 [misc] restricted/sealed until further notice. (1087879) (Entered: 01/28/2021) |
| 03/31/2021 | 255 | ORDER ON DEFENDANTS MOTION FOR SUMMARY JUDGEMENT re 130 Motion for Summary Judgment. Closing Case. Signed by Judge Marcia G. Cooke on 3/30/2021. *See attached document for full details.* (ail) (Entered: 03/31/2021) |

| 03/31/2021 | | Deadline(s)/Hearing(s) terminated. SEE DE 255 ORDER (ail) (Entered: 03/31/2021) |
|---|---|---|
| 04/29/2021 | 256 | Notice of Appeal by OJ Commerce LLC. re: 255 Order. Filing fee $ 505.00 receipt number AFLSDC-14648337. Within fourteen days of the filing date of a Notice of Appeal, the appellant must complete the Eleventh Circuit Transcript Order Form regardless of whether transcripts are being ordered [Pursuant to FRAP 10(b)]. For information go to our FLSD website under Transcript Information. (Freedman, Devin) (linked docket entry number) Text Modified on 5/4/2021 (hh). (Entered: 04/29/2021) |
| 04/29/2021 | 259 | Clerks Notice to Filer re 256 Notice of Appeal. **Document Not Linked**; ERROR - The filed document was not linked to the related docket entry. The correction was made by the Clerk. It is not necessary to refile this document. (hh) (Entered: 05/04/2021) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/19/2021 13:47:54 | | | |
| **PACER Login:** | adavis5754 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 0:19-cv-60341-MGC Start date: 1/1/2018 End date: 4/29/2021 |
| **Billable Pages:** | 27 | **Cost:** | 2.70 |

# DE 1

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

OJ COMMERCE LLC; and
NAOMI HOME, INC.,

     *Plaintiffs*

against

KIDKRAFT, LP; and
MID-OCEAN PARTNERS, LP

     *Defendants.*

Case #:   0:19-cv-60341

**COMPLAINT**

Plaintiffs, OJ Commerce, LLC ("OJC") and Naomi Home, Inc. ("NH") hereby bring this action for damages and other relief against Defendants KIDKRAFT, LP ("KidKraft") and MID-OCEAN PARTNERS, LP ("MidOcean"), collectively ("Defendants"), for violations of § 1 and 2 of the Sherman Antitrust Act.

**PARTIES**

1.    Plaintiff OJC is a Delaware limited liability company with its principal place of business in Broward County, Florida. Plaintiff's single member resides in Florida. OJC is an online retailer engaged in interstate commerce within the continental United States. OJC resells, *inter alia*, wooden play kitchens.

2.    Plaintiff NH is a Delaware corporation, with its principal place of business in Broward County, Florida. NH is a manufacturer of consumer products. NH manufactures, *inter alia*, wooden play kitchens.

3.    While distinct corporate entities, NH and OJC share a common owner.

4.    Defendant KidKraft is a Texas corporation with its principal place of business in Dallas, Texas. KidKraft manufactures toys that it sells both wholesale and for retail. One of its

most popular line of products are wooden play kitchens. KidKraft is engaged in interstate commerce within the continental United States including this District.

5.      Defendant MidOcean Partners is a Delaware corporation with its principal place of business in New York City, New York. MidOcean is a private equity firm, and has a significant interest in retail products within the play furniture category, such as wooden play kitchens sold within the continental United States.

## JURISDICTION AND VENUE

6.      Plaintiffs' action arises under §1 and 2 of the Sherman Antitrust Act, which is codified at 15 U.S.C. §1 and 2. Plaintiffs seek damages under §4 of the Clayton Act, which is codified at 15 U.S.C. §15.

7.      This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 15; § 28 U.S.C. § 1331, and 28 U.S.C. 1337(a). This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

8.      This Court has personal jurisdiction over Defendant Kidkraft because, *inter alia*, it (a) transacted business within the United States, including this District, (b) sold products including wooden play kitchens throughout the United States, including this District (c) had substantial contacts with the United States, including in this District, and (d) was engaged in an unlawful restraint of trade that injured persons residing in, located in, or doing business throughout the United States, including this District. This Court also has personal jurisdiction over Defendant MidOcean because it satisfies (a), (c), and (d) above.

9.      Defendants engaged in conduct inside the United States that caused direct, substantial, and reasonably foreseeable and intended anticompetitive effects upon interstate

commerce within the United States. The activities of Defendants were within the flow of, were intended to, and did have, a substantial effect on interstate commerce of the United States. Defendants' products and services are sold in the flow of interstate commerce.

10.     This Court has also personal jurisdiction over Defendants pursuant to Fla. Stat. § 48.193, as each operated, conducted, engaged in, and carried on a business venture in this state; committed a tortious act within this state; and is engaged in substantial and not isolated activity within this state.

11.     Venue is proper in this District pursuant to §12 of the Clayton Act (15 U.S.C. §22) and 28 U.S.C. §1391(b)-(d), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed herein has been carried out in this District, and one or more of the Defendants resides in, is licensed to do business in, is doing business in, had agents in, or is found or transacts business in, this District.

## INTRODUCTION

12.     Everyone knows that children enjoy playing pretend. To that end, toy stores sell little mini toy kitchens, or "play kitchens" that are kept in the bedroom or playroom and that enable children to pretend to cook and play house. Generally, these play kitchens are either made of wood or plastic. As detailed below, the market for wooden kitchens and plastic kitchens are distinct.

13.     Defendant KidKraft controls over 70% of the wooden play kitchen market in the continental United States and that it has maintained that monopoly power illegally by leveraging it to exclude competition.

## FACTS COMMON TO ALL COUNTS

14.     KidKraft manufacturers, wholesales, and retails, *inter alia*, wooden play kitchens.

KidKraft sells its products to online retailers like Amazon.com, and to brick and mortar stores like Costco, Walmart and Target. As detailed below KidKraft holds a dominant market position in the wooden play kitchen market within the Continental United States.

15.    NH also manufacturers, *inter alia*, wooden play kitchens. It is KidKraft's direct competitor in the wholesale space.

16.    OJC is an online retailer that sells, *inter alia*, wooden play kitchens. OJC competes in the online arena by providing aggressive discounts to consumers. As detailed below, OJC used to carry KidKraft and NH wooden play kitchens for sale.

***The relevant product market is the wholesale markets for wooden play kitchens***

17.    The market for wooden play kitchens is unique and separate from the market for plastic play kitchens because they (1) are manufactured in different types of production facilities, (2) have different types of customers, (3) do not compete with each other, and (4) are priced differently.

18.    For example, consumers prefer, and pay a higher price for, wooden models because (1) they have a more upscale appearance which is more appealing within a residential home; (2) the wooden models look and feel more like an authentic mini-kitchen which children like; (3) the wooden kitchens are more environmentally friendly; (4) wooden play kitchens are "some assembly required" products unlike most plastic versions; and (5) some parents believe them to be safer than plastic models that may contain toxic chemicals.

19.    For these reasons and others, wooden play kitchen consumers would not buy plastic models and plastic models are not a substitute for wooden models. Said differently, it would be profitable for KidKraft to implement a small but significant, nontransitory increase in its prices of 5% or more, as consumers (and therefore retailers) would not find substitutes, but pay more for

the wooden models.

20.     In fact, consumers and retailers already pay a higher price for wooden models as they are generally significantly more expensive than plastic models.

21.     KidKraft is the largest manufacturer and wholesaler of wooden play kitchens sold within the continental United States (the "Market").

**The relevant geographic market is the continental United States**

22.     The Market for wholesale sales of wooden play kitchens is a national one, because the relationship between the product value, bulk, weight and consumer demand enables distribution on a nationwide basis. This is because the cost of shipping (whether for wholesale to retailers or for retail to consumers) is relatively stable within the continental United States. Consequently, manufacturer wholesalers sell on a nationwide basis as these kitchens are either sold to national brick and mortar retail chains like Costco, Walmart and Target, or sold to online retailers who sell to customers through online marketplaces like Amazon.com, Ebay.com, or Walmart.com.

23.     KidKraft's wooden play kitchens make up more than 70% of the wooden play kitchen market in the continental United States.

**The relationship between KidKraft and OJC**

24.     On or about September 2011, KidKraft and OJC entered into an agreement whereby OJC would sell Kidkraft's products online through various marketplaces.

25.     Year after year, this profitable relationship continued to grow in size and profitability until KidKraft unlawfully terminated it in 2016 for anti-competitive reasons.

**KidKraft and MidOcean's Anti-Competitive Conduct**

26.     After profitably selling KidKraft's wooden play kitchens for many years, OJC's

owner decided to direct another one of his subsidiaries, NH, to compete with KidKraft by manufacturing its own wooden play kitchens. In the middle of 2013, NH began manufacturing its own line of wooden play kitchens priced below KidKraft's.

27.     In November 2013, OJC began selling these wooden NH kitchens (the "Naomi Home Kitchen") in addition to continuing to sell KidKraft's wooden kitchens.

28.     In mid-2015, KidKraft employee Matan Wolfson called OJC's CEO Jacob Weiss to say that OJC must stop competing with KidKraft by selling the Naomi Home Kitchen or face termination of its relationship with KidKraft.

29.     OJC and NH are held by a common owner. Thus, both companies were aware of this threat. Despite KidKraft's monopoly power, OJC and NH did not immediately and completely bow to KidKraft's ultimatum because they were trying to break into the wooden play kitchen market and hoped that if they stayed small enough, KidKraft would ignore them. Nevertheless, NH did take a number of actions in response to KidKraft's threat. First, it scaled back production of current NH wooden play kitchen models so as not to compete too heavily with KidKraft. Second, it stopped trying to design and produce additional models so that KidKraft would not become concerned that NH was competing across many different models. Third, NH did not approach any other retailers to sell its kitchens as (i) it knew such attempts would be futile due to KidKraft's threats (no retailer would risk terminating their relationship with KidKraft), and (ii) NH believed that KidKraft would not feel threatened if NH stayed away from KidKraft's largest customer base, *i.e.*, retailers.

30.     These actions worked for some time and KidKraft appeared not to take action against OJC based on its carrying of NH products. But the respite was short lived.

31.     In the beginning of November 2016, a board meeting took place between KidKraft

and MidOcean at KidKraft's headquarters in Texas ("Meeting").

32.     At the Meeting, Defendants discussed how OJC, a KidKraft retailer, was selling a competing wooden play kitchen manufactured by Naomi Home. Defendants then entered into an agreement to refuse to deal with OJC unless it ceased selling NH's competing products.

33.     Immediately after the Meeting, on November 23, 2016, KidKraft employee Mr. Daniel Barr ("Mr. Barr") emailed OJC's CEO stating that "*In a board meeting recently the topic of the Naomi Kids Brand came up and this is something I would like to talk with you about along with the decline in sales over the previous 2 years.*" See Ex. A.

34.     Mr. Barr called that same day and explained that MidOcean and KidKraft were concerned about the competition from Naomi Home. Mr. Barr informed OJC that they needed to discontinue selling the entire Naomi Home line, and that if they did not, KidKraft would refuse to deal with OJC in any way.

35.     Plaintiff OJC did not cease selling the Naomi Home Kitchen as it was trying to break farther into the wooden play kitchen market and hoped that KidKraft would continue to let them "fly under the radar."

36.     But on November 25, 2016, KidKraft fulfilled the threat. Without warning, KidKraft terminated its prior profitable business relationship with OJC, and ceased to process, ship, and fulfill any of OJC's customer orders (the "Termination").

37.     After the Termination, NH was no longer under pressure to avoid selling its wooden play kitchens to retailers besides OJC. Nevertheless, it was unable to do so because retailers feared that if they carried NH's kitchens, KidKraft would refuse to deal with them too.

38.     For example, after the Termination, Costco declined NH's offer to sell it wooden play kitchens at a very competitive price, expressly stating it could not jeopardize its relationship

with KidKraft by carrying NH's competing products.

39.     KidKraft took these anti-competitive actions in order to stifle competition.

40.     Plaintiffs have hired the undersigned firms to represent them in this action and have thereby obligated themselves to pay a reasonable fee to these firms.

## COUNT I – MONOPOLIZATION
### (OJC & NH Against KidKraft)

41.     Plaintiffs repeats and reallege paragraphs 1 through 40, as it fully set forth herein.

42.     This action arises out of 15 U.S.C. § 15 that provides a civil remedy by a party that was injured due to a violation of 15 U.S.C. § 2.

43.     Defendant KidKraft controls more than 70% of the Market, *i.e.,* it has monopoly power.

44.     KidKraft's monopoly power allows it to raise prices and exclude competition within the relevant Market.

45.     Kidkraft voluntarily engaged with OJC in prior dealings for several years whereby OJC sold Kidkraft wooden play kitchens. These prior dealings were economically beneficial and profitable to KidKraft.

46.     On or about November 25, 2016, Kidkraft unilaterally terminated its profitable prior course of dealing with OJC. KidKraft would not even sell to OJC at the price it charged any other retailer, but completely cut OJC off.

47.     KidKraft's termination of its relationship with OJC had no legitimate business justification or procompetitive benefit. Instead, KidKraft undertook these anti-competitive and predatory actions to willfully maintain its monopoly power over the relevant Market by forgoing short-term profits to achieve an anticompetitive end of preventing NH from competing with it.

48.     Specifically, KidKraft's intent was to use its greater than 70% market share to

maintain its monopoly on the Market. Its refusal to deal was designed solely to gain greater market share, drive up prices, and eliminate price competition.

49.     KidKraft's termination of its relationship with OJC was also intended to harm NH, by preventing it from selling its competing wooden play kitchens to any of KidKraft's retailers, and thereby freeze NH out of the Market.

50.     KidKraft's actions have actually harmed competition and consumers, by decreasing output of competitive wooden kitchens, restricting consumer choice of wooden play kitchens, decreasing avenues for distribution, and artificially inflating the price consumers pay for wooden play kitchens.

51.     As a result of KidKraft's abusive actions, Plaintiffs suffered economic damages, including compensatory and consequential damages.

WHEREFORE, Plaintiffs seek monetary damages, treble damages, reasonable attorney's fees, court costs, interest, and any other relief this Court deems proper.

## COUNT II - ATTEMPTED MONOPOLIZATION

52.     Plaintiffs repeats and reallege paragraphs 1 through 40 as it fully set forth herein.

53.     This action arises out of 15 U.S.C. § 15 that provides a civil remedy by a party that was injured due to a violation of 15 U.S.C. § 2.

54.     In the event it is found that KidKraft's position within the relevant Market does not amount to a monopoly power, Plaintiffs plead in the alternative for attempted monopolization.

55.     Kidkraft possess sufficient market share and power within the wooden play kitchen market within the continental United States that the actions described herein have a dangerous probability of achieving monopoly power, thereby enabling it to raise prices and exclude competition within the relevant Market.

56.     Kidkraft voluntarily engaged with OJC in prior dealings for several years whereby OJC sold Kidkraft manufactured wooden play kitchens. These prior dealings were economically beneficial and profitable to KidKraft.

57.     On or about November 25, 2016, Kidkraft unilaterally terminated its profitable prior course of dealing with OJC. KidKaft would not even sell to OJC at the price it charged any other retailer, but completely cut OJC off.

58.     KidKraft's termination of its relationship with OJC had no legitimate business justification or procompetitive benefit. Instead, KidKraft undertook these anti-competitive and predatory actions to acquire monopoly power over the relevant Market by forgoing short-term profits to achieve an anticompetitive end.

59.     Specifically, KidKraft's intent was to use its greater than 70% market share to monopolize the Market. Its refusal to deal was designed solely to gain greater market share, drive up prices, and eliminate price competition.

60.     KidKraft's termination of its relationship with OJC was also intended to harm NH by preventing it from selling its competing wooden play kitchens to any of KidKraft's retailers, and thereby freeze NH out of the Market.

61.     KidKraft's actions have actually harmed competition and consumers, by decreasing output of competitive kitchens, restricting consumer choice of wooden play kitchens, decreasing avenues for distribution, and artificially inflating the price consumers pay for wooden play kitchens.

62.     As a result of Kidkraft's abusive actions, Plaintiffs suffered economic damages, including compensatory and consequential damages.

WHEREFORE, Plaintiffs seek monetary damages, treble damages, reasonable attorney's

fees, court costs, interest, and any other relief this Court deems proper.

## COUNT III - CONCERTED REFUSAL TO DEAL
### (OJC & NH Against KidKraft)

63.     Plaintiffs repeat and reallege paragraphs 1 through 40 hereof, as if fully set forth herein.

64.     This action arises out of 15 U.S.C. § 15 that provides a civil remedy for a party that was injured due to a violation of 15 U.S.C. § 1.

65.     At the Meeting, Defendants entered into an agreement to refuse to sell and boycott OJC, solely on the basis of it selling the competing Naomi Home Kitchen.

66.     KidKraft has greater than 70% of the Market.

67.     The agreement between Defendants was to cut off OJC's access to products and services it needs to compete.

68.     Prior to KidKraft's termination of its business relationship with OJC in 2016, the Parties had a successful and profitable long term business relationship, dating back to September of 2011.

69.     There was no valid business justification or procompetitive benefit for KidKraft's refusal to deal with OJC, aside from retaining its dominant market position, and stifling competition.

70.     KidKraft's agreement with MidOcean has actually harmed competition and consumers, by decreasing output of competitive kitchens, restricting consumer choice of wooden play kitchens, decreasing avenues for distribution, and artificially inflating the price consumers pay for wooden play kitchens.

71.     As a result of Defendants abusive actions, Plaintiffs suffered economic damages, including compensatory damages, and consequential damages.

WHEREFORE, Plaintiffs seek monetary damages, treble damages, cost of this suit, reasonable attorney's fees, and interest pursuant to 15 U.S. § 15(a).

### COUNT IV - CONSPIRACY TO COMMIT CONCERTED REFUSAL TO DEAL
### (OJC & NH Against MidOcean)

72.     Plaintiffs repeat and reallege paragraphs 1 through 40 and 63 through 71 as if fully set forth herein.

73.     Defendant MidOcean's conspiracy with KidKraft constitutes an illegal conspiracy to commit a concerted refusal to deal.

74.     As a result of MidOcean's illegal agreement, Plaintiffs suffered economic damages, including compensatory and consequential damages.

WHEREFORE, Plaintiffs seek monetary damages, treble damages, cost of this suit, reasonable attorney's fees, and interest pursuant to 15 U.S. Code § 15(a).

### COUNT V - TORTIOUS INTERFERENCE WITH CONTRACT AND BUSINESS
### RELATIONSHIP
### (OJC against MidOcean)

75.     Plaintiff OJC repeats and realleges paragraphs 1 through 40 hereof, as it fully set forth herein.

76.     A long term business relationship existed between OJC and KidKraft, for KidKraft to fulfill OJC's purchase orders.

77.     MidOcean knew about the business relationship between OJC and KidKraft.

78.     MidOcean's actions at the Meeting were intended to induce KidKraft to terminate its business relationship with OJC.

79.     KidKraft terminated its business relationship with OJC, as a result of MidOcean's inducement.

80.     There was no legal justification for MidOcean's tortious actions.

81.     As a result of MidOcean's wrongful actions, OJC suffered economic damages, including compensatory damages, special damages, and consequential damages.

WHEREFORE, Plaintiffs seek damages, special damages, consequential damages, punitive damages, together with court costs, interest, and any other relief this Court deems just and proper.

**PLAINTIFFS DEMANDS TRIAL BY JURY FOR ALL ISSUES TRIABLE BY RIGHT**

Dated: February 7, 2019

Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

By: */s/Velvel Devin Freedman*
Velvel (Devin) Freedman
Florida Bar No. 99762
**BOIES SCHILLER FLEXNER LLP**
100 SE Second Street
Miami, FL 33131
Tel.     (305)539-8400
Fax.     (305)539-1307
Email: vfreedman@bsfllp.com

Shlomo Y. Hecht, P.A.
Florida Bar No.: 127144
11651 Interchange Cir S
Miramar, FL 33025
Phone: 954-861-0025
Fax: 615-413-6404

Email: sam@hechtlawpa.com
*Attorneys for Plaintiff*

# DE 1-1

# EXHIBIT A

| **From:** | Daniel Barr <daniel.barr@kidkraft.com> |
| **Sent:** | Wednesday, November 23, 2016 11:02 AM |
| **To:** | Jacob Weiss |
| **Subject:** | KidKraft |

Hi Jacob

Hope all is well and im sure your extremely busy as the Holiday season is finally here.

Listen I wanted to reach out and see if we could set up a time to chat. As you are probably aware KidKraft was purchased by the private equity group MidOcean Partners earlier this year.

In a board meeting recently the topic of the Naomi Kids Brand came up and this is something I would like to talk with you about along with the decline in sales over the previous 2 years.

Please let me know a time that best works for you I will be here till 2pm CST Today. My direct line is 214 393 3772 or my cell 817 675 8834


Looking forward to speaking with you.

Thanks

Daniel Barr
KidKraft
Sales

**DE 72**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 19-CV-60341-CIV-COOKE/HUNT

OJ COMMERCE LLC; and
NAOMI HOME, INC.,

          Plaintiffs,

v.

KIDKRAFT, INC.; and
MIDOCEAN PARTNERS IV, L.P.,

          Defendants.

_____/

## DEFENDANTS KIDKRAFT, INC. AND MIDOCEAN PARTNERS IV, L.P. ANSWER TO PLAINTIFFS COMPLAINT

Defendants KidKraft, Inc. and MidOcean Partners IV, L.P. (collectively, "Defendants") hereby file this answer to the Complaint of OJ Commerce LLC and Naomi Home, Inc. (collectively, "Plaintiffs") (Dkt. No. 1).

### ANSWER

Each paragraph in Plaintiffs' Complaint is copied below, followed by Defendants' answer to each paragraph. Any allegation not expressly admitted is denied.

### PARTIES

1.    Plaintiff OJC is a Delaware limited liability company with its principal place of business in Broward County, Florida. Plaintiff's single member resides in Florida. OJC is an online retailer engaged in interstate commerce within the continental United States. OJC resells, *inter alia*, wooden play kitchens.

**RESPONSE:  Defendants admit that OJC has sold wooden play kitchens, among other products.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 1.**

2.     Plaintiff NH is a Delaware corporation, with its principal place of business in Broward County, Florida.  NH is a manufacturer of consumer products. NH manufactures, *inter alia*, wooden play kitchens.

**RESPONSE:  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation of Paragraph 2.**

3.     While distinct corporate entities, NH and OJC share a common owner.

**RESPONSE:  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation of Paragraph 3.**

4.     Defendant KidKraft is a Texas corporation with its principal place of business in Dallas, Texas. KidKraft manufactures toys that it sells both wholesale and for retail.  One of its most popular line of products are wooden play kitchens. KidKraft is engaged in interstate commerce within the continental United States including this District.

**RESPONSE:   Defendants admit the allegations of the first two sentences of Paragraph 4.  Defendants admit that KidKraft sells wooden play kitchens.   The last sentence of the paragraph states a legal conclusion, to which no response is required.**

5.     Defendant MidOcean Partners is a Delaware corporation with its principal place of business in New York City, New York. MidOcean is a private equity firm, and has a significant interest in retail products within the play furniture category, such as wooden play kitchens sold within the continental United States.

**RESPONSE:  Plaintiffs named the wrong MidOcean entity in the Complaint—the correct entity is MidOcean Partners IV, L.P.  Because the case caption has been corrected since the filing of the Complaint, Defendants will respond as though the MidOcean entity named in the Complaint was MidOcean Partners IV, L.P.  Defendants admit the allegations in the first sentence of Paragraph 5, and they admit that**

**MidOcean is a private equity fund. The meaning of the second sentence is unclear—specifically the allegation that MidOcean "has a significant interest in retail products within the play furniture category, such as wooden play kitchens"—and Defendants therefore deny that allegation. Defendants admit that MidOcean owns and controls KidKraft.**

### JURISDICTION AND VENUE

6. Plaintiffs' action arises under §1 and 2 of the Sherman Antitrust Act, which is codified at 15 U.S.C. §1 and 2. Plaintiffs seek damages under §4 of the Clayton Act, which is codified at 15 U.S.C. §15.

**RESPONSE: The allegations in Paragraph 6 contain legal conclusions that require no answer. To the extent that an answer is required, Defendants deny the allegations in Paragraph 6.**

7. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 15; § 28 U.S.C. § 1331, and 28 U.S.C. 1337(a). This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

**RESPONSE: The allegations in Paragraph 7 contain legal conclusions that require no answer. To the extent that an answer is required, Defendants deny the allegations in Paragraph 7.**

8. This Court has personal jurisdiction over Defendant Kidkraft because, *inter alia*, it (a) transacted business within the United States, including this District, (b) sold products including wooden play kitchens throughout the United States, including this District (c) had substantial contacts with the United States, including in this District, and (d) was engaged in an unlawful restraint of trade that injured persons residing in, located in, or doing business throughout the United States, including this District. This Court also has personal jurisdiction over Defendant MidOcean because it satisfies (a), (c), and (d) above.

**RESPONSE: The allegations in Paragraph 8 contain legal**

conclusions that require no answer. To the extent that an answer is required, Defendants admit that this Court has personal jurisdiction over them. Except as expressly admitted, Defendants deny the allegations in Paragraph 8.

9.      Defendants engaged in conduct inside the United States that caused direct, substantial, and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States. The activities of Defendants were within the flow of, were intended to, and did have, a substantial effect on interstate commerce of the United States. Defendants' products and services are sold in the flow of interstate commerce.

**RESPONSE:   The allegations in Paragraph 9 contain legal conclusions that require no answer. To the extent that an answer is required, Defendants deny the allegations in Paragraph 9.**

10.     This Court has also personal jurisdiction over Defendants pursuant to Fla. Stat. § 48.193, as each operated, conducted, engaged in, and carried on a business venture in this state; committed a tortious act within this state; and is engaged in substantial and not isolated activity within this state.

**RESPONSE:   The allegations in Paragraph 10 contain legal conclusions that require no answer. To the extent that an answer is required, Defendants admit that they have carried on business in the state of Florida, but they otherwise deny the allegations in Paragraph 10.**

11.     Venue is proper in this District pursuant to §12 of the Clayton Act (15 U.S.C. §22) and 28 U.S.C. §1391(b)-(d), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed herein has been carried out in this District, and one or more of the Defendants resides in, is licensed to do business in, is doing business in, had agents in, or is found or transacts business in, this District.

**RESPONSE:   The allegations in Paragraph 11 contain legal**

conclusions that require no answer. To the extent that an answer is required, Defendants admit that they have carried on business in this District, but they otherwise deny the allegations in Paragraph 11.

## INTRODUCTION

12.     Everyone knows that children enjoy playing pretend. To that end, toy stores sell little mini toy kitchens, or "play kitchens" that are kept in the bedroom or playroom and that enable children to pretend to cook and play house. Generally, these play kitchens are either made of wood or plastic. As detailed below, the market for wooden kitchens and plastic kitchens are distinct.

**RESPONSE:  Defendants admit the allegations in the first two sentences of Paragraph 12.  Defendants admit that play kitchens are often made of wood and/or plastic.  The last sentence of Paragraph 12 contains a legal conclusion that requires no answer.  To the extent an answer is required, Defendants deny the allegation.**

13.     Defendant KidKraft controls over 70% of the wooden play kitchen market in the continental United States and that it has maintained that monopoly power illegally by leveraging it to exclude competition.

**RESPONSE:  Defendants deny the allegations in Paragraph 13.**

## FACTS COMMON TO ALL COUNTS

14.     KidKraft manufacturers, wholesales, and retails, *inter alia*, wooden play kitchens.  KidKraft sells its products to online retailers like Amazon.com, and to brick and mortar stores like Costco, Walmart and Target. As detailed below KidKraft holds a dominant market position in the wooden play kitchen market within the Continental United States.

**RESPONSE:  Defendants admit the allegations in the first and second sentences of Paragraph 14.  Defendants deny the allegations in the third sentence of Paragraph 14.**

15.     NH also manufacturers, *inter alia*, wooden play kitchens. It is KidKraft's direct competitor in the wholesale space.

**RESPONSE:   Defendants deny the allegations in Paragraph 15. Defendants deny the allegations in the second sentence of Paragraph 15.**

16.     OJC is an online retailer that sells, *inter alia*, wooden play kitchens. OJC competes in the online arena by providing aggressive discounts to consumers. As detailed below, OJC used to carry KidKraft and NH wooden play kitchens for sale.

**RESPONSE:  Defendants admit the allegations in the first and third sentences of Paragraph 16.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation in the second sentence of Paragraph 16.**

17.     The market for wooden play kitchens is unique and separate from the market for plastic play kitchens because they (1) are manufactured in different types of production facilities, (2) have different types of customers, (3) do not compete with each other, and (4) are priced differently.

**RESPONSE:   The allegations in Paragraph 17 contain legal conclusions that require no answer.  To the extent that an answer is required, Defendants deny the allegations in Paragraph 17.**

18.     For example, consumers prefer, and pay a higher price for, wooden models because (1) they have a more upscale appearance which is more appealing within a residential home; (2) the wooden models look and feel more like an authentic mini-kitchen which children like; (3) the wooden kitchens are more environmentally friendly; (4) wooden play kitchens are "some assembly required" products unlike most plastic versions; and (5) some parents believe them to be safer than plastic models that may contain toxic chemicals.

**RESPONSE:  Defendants deny the allegations in Paragraph 18.**

19.     For these reasons and others, wooden play kitchen consumers would not buy plastic models and plastic models are not a substitute for wooden models. Said differently, it would be profitable for KidKraft to implement a small but significant, nontransitory increase in its prices of 5% or more, as consumers (and

therefore retailers) would not find substitutes, but pay more for the wooden models.

**RESPONSE:  Defendants deny the allegations in Paragraph 19.**

20.    In fact, consumers and retailers already pay a higher price for wooden models as they are generally significantly more expensive than plastic models.

**RESPONSE:  Defendants deny the allegations in Paragraph 20.**

21.    KidKraft is the largest manufacturer and wholesaler of wooden play kitchens sold within the continental United States (the "Market").

**RESPONSE:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 21.**

22.    The Market for wholesale sales of wooden play kitchens is a national one, because the relationship between the product value, bulk, weight and consumer demand enables distribution on a nationwide basis. This is because the cost of shipping (whether for wholesale to retailers or for retail to consumers) is relatively stable within the continental United States. Consequently, manufacturer wholesalers sell on a nationwide basis as these kitchens are either sold to national brick and mortar retail chains like Costco, Walmart and Target, or sold to online retailers who sell to customers through online marketplaces like Amazon.com, Ebay.com, or Walmart.com.

**RESPONSE:   The allegations in Paragraph 22 contain legal conclusions that require no answer.  To the extent that an answer is required, Defendants admit that suppliers of toy kitchens frequently sell on a nationwide basis.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 22.**

23.    KidKraft's wooden play kitchens make up more than 70% of the wooden play kitchen market in the continental United States.

**RESPONSE:  Defendants deny the allegations in Paragraph 23.**

24.    On or about September 2011, KidKraft and OJC entered into an

agreement whereby OJC would sell Kidkraft's products online through various marketplaces.

**RESPONSE:  Defendants admit the allegations in Paragraph 24.**

25.     Year after year, this profitable relationship continued to grow in size and profitability until KidKraft unlawfully terminated it in 2016 for anti-competitive reasons.

**RESPONSE:  Defendants deny the allegations in Paragraph 25.**

26.     After profitably selling KidKraft's wooden play kitchens for many years, OJC's owner decided to direct another one of his subsidiaries, NH, to compete with KidKraft by manufacturing its own wooden play kitchens. In the middle of 2013, NH began manufacturing its own line of wooden play kitchens priced below KidKraft's.

**RESPONSE:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 26.**

27.     In November 2013, OJC began selling these wooden NH kitchens (the "Naomi Home Kitchen") in addition to continuing to sell KidKraft's wooden kitchens.

**RESPONSE:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 27.**

28.     In mid-2015, KidKraft employee Matan Wolfson called OJC's CEO Jacob Weiss to say that OJC must stop competing with KidKraft by selling the Naomi Home Kitchen or face termination of its relationship with KidKraft.

**RESPONSE:  Defendants deny the allegation in Paragraph 28.**

29.     OJC and NH are held by a common owner. Thus, both companies were aware of this threat. Despite KidKraft's monopoly power, OJC and NH did not immediately and completely bow to KidKraft's ultimatum because they were trying to break into the wooden play kitchen market and hoped that if they stayed small enough, KidKraft would ignore them. Nevertheless, NH did take a number of actions in response to KidKraft's threat. First, it scaled back production of

current NH wooden play kitchen models so as not to compete too heavily with KidKraft. Second, it stopped trying to design and produce additional models so that KidKraft would not become concerned that NH was competing across many different models. Third, NH did not approach any other retailers to sell its kitchens as (i) it knew such attempts would be futile due to KidKraft's threats (no retailer would risk terminating their relationship with KidKraft), and (ii) NH believed that KidKraft would not feel threatened if NH stayed away from KidKraft's largest customer base, *i.e.*, retailers.

**RESPONSE:  Defendants deny that KidKraft made any "threat" or "ultimatum" to OJC or NH.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegation in Paragraph 29.**

30.     These actions worked for some time and KidKraft appeared not to take action against OJC based on its carrying of NH products. But the respite was short lived.

**RESPONSE:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 30.**

31.     In the beginning of November 2016, a board meeting took place between KidKraft and MidOcean at KidKraft's headquarters in Texas ("Meeting").

**RESPONSE:  Defendants admit that a KidKraft board meeting took place in early November 2016 at KidKraft's headquarters.**

32.     At the Meeting, Defendants discussed how OJC, a KidKraft retailer, was selling a competing wooden play kitchen manufactured by Naomi Home. Defendants then entered into an agreement to refuse to deal with OJC unless it ceased selling NH's competing products.

**RESPONSE:  Defendants deny the allegations in Paragraph 32.**

33.     Immediately after the Meeting, on November 23, 2016, KidKraft employee Mr. Daniel Barr ("Mr. Barr") emailed OJC's CEO stating that "*In a*

*board meeting recently the topic of the Naomi Kids Brand came up and this is
something I would like to talk with you about along with the decline in sales over
the previous 2 years."* See Ex. A.

**RESPONSE:   Defendants   deny   the   allegation   that   the   email
referenced   in   Paragraph   33   was   sent   "immediately   after"   a   board
meeting.   Defendants admit the rest of the allegation in Paragraph 33.**

34.      Mr. Barr called that same day and explained that MidOcean and
KidKraft were concerned about the competition from Naomi Home. Mr. Barr
informed OJC that they needed to discontinue selling the entire Naomi Home line,
and that if they did not, KidKraft would refuse to deal with OJC in any way.

**RESPONSE**:  **Defendants deny the allegations in Paragraph 34.**

35.      Plaintiff OJC did not cease selling the Naomi Home Kitchen as it was
trying to break farther into the wooden play kitchen market and hoped that
KidKraft would continue to let them "fly under the radar."

**RESPONSE:  Defendants lack knowledge or information sufficient to
form a belief as to the truth of the allegation in Paragraph 35.**

36.      But on November 25, 2016, KidKraft fulfilled the threat. Without
warning, KidKraft terminated its prior profitable business relationship with OJC,
and ceased to process, ship, and fulfill any of OJC's customer orders (the
"Termination").

**RESPONSE**:  **Defendants admit KidKraft terminated OJC as a drop-
ship retailer.   Except as expressly admitted, Defendants deny the
allegations in Paragraph 36.**

37.      After the Termination, NH was no longer under pressure to avoid
selling its wooden play kitchens to retailers besides OJC. Nevertheless, it was
unable to do so because retailers feared that if they carried NH's kitchens,
KidKraft would refuse to deal with them too.

**RESPONSE:  Defendants deny the allegations in Paragraph 37.**

38.      For example, after the Termination, Costco declined NH's offer to sell

it wooden play kitchens at a very competitive price, expressly stating it could not jeopardize its relationship with KidKraft by carrying NH's competing products.

**RESPONSE:  Defendants deny the allegations in Paragraph 38.**

39.      KidKraft took these anti-competitive actions in order to stifle competition.

**RESPONSE:  Defendants deny the allegation in Paragraph 39.**

40.      Plaintiffs have hired the undersigned firms to represent them in this action and have thereby obligated themselves to pay a reasonable fee to these firms.

**RESPONSE:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 40.**

**COUNT I – MONOPOLIZATION**

**(OJC & NH Against KidKraft)**

41.      Plaintiffs repeats and reallege paragraphs 1 through 40, as it fully set forth herein.

**RESPONSE:  Defendants repeat and incorporate by reference their responses to the allegations set forth in the preceding paragraphs.**

42.      This action arises out of 15 U.S.C. § 15 that provides a civil remedy by a party that was injured due to a violation of 15 U.S.C. § 2.

**RESPONSE:  The allegations in Paragraph 42 contain legal conclusions that require no answer.**

43.      Defendant KidKraft controls more than 70% of the Market, *i.e.,* it has monopoly power.

**RESPONSE:  Defendants deny the allegation in Paragraph 43.**

44.      KidKraft's monopoly power allows it to raise prices and exclude competition within the relevant Market.

**RESPONSE:  Defendants deny the allegation in Paragraph 44.**

45.      Kidkraft voluntarily engaged with OJC in prior dealings for several years whereby OJC sold Kidkraft wooden play kitchens.  These prior dealings

were economically beneficial and profitable to KidKraft.

**RESPONSE:  Defendants admit the allegation in the first sentence of Paragraph 45.   Defendants deny the allegation in the second sentence of Paragraph 45.**

46.     On or about November 25, 2016, Kidkraft unilaterally terminated its profitable prior course of dealing with OJC. KidKraft would not even sell to OJC at the price it charged any other retailer, but completely cut OJC off.

**RESPONSE:  Defendants admit that KidKraft terminated OJC as a reseller of KidKraft products on or about November 25, 2016, and that as a result of the termination KidKraft no longer sold its products to OJC. Defendants deny the remaining allegations of Paragraph 46.**

47.     KidKraft's termination of its relationship with OJC had no legitimate business justification or procompetitive benefit. Instead, KidKraft undertook these anti-competitive and predatory actions to willfully maintain its monopoly power over the relevant Market by forgoing short-term profits to achieve an anticompetitive end of preventing NH from competing with it.

**RESPONSE:  Defendants deny the allegations in Paragraph 47.**

48.     Specifically, KidKraft's intent was to use its greater than 70% market share to maintain its monopoly on the Market. Its refusal to deal was designed solely to gain greater market share, drive up prices, and eliminate price competition.

**RESPONSE:  Defendants deny the allegations in Paragraph 48.**

49.     KidKraft's termination of its relationship with OJC was also intended to harm NH, by preventing it from selling its competing wooden play kitchens to any of KidKraft's retailers, and thereby freeze NH out of the Market.

**RESPONSE:  Defendants deny the allegations in Paragraph 49.**

50.     KidKraft's actions have actually harmed competition and consumers, by decreasing output of competitive wooden kitchens, restricting consumer choice of wooden play kitchens, decreasing avenues for distribution, and artificially

inflating the price consumers pay for wooden play kitchens.

**RESPONSE:  Defendants deny the allegations in Paragraph 50.**

51.     As a result of KidKraft's abusive actions, Plaintiffs suffered economic damages, including compensatory and consequential damages.

**RESPONSE:  Defendants deny the allegations in Paragraph 51.**

WHEREFORE, Plaintiffs seek monetary damages, treble damages, reasonable attorney's fees, court costs, interest, and any other relief this Court deems proper.

**RESPONSE:  Defendants deny that Plaintiffs are entitled to any relief.**

## COUNT II - ATTEMPTED MONOPOLIZATION

52.     Plaintiffs repeats and reallege paragraphs 1 through 40 as it fully set forth herein.

**RESPONSE:  Defendants repeat and incorporate by reference their responses to the allegations set forth in the preceding paragraphs.**

53.     This action arises out of 15 U.S.C. § 15 that provides a civil remedy by a party that was injured due to a violation of 15 U.S.C. § 2.

**RESPONSE:   The allegations in Paragraph 53 contain legal conclusions that require no answer.**

54.     In the event it is found that KidKraft's position within the relevant Market does not amount to a monopoly power, Plaintiffs plead in the alternative for attempted monopolization.

**RESPONSE:   The allegations in Paragraph 54 contain legal conclusions that require no answer.  To the extent that an answer is required, Defendants deny that Plaintiffs have stated a cause of action for attempted monopolization.**

55.     Kidkraft possess sufficient market share and power within the wooden play kitchen market within the continental United States that the actions described herein have a dangerous probability of achieving monopoly power,

thereby enabling it to raise prices and exclude competition within the relevant Market.

**RESPONSE:  Defendants deny the allegation in Paragraph 55.**

56.     Kidkraft voluntarily engaged with OJC in prior dealings for several years whereby OJC sold Kidkraft manufactured wooden play kitchens. These prior dealings were economically beneficial and profitable to KidKraft.

**RESPONSE:  Defendants admit the allegation in the first sentence of Paragraph 56.  Defendants deny the allegation in the second sentence of Paragraph 56.**

57.     On or about November 25, 2016, Kidkraft unilaterally terminated its profitable prior course of dealing with OJC. KidKaft would not even sell to OJC at the price it charged any other retailer, but completely cut OJC off.

**RESPONSE:  Defendants admit that KidKraft terminated OJC as a reseller of KidKraft products on or about November 25, 2016, and that as a result of the termination KidKraft no longer sold its products to OJC. Defendants deny the remaining allegations of Paragraph 57.**

58.     KidKraft's termination of its relationship with OJC had no legitimate business justification or procompetitive benefit. Instead, KidKraft undertook these anti-competitive and predatory actions to acquire monopoly power over the relevant Market by forgoing short-term profits to achieve an anticompetitive end.

**RESPONSE:  Defendants deny the allegation in Paragraph 58.**

59.     Specifically, KidKraft's intent was to use its greater than 70% market share to monopolize the Market. Its refusal to deal was designed solely to gain greater market share, drive up prices, and eliminate price competition.

**RESPONSE:  Defendants deny the allegation in Paragraph 59.**

60.     KidKraft's termination of its relationship with OJC was also intended to harm NH by preventing it from selling its competing wooden play kitchens to any of KidKraft's retailers, and thereby freeze NH out of the Market.

**RESPONSE:  Defendants deny the allegation in Paragraph 60.**

61.     KidKraft's actions have actually harmed competition and consumers, by decreasing output of competitive kitchens, restricting consumer choice of wooden play kitchens, decreasing avenues for distribution, and artificially inflating the price consumers pay for wooden play kitchens.

**RESPONSE:  Defendants deny the allegation in Paragraph 61.**

62.     As a result of Kidkraft's abusive actions, Plaintiffs suffered economic damages, including compensatory and consequential damages.

**RESPONSE:  Defendants deny the allegation in Paragraph 62.**

WHEREFORE, Plaintiffs seek monetary damages, treble damages, reasonable attorney's fees, court costs, interest, and any other relief this Court deems proper.

**RESPONSE:  Defendants deny that Plaintiffs are entitled to any relief.**

## COUNT III - CONCERTED REFUSAL TO DEAL
### (OJC & NH Against KidKraft)

63.     Plaintiffs repeat and reallege paragraphs 1 through 40 hereof, as if fully set forth herein.

**RESPONSE:  Defendants repeat and incorporate by reference their responses to the allegations set forth in the preceding paragraphs.**

64.     This action arises out of 15 U.S.C. § 15 that provides a civil remedy for a party that was injured due to a violation of 15 U.S.C. § 1.

**RESPONSE:  The allegations in Paragraph 64 contain legal conclusions that require no answer.**

65.     At the Meeting, Defendants entered into an agreement to refuse to sell and boycott OJC, solely on the basis of it selling the competing Naomi Home Kitchen.

**RESPONSE:  Defendants deny the allegation in Paragraph 65.**

66.     KidKraft has greater than 70% of the Market.

**RESPONSE:  Defendants deny the allegation in Paragraph 66.**

67.     The agreement between Defendants was to cut off OJC's access to products and services it needs to compete.

**RESPONSE:  Defendants deny the allegation in Paragraph 67.**

68.     Prior to KidKraft's termination of its business relationship with OJC in 2016, the Parties had a successful and profitable long term business relationship, dating back to September of 2011.

**RESPONSE:  Defendants admit that KidKraft and OJC had a business relationship, dating back to September 2011, admit that it was profitable at times, but deny that it was successful and profitable when KidKraft terminated OJC in 2016.**

69.     There was no valid business justification or procompetitive benefit for KidKraft's refusal to deal with OJC, aside from retaining its dominant market position, and stifling competition.

**RESPONSE:  Defendants deny the allegation in Paragraph 69.**

70.     KidKraft's agreement with MidOcean has actually harmed competition and consumers, by decreasing output of competitive kitchens, restricting consumer choice of wooden play kitchens, decreasing avenues for distribution, and artificially inflating the price consumers pay for wooden play kitchens.

**RESPONSE:  Defendants deny the allegation in Paragraph 70.**

71.     As a result of Defendants abusive actions, Plaintiffs suffered economic damages, including compensatory damages, and consequential damages.

**RESPONSE:  Defendants deny the allegation in Paragraph 71.**

WHEREFORE, Plaintiffs seek monetary damages, treble damages, cost of this suit, reasonable attorney's fees, and interest pursuant to 15 U.S. § 15(a).

**RESPONSE:  Defendants deny that Plaintiffs are entitled to any relief.**

## COUNT IV - CONSPIRACY TO COMMIT CONCERTED
### REFUSAL TO DEAL (OJC & NH Against MidOcean)

72.     Plaintiffs repeat and realllege paragraphs 1 through 40 and 63 through 71 as if fully set forth herein.

**RESPONSE:  Defendants repeat and incorporate by reference their responses to the allegations set forth in the preceding paragraphs.**

73.     Defendant MidOcean's conspiracy with KidKraft constitutes an illegal conspiracy to commit a concerted refusal to deal.

**RESPONSE:  Defendants deny the allegation in Paragraph 73.**

74.     As a result of MidOcean's illegal agreement, Plaintiffs suffered economic damages, including compensatory and consequential damages.

**RESPONSE:  Defendants deny the allegation in Paragraph 74.**

WHEREFORE, Plaintiffs seek monetary damages, treble damages, cost of this suit, reasonable attorney's fees, and interest pursuant to 15 U.S. Code § 15(a).

**RESPONSE:  Defendants deny that Plaintiffs are entitled to any relief.**


## COUNT V - TORTIOUS INTERFERENCE WITH CONTRACT AND
### BUSINESS RELATIONSHIP
### (OJC against MidOcean)

75.     Plaintiff OJC repeats and realleges paragraphs 1 through 40 hereof, as it fully set forth herein.

**RESPONSE:  Defendants repeat and incorporate by reference their responses to the allegations set forth in the preceding paragraphs.**

76.     A long term business relationship existed between OJC and KidKraft, for KidKraft to fulfill OJC's purchase orders.

**RESPONSE:  Defendants admit that a business relationship existed between OJC and KidKraft, but deny that KidKraft had any long term obligations.**

77.    MidOcean knew about the business relationship between OJC and KidKraft.

**RESPONSE:  Defendants deny the allegation in Paragraph 77.**

78.    MidOcean's actions at the Meeting were intended to induce KidKraft to terminate its business relationship with OJC.

**RESPONSE:  Defendants deny the allegation in Paragraph 78.**

79.    KidKraft terminated its business relationship with OJC, as a result of MidOcean's inducement.

**RESPONSE:  Defendants deny the allegation in Paragraph 79.**

80.    There was no legal justification for MidOcean's tortious actions.

**RESPONSE:  Defendants deny the allegation in Paragraph 80.**

81.    As a result of MidOcean's wrongful actions, OJC suffered economic damages, including compensatory damages, special damages, and consequential damages.

**RESPONSE:  Defendants deny the allegation in Paragraph 81.**

WHEREFORE, Plaintiffs seek damages, special damages, consequential damages, punitive damages, together with court costs, interest, and any other relief this Court deems just and proper.

**RESPONSE:   Defendants deny that Plaintiffs are entitled to any relief.**

## AFFIRMATIVE DEFENSES

Without assuming burden of proof they would not otherwise bear, Defendants assert the following affirmative defenses, while reserving the right to amend this Answer and to add defenses as this case or discovery proceeds:

1)    Plaintiffs have failed to state a claim upon which relief can be granted.

2)    Plaintiffs' claims are barred by unclean hands.

3)    Plaintiffs' claims are barred by fraud.

4)      Plaintiffs' claims are barred by failure to mitigate.

5)      Plaintiffs' claims are barred by the doctrines of promissory, judicial and equitable estoppel, waiver, consent, acquiescence, and ratification.

6)      Plaintiffs' claims are barred because there are no proximately caused injuries or damages.

7)      Plaintiffs' claims are barred by their assumption of risk.

8)      Plaintiffs' claims for relief are offset by the amount Plaintiffs owe Defendants; specifically, Plaintiff OJC owed money to KidKraft at the time of its termination, and that amount remains unpaid.

9)      Plaintiffs' antitrust claims are barred, in whole or in part, because the claims are governed by the rule of reason, and Plaintiffs have not alleged and cannot prove the elements of a rule of reason claim.

10)     Plaintiffs' antitrust claims are barred, in whole or in part, because any act or omission by or on behalf of Defendants alleged in the Complaint was taken independently in good faith, was legally or equitably protected by applicable privileges, constituted bona fide business competition, and/or was undertaken in pursuit of legitimate business interests.

11)     Any conduct engaged in by Defendants was not anticompetitive and cannot support a claim sounding in antitrust.  Indeed, at all times Defendants have acted in good faith in furtherance of their legitimate business interests and have caused no injury to competition.

12)     Plaintiffs' antitrust claims are barred, in whole or in part, because the pro-competitive benefits of the conduct alleged by Plaintiffs outweigh the alleged anti-competitive effects.

13)   Plaintiffs' antitrust claims are barred, in whole or in part, because they did not suffer antitrust injury.

14)   Plaintiffs' antitrust claims are barred, in whole or in part, because the alleged conduct that is the subject of the Complaint did not lessen or harm competition in the relevant market or markets.

15)   Plaintiffs' antitrust claims are barred, in whole or in part, because Plaintiffs have failed to allege relevant product and geographic markets.

16)   KidKraft does not have market power or monopoly power in any properly defined relevant market, and Plaintiffs therefore cannot state a claim sounding in antitrust.

17)   Plaintiffs' Claims III and IV are barred by the *Copperweld* doctrine; specifically, MidOcean owns and controls KidKraft, and therefore MidOcean and KidKraft cannot be held to have conspired with one another under the antitrust laws.

18)   Any agreements between KidKraft and MidOcean were lawful business arrangements and cannot support a claim that Defendants engaged in an unlawful conspiracy.

19)   Plaintiffs' claims are barred because their own acts and/or omissions caused or contributed to their alleged losses.

20)   Plaintiffs' Claim V is barred because MidOcean's actions were legally justified.

21)   Plaintiffs' Claim V is barred because there was no interference by a separate economic actor.

22)   Plaintiffs' Claim V is barred because there was no underlying tortious conduct.

23)   Plaintiffs' Claim V is barred because MidOcean did not act in bad faith and there is no allegation MidOcean acted in bad faith.

DATED:  December 20, 2019

Respectfully submitted,

*/s/ Joshua Lipton*
Joshua Lipton (*Pro Hac Vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:    202.955.8500
Facsimile:      202.467.0539
jlipton@gibsondunn.com

Scott K. Hvidt (*Pro Hac Vice*)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas  75201
Telephone:  (214) 698-3100
Facsimile:  (214) 698-3400
shvidt@gibsondunn.com

-and-

Lawrence D. Silverman, Esq.
Florida Bar Number:  7160
Email:  lawrence.silverman@akerman.com
Alexandra M. Mora, Esq.
Florida Bar Number:  052368
Email:  alexandra.mora@akerman.com
AKERMAN LLP
Three Brickell City Centre
98 Southeast Seventh Street
Suite 1100
Miami, FL  33131
Phone:  (305) 374-5600
Fax:  (305) 374-5095

ATTORNEYS FOR DEFENDANTS

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 20th day of December, 2019, a true and correct copy of the foregoing brief was served via the Court's CM/ECF System upon all counsel of record.

<u>*/s/ Lawrence D. Silverman*</u>
Lawrence D. Silverman

**DE 130**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 19-CV-60341-CIV-COOKE/HUNT

OJ COMMERCE LLC; and
NAOMI HOME, INC.,

                Plaintiffs,

v.

KIDKRAFT, INC.; and
MIDOCEAN PARTNERS IV, L.P.,

                Defendants.

_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

## HEARING REQUESTED

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... III

INTRODUCTION.................................................................................................. 1

LEGAL STANDARDS .......................................................................................... 6

ARGUMENT......................................................................................................... 7

I.       There Is No Evidence that KidKraft Threatened Other Retailers to Foreclose NH's Access to the Market. .......................................................... 7

        A.     There Is No Evidence That KidKraft Foreclosed NH's Access to Any Retailer................................................................................ 8

        B.     Even If Plaintiffs' Story About KidKraft Threatening Costco to Prevent It from Purchasing NH Toy Kitchens Was Somehow True (and It Isn't), There Is No Evidence That KidKraft "Substantially Foreclosed" the Market. ........................................... 10

        C.     *McWane* is Entirely Inapposite to the Facts of This Case. .............. 12

II.      KidKraft's Termination of OJC Was a Legitimate Business Decision, and It Did Not Harm Market Competition. ................................................. 12

        A.     As a Matter of Law, KidKraft's Termination of OJC in November 2016 Is Not An Antitrust Violation. .............................. 13

        B.     KidKraft's Termination of OJC Did Not Harm Competition........... 15

        C.     KidKraft Terminated OJC to Protect Its Legitimate Business Interests. ...................................................................................... 16

III.     Plaintiffs Have Failed to Prove that KidKraft Has Monopoly Power. ......... 17

IV.     As a Matter of Law, MidOcean and KidKraft Cannot Conspire With One Another For the Purposes of Antitrust Law. ....................................... 19

V.      As a Matter of Law, MidOcean Cannot Have Tortiously Interfered with KidKraft's Contracts or Business Relationships. ................................. 20

CONCLUSION.................................................................................................... 20

ii

# TABLE OF AUTHORITIES

Page(s)

Cases

*In re Adderall XR Antitrust Litig.*,
  754 F.3d 128 (2d Cir. 2014) ......................................................................14

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
  836 F.3d 1711 (9th Cir. 2016) .................................................................... 8

*Am. Council of Certified Podiatric Physicians and Surgeons v. Am. Bd. of
  Podiatric Surgery, Inc.*,
  185 F.3d 606 (6th Cir. 1999) ......................................................................17

*Am. Prof'l Testing Serv., Inc., v. Harcourt Brace Jovanovich Legal & Prof'l
  Pub., Inc.*,
  108 F.3d 1147 (9th Cir. 1997) ....................................................................17

*American Needle, Inc. v. Nat'l Football League*,
  130 S. Ct. 2201 (2010) ...............................................................................19

*Arrington v. Burger King Worldwide*,
  2020 WL 2479690 (S.D. Fla. March 24, 2020) ..........................................19

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
  472 U.S. 585 (1985) ............................................................................. 14–15

*Bank of Brewton v. Travelers Co.*,
  777 F.3d 1339 (11th Cir. 2015) .................................................................. 6

*Bell Atl. Bus. Sys. Servs. v. Hitachi Data Sys. Corp.*,
  849 F. Supp. 702 (N.D. Cal. 1994) .............................................................19

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .................................................................................... 6

*Century Oil Tool, Inc. v. Prod. Spec., Inc.*,
  737 F.2d 1316 (5th Cir. 1984) ....................................................................19

*Copperweld Corp. v. Independence Tube Corp.*,
  467 U.S. 752 (1984) ................................................................5, 7, 18, 19

*Cornette v. I.C. Sys., Inc.*,
  280 F. Supp. 3d 1362 (S.D. Fla. 2017) ....................................................6, 8

*Crossroads Cogeneration Corp. v. Orange & Rockland Utils.*,
  159 F.3d 129 (3d Cir. 1998) ...................................................................17

*Direct Media Corp. v. Camden Tel. & Tel. Co.*,
  989 F. Supp. 1211 (S.D. Ga. 1997) .......................................................19

*Dunnivant v. Bi-State Auto Parts*,
  851 F.2d 1575 (11th Cir. 1988) ............................................................. 8

*Duty Free Americas, Inc. v. Estee Lauder Cos., Inc.*,
  797 F.3d 1248 (11th Cir. 2015) ........................................................ 15, 20

*E-One, Inc. v. Oshkosh Truck Corp.*,
  2006 WL 3320441 (N.D. Ill. Nov. 13, 2006) .........................................13

*Eisai, Inc. v. Sanofi Aventis U.S., LLC*,
  821 F.3d 394 (3d Cir. 2016) .................................................................11

*Ellis v. England*,
  432 F.3d 1321 (11th Cir. 2005) ............................................................. 6

*Healthco Int'l, Inc. v. A-dec, Inc.*,
  1989 WL 104064 (D. Mass. Apr. 17, 1989) ....................................... 13, 17

*Jacobs v. Tempur–Pedic Int'l, Inc.*,
  626 F.3d 1327 (11th Cir. 2010) ............................................................15

*L.A. Draper & Son v. Wheelabrator-Frye, Inc.*,
  735 F.2d 414 (11th Cir. 1984) .............................................................15

*Lamarca v. Miami Herald Pub. Co.*,
  395 F.Supp.324 (S.D. Fla. 1975), *aff'd* 524 F.2d 1230 (5th Cir. 1975) .........................17

*Levine v. Central Fla. Med. Affiliates, Inc.*,
  72 F.3d 1538 (11th Cir. 1993) ....................................................... 2, 15, 17

*Martin v. Fin. Asset Mgmt. Sys., Inc.*,
  __ F.3d __, 2020 WL 2478868 (11th Cir. May 14, 2020).............................10

*McArthur Dairy LLC v. McCowtree Bros. Dairy, Inc.*,
  2011 WL 2118701 (S.D. Fla. 2011)........................................................18

*McWane, Inc. v. F.T.C.*,
  783 F.3d 814 (11th Cir. 2015) .................................................6, 7, 11, 12

*Metzler v. Bear Automotive Service Equipment Co.*,
  19 F. Supp. 2d 1345 (S.D. Fla. 1998) ...................................................20

iv

*Morris Commc'ns Corp. v. PGA Tour, Inc.,*
  364 F.3d 1288 (11th Cir. 2004) ...................................................................................16

*Mr. Furniture Warehouse, Inc. v. Barclays American/Commercial Inc.,*
  919 F.2d 1517 (11th Cir. 1990) ...................................................................................16

*Ohio v. American Express Co.,*
  138 S.Ct. 2274 (2018) ..................................................................................... 5, 17, 18

*Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.,*
  555 U.S. 438 (2009) .....................................................................................................14

*PepsiCo, Inc. v. Coca-Cola Co.,*
  315 F.3d 101 (2d Cir. 2002) ........................................................................................17

*Procaps S.A. v. Patheon, Inc.,*
  845 F.3d 1072 (11th Cir. 2016) ...................................................................................15

*Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.,*
  742 So.2d 381 (Fla. 4th Dist. Ct. App. 1999).............................................................20

*Schor v. Abbott Labs.,*
  457 F.3d 608 (7th Cir. 2006) .......................................................................................14

*Seagood Trading Corp. v. Jerrico, Inc.,*
  924 F.2d 1555 (11th Cir. 1991) ...............................................................................2, 13

*Shaw v. Rolex Watch, U.S.A.,*
  673 F. Supp. 674 (S.D.N.Y. 1987) ..............................................................................19

*Sonitrol of Fresno, Inc. v. AT & T,*
  1986 WL 953 (D.D.C. April 30, 1986) ........................................................................19

*Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns., Inc.,*
  376 F.3d 1065 (11th Cir. 2004) ......................................................... 1, 2, 6, 7, 15, 16

*Spectrum Sports, Inc. v. McQuillan,*
  506 U.S 447 (1993)......................................................................................................6, 7

*Sunbeam Television Corp. v. Nielsen Media Research, Inc.,*
  763 F.Supp.2d 1341 (S.D. Fla. 2011) .........................................................................15

*Tech. Res. Serv., Inc. v. Dornier Med. Sys., Inc.,*
  134 F.3d 1458 (11th Cir. 1998) ...............................................................................2, 16

*Temurian v. Piccolo,*
  2019 WL 1763022 (S.D. Fla. Apr. 22, 2019) ...........................................................5, 20

v

*Timken Roller Bearing Co. v. FTC*,
   299 F.2d 839 (6th Cir. 1962) ................................................................. 13, 17

*Unijax, Inc. v. Champion Intern., Inc.*,
   683 F.2d 678 (2d Cir. 1982) ........................................................................17

*U.S. v. Colgate & Co.*,
   250 U.S. 300 (1919) ....................................................................................13

*United States v. Grinnell Corp.*,
   384 U.S. 563 (1966) ..................................................................................... 7

*Verizon Comms. Inc. v. Law Offices of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004) ................................................................. 2, 6, 8, 13, 14

*Volvo Aero Leasing, LLC v. VAS Aero Servs., LLC*,
   268 So.3d 785 (Fla. 4th Dist. Ct. App. 2019) .............................................20

*Wilson v. I.B.E. Indus., Inc.*,
   510 F.2d 986 (5th Cir 1975) ......................................................................13

Rules

Fed. R. Civ. P. 56(a) ....................................................................................... 6

Defendants KidKraft, Inc. ("KidKraft") and MidOcean Partners IV, L.P. ("MidOcean") (collectively "Defendants") respectfully move the Court to grant summary judgment on all claims asserted by OJ Commerce, LLC ("OJC") and Naomi Home, Inc. ("NH") (collectively "Plaintiffs").  There is no genuine dispute as to the material facts, and Defendants are entitled to judgment as a matter of law.  This Motion is supported by Defendants' Memorandum of Law in Support of its Motion for Summary Judgment, Defendants' Statement of Material Facts In Support of Their Motion for Summary Judgment, Defendants' Appendix in Support of its Motion for Summary Judgment and all of the files, records, and proceedings herein.

## MEMORANDUM OF LAW

### INTRODUCTION

In November 2016, KidKraft terminated its relationship with OJC, a small online retailer.  *See* Defendants' Rule 56.1 Statement of Material Facts in Support of Their Motion for Summary Judgment ("SOF") ¶¶ 21, 29.  OJC was one of hundreds of retailers of KidKraft toy kitchens, accounting for less than ▇ of KidKraft's sales in the U.S. *Id.* ¶¶ 15–16, 32. KidKraft likewise was just a small supplier to OJC, as OJC's total sales of KidKraft products represented less than ▇ of OJC's annual retail revenue. *Id.* ¶¶ 14, 16.  It is well-established that a supplier does not violate the antitrust laws by terminating its relationship with a single retailer—especially where, as here, the termination did not harm overall competition in any market and was done for legitimate business reasons.

### KidKraft's termination of OJC did not harm *competition* in any market.

To state a viable antitrust claim, Plaintiffs must show harm to competition in the market, not just that they lost some sales.  *See Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns., Inc.*, 376 F.3d 1065, 1069 (11th Cir. 2004).  Before the termination, OJC's sales of KidKraft toy kitchens were tiny by any measure.  SOF ¶¶ 14–20.  For example, in the six-month stretch from March to August 2016, OJC sold a total of just *eleven* KidKraft toy kitchens. *Id.* ¶ 20.  And after the termination, "▇ retailers continued to sell toy kitchens, including over two hundred retailers of KidKraft toy kitchens. *Id.* ¶¶ 9, 32, 88.  Many of those retailers were far larger than OJC, which has annual revenues roughly ▇ ▇ the size of Walmart's or Amazon's. *Id.* ¶ 10.  OJC itself remained free to sell the toy kitchens of any other supplier in the marketplace, such as Melissa & Doug, Teamson,

Jupiter, and others, as well as the toy kitchens supplied by OJC's sister company, NH. *Id.* ¶¶ 87, 91. In fact, OJC continued to sell NH toy kitchens after KidKraft terminated its relationship with OJC. Notably, OJC's sales of NH toy kitchens *skyrocketed* after KidKraft terminated its relationship with OJC—growing more than five-fold in the first year after the termination. *Id.* ¶ 95.

In short, competition in the marketplace was not impacted by KidKraft's termination of one retailer among hundreds. *Id.* ¶¶ 80–89; Declaration of Christopher A. Vellturo, Ph.D. ("C. Vellturo Decl.") ¶¶ 6, 40–47. There is no evidence of any constraint on supply or increased pricing on a market-wide basis—essential evidence to show harm to competition. *Spanish Broad. Sys.*, 376 F.3d at 1069. Plaintiffs thus cannot establish an essential element of all of their antitrust claims. *Id.* Indeed, Defendants are aware of no case in the 130-year history of the Sherman Act that has found a violation based on one supplier's termination of one retailer in such a broad and diverse market.

### KidKraft's termination of OJC was for legitimate business reasons.

Plaintiffs' antitrust claims also fail because they cannot show that KidKraft engaged in *anticompetitive* conduct without legitimate business justification—another essential element of their antitrust claims. *See, e.g., Verizon Comms. Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004); *Levine v. Central Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1553 (11th Cir. 1993). By November 2016, KidKraft viewed OJC as an ineffective reseller, whose sales of KidKraft products had "███████" (in the words of OJC's CEO). SOF ¶¶ 17–18, 30b. At the same time, KidKraft lost trust in OJC as a business partner after determining that OJC, through its co-owned supplier NH, was knocking off KidKraft's top-selling toy kitchen. SOF ¶¶ 27–29, 30a, 30c. KidKraft viewed OJC as degrading and siphoning-off KidKraft's brand value and reputation, essentially using KidKraft's products as props to sell the NH knock-off kitchen. *Id.* ¶¶ 30b–30c. By terminating this ineffective and untrustworthy retailer, KidKraft hoped to improve its distribution network, protect its brand and reputation, and thereby compete more effectively. *Id.* ¶¶ 30d, 31–34; C. Vellturo Decl. ¶¶ 6, 48–54. The cases are clear and unanimous that suppliers have discretion to choose with whom they will deal, and it is not an antitrust violation for a supplier to terminate an ineffective and free-riding distributor that it no longer trusts. *See Trinko*, 540 U.S. at 408; *Seagood Trading Corp. v. Jerrico, Inc.*, 924 F.2d 1555, 1567 (11th Cir. 1991); *see also, e.g., Tech. Res.*

*Serv., Inc. v. Dornier Med. Sys., Inc.*, 134 F.3d 1458, 1466 (11th Cir. 1998) (no § 2 liability "if the defendant's actions can be explained by legitimate business justifications").

### Plaintiffs' story about foreclosure of NH's access to retailers is fiction.

Recognizing that their claims based on KidKraft's termination of OJC are foreclosed by decades of unbroken law, Plaintiffs pivoted to a new theory, that this case is really about the purported foreclosure of NH as a competing supplier of toy kitchens. Plaintiffs' story is that Defendants foreclosed NH's access to retail distribution channels by threatening to withhold KidKraft toy kitchens from any retailer that did business with NH. On the basis of this story, the Court denied Defendants' motion to dismiss. *See* Dkt. 101 (Hearing Tr.), at 7–10, 15–21, 30.

The problem for Plaintiffs is that this story is pure fiction. It never happened. There is not a shred of evidence that KidKraft took any action at any time to foreclose NH's access to any potential retailer—much less that it engaged in a campaign that could plausibly have substantially foreclosed NH's access to the whole marketplace.

Plaintiffs acknowledged at the motion to dismiss hearing that they had no evidence that Defendants ever threatened other retailers not to carry NH toy kitchens, but they suggested they would find such evidence through discovery. Dkt. 101 (Hearing Tr.), at 21. The parties have now taken a year of extensive discovery. Plaintiffs searched far and wide for some sort of evidence that KidKraft foreclosed (or even tried to foreclose) NH's access to retailers. They subpoenaed dozens of other retailers and toy kitchen suppliers. SOF ¶ 79. And this discovery turned up not a shred of evidence that KidKraft even *mentioned* NH toy kitchens to any other retailer, much less that it tried to foreclose NH's access to retail channels. *Id.*

Plaintiffs have effectively conceded they have no such evidence. In their Rule 30(b)(6) deposition, Plaintiffs admitted that they had nothing but "██████████" to support their claim that KidKraft ever threatened to withhold sales from any other retailer that dealt with NH. *Id.* ¶ 66. That is obviously not sufficient evidence to survive summary judgment.

Furthermore, Plaintiffs' foreclosure story fails not merely from an absence of supporting evidence, but also because the evidence affirmatively establishes that it did not happen. In response to interrogatories asking Plaintiffs to identify which retailers KidKraft had supposedly threatened, Plaintiffs identified only Costco. *Id.* ¶ 36. And when asked for their basis

for claiming that Costco had been threatened by KidKraft, Plaintiffs claimed that a Costco employee, Shannon Lord, told them that Costco declined to purchase NH toy kitchens because it was afraid of jeopardizing its relationship with KidKraft. *Id.* ¶ 65. It turns out, however, that not only does Ms. Lord deny saying this, but she is not even a toy buyer—she is an IT analyst who works on Costco's IT systems in Mexico. *See Id.* ¶¶ 66–70. When asked at their Rule 30(b)(6) deposition what basis this IT analyst could have had for such an alleged statement, Plaintiffs stated that they had " ██████ " *Id.* ¶ 70. And when asked whether they had any evidence that KidKraft had made any statement to Costco about NH that could have caused such a fear, Plaintiffs conceded they had no evidence, only " ██████ ." *Id.* ¶ 66.

However, in contrast to Plaintiffs' speculation, the *evidence* relating to Costco's toy kitchen purchasing decision in February 2017 (when Plaintiffs approached Costco to try to sell the NH toy kitchen) shows that KidKraft did not cause—and could not possibly have caused—Costco to decline to purchase from Plaintiffs. First, the head Costco toy buyer at the time has declared that "there is nothing that KidKraft said or did that caused Costco not to purchase wooden toy kitchens (or any other product) from Naomi Home." *Id.* ¶ 73. She declared that she is not aware of KidKraft ever issuing any threat of any kind to Costco. *Id.* ¶ 74. And she declared that "KidKraft has no power to issue threats to Costco." *Id.*

The baselessness of Plaintiffs' story is confirmed by the events of February 2017. <u>On February 9, 2017, Costco informed KidKraft that it would NOT be carrying KidKraft's toy kitchens in its stores for that year</u>. *Id.* ¶ 52. A week later, Costco also told Plaintiffs' representative that it was declining their offer to supply NH toy kitchens. *Id.* ¶ 47. When Plaintiffs' CEO asked his sales representative why Costco had rejected NH's offer, he replied that Costco's toy buyer " █████████████████████ ." *Id.* ¶ 48. It was filled—but with Teamson's toy kitchen, *not* KidKraft's. *Id.* ¶ 53. In other words, the one retailer whom Plaintiffs allege was coerced by KidKraft because it feared the prospect of losing KidKraft's toy kitchens had already decided to drop KidKraft's toy kitchens in favor of another supplier (Teamson). Thus, the notion that Costco was afraid to purchase NH's toy kitchens because it was somehow afraid to lose access to KidKraft's toy kitchens is revealed to be utter nonsense.

Plaintiffs likewise have zero evidence that KidKraft coerced any other retailer not to buy their toy kitchens. *Id.* ¶¶ 55, 58, 79. NH has never sold *any* product to any retailer other

4

than its sister company, OJC. *Id.* ¶ 12. Plaintiffs made only one attempt to sell toy kitchens to any other retailers—an email or phone outreach to Costco, Walmart, Sam's Club, and BJ's Wholesale in early 2017. *Id.* ¶¶ 44–46, 54, 59. At Plaintiffs' Rule 30(b)(6) deposition, they conceded that they have no evidence that KidKraft ever said anything to those retailers about NH. *Id.* ¶¶ 55, 58. In the words of Plaintiffs' Rule 30(b)(6) designee, they have only "▮▮▮▮▮▮▮▮▮▮▮." *Id.* ¶ 66; C. Vel10uro Decl. ¶¶ 6, 55–77.

### KidKraft is not a monopolist.

Yet another reason to grant summary judgment on Plaintiffs' antitrust claims is that the undisputed *evidence* also confirms that KidKraft has no monopoly power. Instead, it competes in an intensely competitive marketplace against a broad range of suppliers. Monopoly power exists only where a company has the power to exclude competition, limit supply, and raise prices. *See Ohio v. American Express Co.,* 138 S.Ct. 2274, 2288 (2018). KidKraft has no such power. Costco dropped KidKraft's toy kitchens in 2017 in favor of Teamson. *Id.* ¶ 53. Likewise, Sam's Club dropped KidKraft's toy kitchens in 2017 in favor of another recent entrant, Jupiter. *Id.* ¶ 56. Toys "R" Us dropped KidKraft's toy kitchens in 2016 in favor of a plastic toy kitchen. *Id.* ¶ 80. Walmart dropped KidKraft's toy kitchens in 2017 and 2019 in favor of plastic toy kitchens. *Id.* ¶ 89. Simply stated, KidKraft has no power over these retailers, just as it has no ability to prevent other suppliers (such as Teamson, Jupiter, Melissa & Doug, Pottery Barn Kids, Step2, Little Tikes, and many others) from taking its share if they offer better products or prices. *Id.* ¶¶ 80–89; C. Velturo Decl. ¶¶ 6, 94–100.

Summary judgment is therefore appropriate on all of Plaintiffs' antitrust claims for three independent reasons: (1) there is no evidence to support Plaintiffs' allegation that KidKraft foreclosed NH's access to retailers; (2) KidKraft's termination of OJC as a reseller was a legitimate business decision that did not harm competition in any market; and (3) there is no evidence to establish that KidKraft has monopoly power.

### MidOcean owns and controls KidKraft, foreclosing any conspiracy claims.

Summary judgment is further required on Plaintiffs' claim that KidKraft conspired with MidOcean, a private equity firm that majority owns and controls KidKraft. Compl. ¶¶ 63–74; SOF ¶¶ 2–6; C. Velturo Decl. ¶¶ 6, 102–03. As a matter of law, a parent and its majority-owned and controlled subsidiary cannot be held to conspire with one another for purposes of § 1 of the Sherman Act. *See Copperweld Corp. v. Independence Tube Corp.,* 467

U.S. 752, 767 (1984).  And for the same reason, as matter of law, MidOcean cannot tortiously interfere with KidKraft's business relationships.  *Temurian v. Piccolo*, 2019 WL 1763022, at *8 (S.D. Fla. Apr. 22, 2019).

LEGAL STANDARDS

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Bank of Brewton v. Travelers Co.*, 777 F.3d 1339, 1342 (11th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)) (emphasis added).  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "For factual issues to be considered genuine, they must have a real basis in the record . . . mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Cornette v. I.C. Sys., Inc.*, 280 F. Supp. 3d 1362, 1366 (S.D. Fla. 2017) (Cooke, J.) (quoting *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005)).

For all of Plaintiffs' antitrust claims (Counts I–IV), "an antitrust plaintiff must show harm to competition in general, rather than merely damage to an individual competitor." *Spanish Broad. Sys.*, 376 F.3d at 1069.  "The law directs itself not against conduct which is competitive, even severely so, but against conduct which unfairly tends to destroy competition itself." *Id.* (quoting *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459 (1993)). Plaintiffs must therefore offer "facts that would support a showing of this harm to competition, rather than merely to [themselves]." *Id.* And when the alleged anticompetitive conduct is the foreclosure of competitors' access to the market through exclusive dealing agreements, such claims require facts establishing that the agreements "substantially foreclosed" competition in the market. *See McWane, Inc. v. F.T.C.*, 783 F.3d 814, 835–37 (11th Cir. 2015) (to establish whether an exclusive dealing arrangement has anticompetitive effects, "courts are bound by *Tampa Electric's* requirement to consider substantial foreclosure").  "Traditionally a foreclosure percentage of at least 40% has been a threshold for liability in exclusive dealing cases." *Id.* at 837.

Plaintiffs' monopolization claim under Section 2 of the Sherman Act (Count I) requires facts establishing that (1) KidKraft possesses monopoly power, and (2) "the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Trinko*, 540 U.S. at 407 (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)). "[T]he possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct.*" *Id.* (emphasis in original).

Plaintiffs' attempted monopolization claim under Section 2 of the Sherman Act (Count II) requires facts establishing that "(1) the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spanish Broad. Sys.*, 376 F.3d at 1074 (quoting *Spectrum Sports*, 506 U.S. at 456).

Finally, Plaintiffs' claims under Section 1 of the Sherman Act (Counts III and IV) require facts establishing (1) "a 'contract, combination . . . or conspiracy' between *separate* entities," that (2) unreasonably restrains trade. *Copperweld*, 467 U.S. at 768 (emphasis in original). The conduct of a parent and its subsidiary "must be viewed as that of a single enterprise for purposes of § 1 of the Sherman Act." *Id.* at 771. To show an unreasonable restraint of trade under the rule of reason, Plaintiffs must "prove (1) the anticompetitive effect of the defendant's conduct on the relevant market, and (2) that the defendant's conduct has no pro-competitive benefit or justification." *Spanish Broad. Sys.*, 376 F.3d at 1071.

ARGUMENT

## I.   There Is No Evidence that KidKraft Threatened Other Retailers to Foreclose NH's Access to the Market.

In response to KidKraft's motion to dismiss, which pointed out that KidKraft's termination of one distributor, OJC, is not an antitrust violation as a matter of law, Plaintiffs pivoted to a different theory focused on NH as a purported competitor to KidKraft. Plaintiffs argued that KidKraft foreclosed NH's access to retail channels of distribution by threatening other retailers that KidKraft would withhold sales of its toy kitchens if those retailers did business with NH.[1] Based on this story, the Court denied KidKraft's motion to dismiss, relying on the Eleventh Circuit's decision in *McWane,* 783 F.3d, where a supplier enforced exclusive

---

[1]   *See* Dkt. 16 (Opp. to Mot. to Dismiss), at 1, 5, 7.

dealing contracts on so many retailers that would-be competitors were foreclosed from the
market. *See* Dkt. 101 (Hearing Transcript), at 7–10, 15–21 (discussing *McWane* with coun-
sel); *id.* at 30 (finding Plaintiff's allegations sufficient on the basis that they alleged Defendants
had threatened others in the market and caused other distributors to stop dealing with NH).

Summary judgment is required, however, because there is no evidence to support
Plaintiffs' theory that KidKraft foreclosed NH's access to the marketplace.

### A. There Is No Evidence That KidKraft Foreclosed NH's Access to Any Re-
### tailer.

KidKraft served an interrogatory asking Plaintiffs to identify all retailers whom they
contend KidKraft threatened or coerced into not doing business with NH. Plaintiffs re-
sponded that Costco is the only such retailer—apparently the universe of supposedly coerced
"retaile*rs*" is actually just one retailer. SOF ¶ 36. Moreover, to support their claim that
KidKraft coerced Costco, Plaintiffs have nothing but their admitted "▮▮▮▮▮▮." *Id.* ¶ 66.
No documents; no testimony; no evidence.

Even more remarkably, Plaintiffs conceded that prior to the first quarter of 2017 they
never even *attempted* to sell NH kitchens to any retailer other than OJC. *Id.* ¶¶ 38. Then, in
the first quarter of 2017, they made one effort to sell their kitchens by hiring a retired sales
representative to send an email to contacts he had at a handful of retailers (Sam's Club, BJ's
Wholesale, and Costco). *Id.* ¶¶ 43–46, 54. The normal sales cycle for these sophisticated
purchasers is a multi-month process, including in-person presentations at global toy shows
and other occasions. *Id.* ¶ 50. It is thus no surprise that these resellers quickly rejected the
half-hearted email outreach from NH. BJ's Wholesale rejected NH's offer the next business
day; and Costco rejected the offer ten days later because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮."
*Id.* ¶ 48. None of these retailers said anything to NH's sales representative about any threats
from KidKraft. *Id.* ¶¶ 49, 55, 58. And Plaintiffs admit they have no such evidence. *Id.* ¶¶
65, 66, 70. After this half-hearted email outreach to four retailers predictably fell flat, Plaintiffs
never tried again. *Id.* ¶ 59.

Plaintiffs have the burden to go beyond mere allegations and provide actual evidence
supporting their contentions. *See., e.g.*, *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d
1711 at 1181 (9th Cir. 2016) (affirming summary judgment because plaintiffs "failed to pro-
vide any significant details" about the terms of the alleged exclusive dealing agreements);

*Dunnivant v. Bi-State Auto Parts*, 851 F.2d 1575, 1581 (11th Cir. 1988) (affirming summary judgment where the plaintiff "present[ed] no evidence that the retailers threatened or coerced the above-named suppliers"); *Cornette*, 280 F. Supp. 3d at 1372 (Cooke, J.) (granting summary judgment where "Plaintiff brings forth the same arguments but no additional facts"). Here, there is no evidence that KidKraft said or did anything that caused any retailer to reject any offer from NH.

Moreover, the evidence shows that Plaintiffs' Costco story is a fabrication. In response to an interrogatory asking Plaintiffs to identify the basis for their Costco story, Plaintiffs asserted that a Costco employee named Shannon Lord stated that Costco would not purchase NH kitchens because it was afraid of retaliation from KidKraft. SOF ¶ 65. However, as it turns out, at the time Plaintiffs claim Ms. Lord told them this, Ms. Lord was not even involved in Costco's toy buying—*she was an IT analyst with a focus on Costco's systems in Mexico. Id.* ¶¶ 61–62. Ms. Lord has *never* worked in the toy buying group, and she has not worked in any Costco buying group since 2014. *Id.* ¶ 63. Ms. Lord also declared that:

- She is "not aware of Costco ever considering purchasing toys from Naomi Home"; *Id.* ¶ 67 (S. Lord Decl. ¶ 6)
- She is "not aware of KidKraft issuing any threat of any kind to Costco"; (*Id.* ¶ 7)
- She has never stated that Costco has "not purchased wooden toy kitchens from Naomi Home because Costco was afraid of retaliation from KidKraft," and she "would have no basis to make any such statement"; (*Id.* ¶ 8)
- She has never stated "that Costco is rejecting an offer from Naomi Home to sell wooden toy kitchens to Costco"; (*Id.* ¶ 9) and
- She has never stated "that Kidkraft made any threats to Costco, or that Costco feared retaliation from KidKraft." (*Id.* ¶ 10).

When asked to identify anything KidKraft said to Costco that supposedly gave Ms. Lord an impression that Costco should fear KidKraft, Jacob Weiss (Plaintiffs' Rule 30(b)(6) witness and the individual who claims to have spoken to Ms. Lord) conceded that he had "██ ██":

Q: ███████████████████████████████
   ██████████████████

*Id.* ¶ 66. And Mr. Weiss conceded that it would be "███████████" as to whether anyone at Costco other than this IT analyst held any fear of KidKraft. *Id.* He likewise had no basis

to know why Ms. Lord would "███████████████████████████████ ████████" *Id.* ¶ 70. Mr. Weiss ultimately conceded that he is not even sure who he spoke to: "████████████████████████████████████████." *Id.* ¶ 61.

So, according to Plaintiffs, someone at Costco—maybe an IT analyst or maybe some other unknown person, it's a "████████████████"—supposedly said to Mr. Weiss that Costco fears KidKraft. Plaintiffs do not know who the person was, or why that person feared KidKraft. It is "██████████████" whether anyone else at Costco shared this fear. And Plaintiffs have "no idea" what KidKraft supposedly said that prompted this fear. *Id.* ¶ 66. Plainly, this is not sufficient evidence. *Martin v. Fin. Asset Mgmt. Sys., Inc.*, __ F.3d __, 2020 WL 2478868, at *6 (11th Cir. May 14, 2020) ("[S]peculation is not evidence.").

Meanwhile, the actual head toy buyer at Costco during the relevant period (from 2015 to 2018) declared that KidKraft has never threatened Costco and has no power to threaten Costco. *Id.* ¶¶ 71–74. As she declared, nothing KidKraft said or did caused Costco not to buy toy kitchens from NH. *Id.*

The evidence surrounding Plaintiffs' interactions with Costco further confirms the absence of evidence supporting Plaintiffs' story about supposed threats or fear of retaliation from KidKraft. Two days after Plaintiffs reached out to Costco, Costco informed KidKraft that *KidKraft's kitchen was NOT selected by Costco that year*. *Id.* ¶ 52. Costco decided to carry Teamson's toy kitchen instead. *Id.* ¶ 53. The idea that KidKraft has any power over Costco, or that Costco fears not having access to KidKraft's products, simply does not square with reality. KidKraft could not even get its own toy kitchens selected by Costco, despite bending over backward the previous two years by lowering its prices and modifying its designs to appease Costco. *Id.* ¶ 51. So how on Earth could KidKraft possibly use the threat of withholding its toy kitchens to get Costco not to deal with NH? There is no evidence at all to support Plaintiffs' theory. Only "██████████," and that will not do.

Moreover, during this time, KidKraft also lost out on other large retailers, including losing its Sam's Club bid to Jupiter, its Toys "R" Us bid to Little Tikes and Step 2 and its Walmart bid to American Plastics. *Id.* ¶ 80; C. Vellturo Decl. 64–71. Plaintiffs concede that they also have nothing but "██████████" about KidKraft supposedly threatening any other retailer. *Id.* ¶¶ 55, 66. And the evidence shows that Plaintiffs' speculation is just wrong.

**B.    Even If Plaintiffs' Story About KidKraft Threatening Costco to Prevent It**

from Purchasing NH Toy Kitchens Was Somehow True (and It Isn't), There Is No Evidence That KidKraft "Substantially Foreclosed" the Mar-ket.

Even if Plaintiffs' nonsensical and unfounded Costco story were true, summary judgment is still required because Plaintiffs have failed to show that KidKraft foreclosed such a substantial portion of the market that competition was thereby harmed.  Indeed, even if KidKraft had a contract with Costco that required Costco to purchase exclusively from KidKraft, that would not support an antitrust claim based on that exclusivity.

"'Substantial foreclosure' continues to be a requirement for exclusive dealing to run afoul of the antitrust statutes." *McWane*, 837 F.3d at 837.  "Foreclosure occurs when the opportunities for other traders to enter into or remain in the market are significantly limited by the exclusive dealing arrangements." *Id.* (citation and alterations omitted).  Though "[f]oreclosure percentages are seldom decisive in and of themselves[,] . . . [t]raditionally a foreclosure percentage of at least 40% has been a threshold for liability in exclusive dealing cases." *Id.* at 835, 837 (citation and alterations omitted).  Obviously, the failure of one supplier to sell to one retailer is not a substantial foreclosure of the market. *See, e.g., Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394, 404 (3d Cir. 2016) (affirming summary judgment because the "identification of a few dozen hospitals out of almost 6,000 . . . is not enough to demonstrate 'substantial foreclosure'") (quoting *McWane*, 783 F.3d at 837).

The simple reality is that there are thousands of retail channels through which suppliers of toy kitchens can, and do, sell their products to consumers. *Id.* ¶ 88. These channels range from the retail giants (Walmart, Amazon), to large retailers (Target, Costco, others), to mid-size retailers (Overstock.com, Buy Buy Baby, Zulily), to countless small resellers on Internet marketplaces. *Id.*  NH's kitchens, for example, were sold at all times through OJC on the largest online marketplaces in the nation (Amazon.com, Walmart.com, ebay.com, Wayfair.com), OJC's website, and NH's website. *Id.* ¶ 92.  So, regardless of the reason for its failure, NH's inability to get products listed at one retailer—or even several retailers—is not harm to competition. *See, e.g., McWane*, 783 F.3d at 839 ("If firms can use other means of distribution, or sell directly to consumers, then it is less likely that their foreclosure from distributors will harm competition."); C. Vellturo Decl. ¶¶ 6, 58–77.

11

C.     *McWane* Is Entirely Inapposite to The Facts of This Case.

As discussed earlier, Plaintiffs survived the motion to dismiss by concocting a *McWane* theory. But the facts here are nothing like *McWane*. Not even close.

In *McWane*, the defendant was the only manufacturer of pipe fittings in the relevant market, when a competing manufacturer announced its intent to enter the market. 783 F.3d at 820. In response, McWane sent a letter to the major distributors in the market suggesting that if they did not exclusively buy McWane's pipe fittings, it would refuse to send them further shipments for up to 12 weeks. *Id.* at 820–21. "Internal documents reveal[ed] that [the defendants'] express purpose was to raise [the competitor's] costs and impede it from becoming a viable competitor." *Id.* at 821. When one distributor nonetheless bought pipe fittings from the competitor, McWane followed through with its threat by cutting off sales. *Id.* Other distributors testified that they complied with the letter "to avoid the devastating result of being cut off" from McWane's pipe fittings. *Id.* In affirming the FTC's determination that the defendant's conduct resulted in "substantial foreclosure" of the market, the court cited evidence that the two largest distributors, together controlling 50-60% of distribution, outright prohibited purchases from the competitor following the letter—even cancelling pre-existing orders. *Id.* at 837.

Plaintiffs' counsel suggested at the motion to dismiss hearing that they would have evidence to support their *McWane* theory after discovery. *See* Dkt. 101 (Hearing Transcript) at 21. But discovery has now come and gone, and it has shown just how utterly unmoored from the facts Plaintiffs' attempt to graft their claims onto a *McWane* framework truly is.

II.    KidKraft's Termination of OJC Was A Legitimate Business Decision, And It Did Not Harm Market Competition.

Of the things that Plaintiffs allege, the only one that KidKraft actually did was terminate its resale relationship with OJC. As a matter of law, however, that termination was not a violation of antitrust law for at least three reasons. First, it is well-established that a manufacturer's decision to terminate its relationship with a single distributor is not an anticompetitive act—particularly where the distributor is selling knock-off versions of the manufacturers' products. We are aware of no case in the history of the Sherman Act to have held otherwise. Second, there is no conceivable way that KidKraft's decision to terminate one small reseller— representing less than █% of KidKraft's toy kitchen sales—could possibly have caused harm

12

to competition in the nationwide market Plaintiffs allege. Third, Plaintiffs have offered no evidence to dispute that KidKraft's termination of OJC was a legitimate business decision.

### A.    As A Matter of Law, KidKraft's Termination of OJC in November 2016 Is Not An Antitrust Violation.

The law has been clear for a century that a supplier does not violate the antitrust laws by unilaterally terminating a distributor. *See Trinko*, 540 U.S. at 408 ("the Sherman Act 'does not restrict the long recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal.'") (quoting *U.S. v. Colgate & Co.*, 250 U.S. 300, 307 (1919)). This is true even if the manufacturer is allegedly a monopolist, and even if the distributor was allegedly a competitor of the manufacturer.[2] KidKraft has a right to compose its distribution network with retailers who are actually interested in selling KidKraft products, and not knocking-off its products. *See, e.g., Trinko,* 540 U.S. at 408; *Colgate*, 250 U.S. at 307; *Seagood,* 924 F.2d at 1567 ("It is well established that a party may choose with whom he will do business and with whom he will not do business, and that this behavior . . . will not give rise to liability absent a showing of actual competitive injury.") (citation and quotation marks omitted); *Wilson v. I.B.E. Indus., Inc.*, 510 F.2d 986, 988 (5th Cir 1975) ("the situation before us is simply a distributor's refusal to deal with a retailer, and it therefore lacks any anti-trust overtones").

Of course, terminated distributors often file lawsuits against former suppliers claiming that their termination was an antitrust violation. But courts have repeatedly and resoundingly rejected antitrust claims from jilted distributors. As one court explained:

> It is ludicrous for the plaintiff to suggest that a manufacturer has an absolute . . . duty under the antitrust laws to continue a given distributor simply because to do otherwise would harm that distributor's business. A manufacturer's right to control the marketing of its product is nearly absolute. . . . *Even a manufacturer with monopoly power is not obliged to retain an ineffective dealer or one which has become its competitor.*

---

[2]    *See, e.g., Timken Roller Bearing Co. v. FTC*, 299 F.2d 839, 842 (6th Cir. 1962) ("a manufacturer is not compelled to retain dealers having divided loyalties")(citation omitted); *E-One, Inc. v. Oshkosh Truck Corp.*, 2006 WL 3320441, at *3 (N.D. Ill. Nov. 13, 2006) (defendant "cannot be forced to continue a relationship with a dealer who chooses to distribute products of defendant's competitor"); *Healthco Int'l, Inc. v. A-dec, Inc.*, 1989 WL 104064, at *8 (D. Mass. Apr. 17, 1989) ("Even a manufacturer with monopoly power is not obliged to retain an ineffective dealer or one which has become its competitor.").

*Healthco*, 1989 WL 104064, at *8 (emphasis added).

It is of no aid to Plaintiffs that KidKraft stopped selling to OJC because OJC was selling the NH knock-off kitchen in competition with KidKraft.  SOF ¶¶ 27–30.  Nothing in the antitrust laws requires a supplier—even an alleged monopolist—to sell through a distributor that is selling a knock-off version of its product.  *See, e.g., Schor v. Abbott Labs.*, 457 F.3d 608, 610 (7th Cir. 2006) ("[A]ntitrust law does not require monopolists to cooperate with rivals by selling them products that would help the rivals to compete. . . .  Cooperation is a *problem* in antitrust, not one of its obligations.") (emphasis original).  To the contrary, the cases are uniformly protective of a supplier's right to ensure that its products are presented to consumers by loyal and committed retailers whose interests are aligned with the supplier's.  That right is essential to a properly functioning competitive marketplace.

In their opposition to KidKraft's motion to dismiss, Plaintiffs argued that the Supreme Court's decision in *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985), provides an exception to a supplier's general right to deal (or not deal) with whomever it chooses.  That decision is unavailing.  First, the Supreme Court has twice explained that *Aspen Skiing* embodies only a "limited" exception to the general rule that firms may choose the parties with whom they deal.  *See Trinko*, 540 U.S. at 409; *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 448 (2009).  And it has emphasized that "*Aspen Skiing* is at or near the outer boundary of § 2 liability."  *Trinko*, 540 U.S. at 409.  Plaintiffs are well outside this "outer boundary."

*Aspen Skiing* crafted a rare exception to the general rule because, under the particular facts of that case, continued cooperation among competitors was necessary for competition to exist.  There was a longstanding course of dealing between the competing ski operators to offer an all-Aspen ski pass, which allowed the smaller operator to compete for destination skiers.  472 U.S. at 605-08.  When the larger operator ceased that longstanding cooperation, competition among the two operators was destroyed.  *Id.*  As a result, the Court found an exception to the usual rule that one competitor need not cooperate with its competitor, because under those facts cooperation was essential for competition to exist.  *Id.*; *see also In re Adderall XR Antitrust Litig.*, 754 F.3d 128, 135 (2d Cir. 2014) (noting "the distinctions that made *Aspen Skiing* the rare case in which a refusal to deal amounted to a prohibited act of unilateral monopolization").

The exceptional fact pattern in *Aspen Skiing* does not apply here.  There is no evidence indicating that Plaintiffs need KidKraft to sell its toy kitchens to OJC in order for NH to be able to supply its toy kitchens.  *Id.* ¶ 94.  To the contrary, the evidence shows that NH continued selling its toy kitchens through OJC after KidKraft terminated OJC.  *Id.* ¶ 96.  In fact, NH dramatically *expanded* its toy kitchen sales after KidKraft terminated OJC, growing its sales nearly five-fold in just the first year after the termination.  *Id.* ¶ 95.  This case is thus the opposite of *Aspen Skiing*.  Whereas the smaller mountain in *Aspen Skiing* required cooperation in order to compete, the evidence shows that NH continued to compete—and in fact thrived—after KidKraft terminated OJC.  *See* C. Vellturo Decl. ¶¶ 6, 40–47.  There is simply no basis for an exception to the general rule that KidKraft has a right to determine the parties with whom it will deal.[3]

### B.   KidKraft's Termination of OJC Did Not Harm Competition.

Additionally, to survive a motion for summary judgment on their antitrust claims, Plaintiffs must offer facts to establish that Defendants' actions caused anticompetitive harm in a relevant product market.  *See, e.g., Procaps S.A. v. Patheon, Inc.*, 845 F.3d 1072, 1084 (11th Cir. 2016) (to survive summary judgment, the Eleventh Circuit "require[s] a plaintiff to point to specific facts demonstrating harm to competition"); *Jacobs v. Tempur–Pedic Int'l, Inc.*, 626 F.3d 1327, 1339 (11th Cir. 2010) (accord).  Anticompetitive harms to the market "include, but are not limited to, reduction of output, increase in price, or deterioration in quality."  *Procaps,* 845 F.3d at 1084 (quoting *Jacobs*, 626 F.3d at 1339).  Damages claimed by an individual competitor are not sufficient to demonstrate harm to overall competition. *See Spanish Broad. Sys.*, 376 F.3d at 1069.

In this case, it is simply implausible for Plaintiffs to suggest that KidKraft's termination of a single retailer harmed competition in the alleged nationwide market for the sale of toy kitchens.  OJC was just one of hundreds of KidKraft retailers, accounting for less than 1% of KidKraft's U.S. sales.  SOF ¶ 16  Even if KidKraft's termination of OJC could have cost *OJC* some lost sales, one fewer retailer out of a nationwide retail market (especially a retailer as

---

[3]    *See also, e.g., Duty Free Americas, Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1266-68 (11th Cir. 2015) (distinguishing case from the "limited exception" of *Aspen Skiing*); *Sunbeam Television Corp. v. Nielsen Media Research, Inc.*, 763 F. Supp. 2d 1341, 1349-50 (S.D. Fla. 2011) (same).

small as OJC) has no substantial impact on the market. *See, e.g., Levine*, 72 F.3d at 1553 (anticompetitive impacts must be "substantial" to be cognizable under the antitrust laws) (quoting *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 422 (11th Cir. 1984)). Plaintiffs have simply offered no evidence that Defendants' termination of OJC caused the sort of constraint in market-wide supply or increase in price that would be required to show an anticompetitive outcome. *See, e.g, Procaps*, 845 F.3d at 1084; *Jacobs*, 626 F.3d at, 1339.

Moreover, the evidence shows that KidKraft continued to sell its toy kitchens through many other retailers, including many who sold on the same ecommerce platforms on which OJC sells. SOF ¶¶ 32, 88, 96. Likewise, OJC was free to acquire and sell toy kitchens from any number of other suppliers, and, after the lawsuit began, OJC actually did just that. *Id.* ¶ 92. And OJC was free to continue selling NH toy kitchens, as it did. *Id.* ¶¶ 90–92, 94. Nothing about KidKraft's termination of OJC as a reseller of its products foreclosed general competition or had any significant impact on the market. In fact, the evidence actually shows NH's sales of toy kitchens skyrocketed after KidKraft stopped selling its toy kitchen through OJC. *Id.* ¶ 95.

This case represents (at most) a loss of some sales volume by OJC, not harm to competition in the overall market. C. Vellturo Decl. ¶¶ 6, 40–47. But "harm to an individual competitor or consumer is not sufficient"—the challenged conduct "must tend to cause harm to competition." *Mr. Furniture Warehouse, Inc. v. Barclays American/Commercial Inc.*, 919 F.2d 1517, 1522 (11th Cir. 1990); *see also, e.g., Spanish Broad, Sys.*, 376 F.3d at 1071–72.

### C.    KidKraft Terminated OJC to Protect Its Legitimate Business Interests.

Summary judgment is also proper because Plaintiffs have failed to offer any evidence showing that KidKraft lacked a legitimate business reason for terminating OJC. *See, e.g., Tech. Res. Serv..*, 134 F.3d at 1466 (11th Cir. 1998) ("A defendant can escape § 2 liability if the defendant's actions can be explained by legitimate business justifications."); *Morris Commc'ns Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 1298 (11th Cir. 2004) (granting summary judgment for defendant where "[t]he prevention of free-riding, which is an inherently economic motivation, provides a valid business justification on the facts presented").

KidKraft terminated OJC as a reseller because OJC's sales of KidKraft products "▮▮▮▮▮▮" (in the words of OJC's CEO), and because KidKraft determined that the detrimental impact that OJC's actions had on KidKraft's brand and reputation outweighed any benefit of continuing to do business with OJC.  SOF ¶¶ 18–20, 27–34; C. Vellturo Decl. ¶¶ 6, 48–54.  It no longer made business sense for KidKraft to continue to work with a reseller it could not trust.  *Id.* ¶ 29.  Further, during the same time period, KidKraft also decided to reduce the number of resellers selling its products in order to focus more on resellers that were committed to building the KidKraft brand and presenting its products attractively to consumers, and thereby to improve KidKraft's brand value, expand KidKraft's sales, and improve its overall standing in the competitive marketplace.  *Id.* ¶ 31.[4]  It is not an antitrust violation for a supplier to terminate a retailer for these reasons.[5]

## III.   Plaintiffs Have Failed to Prove that KidKraft Has Monopoly Power.

Plaintiffs' antitrust claims also fail because they cannot show that KidKraft has monopoly power or a dangerous probability of achieving monopoly power.  *See Levine*, 72 F.3d at 1553–56; C. Vellturo Decl. ¶¶ 6, 94–100.

For Sherman Act purposes, "[m]arket power is the ability to raise price profitably *by restricting output*."  *American Express*, 138 S.Ct. at 2288 (2018) (emphasis original) (citation omitted).  Even if the relevant product market at issue could plausibly be limited to only "wooden play kitchens" (and it cannot), Plaintiffs have not met their burden to establish that KidKraft possesses sufficient market power to prove its antitrust claims in that market.  Plaintiffs allege that KidKraft has a market share of 70+ percent.  That number is inflated, but regardless, simply pointing to KidKraft's market *share* is not enough to establish that KidKraft has market *power*.  *See, e.g., Crossroads Cogeneration Corp. v. Orange & Rockland Utils.*,

---

[4]   Other companies have similarly perceived OJC to be a bad actor, and decided not to do business with it as a result.  SOF ¶ 35.

[5]   *See, e.g., Unijax, Inc. v. Champion Intern., Inc.*, 683 F.2d 678, 685 (2d Cir. 1982) (no antitrust violation where "evidence merely demonstrates that [manufacturer] was dissatisfied with [distributor's] performance . . .  A contrary position would subject manufacturers to threats of antitrust sanctions whenever they tried to improve a sagging market position.");  *Lamarca v. Miami Herald Pub. Co.*, 395 F.Supp.324, 327 (S.D. Fla. 1975), *aff'd* 524 F.2d 1230 (5th Cir. 1975) ("A manufacturer may legally change the system of distribution of its products when sound business consideration dictate that a different system be used");  *Healthco*, 1989 WL 104064, at *8; *Timken*, 299 F.2d at 842.

159 F.3d 129, 141 (3d Cir. 1998) ("Alleging market share alone is not sufficient to state a claim under the Sherman Act."); *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 109 (2d Cir. 2002) (affirming summary judgment because "[a]bsent additional evidence, such as an ability to control prices or exclude competition, a 64 percent market share is insufficient to infer monopoly power").[6]

Here, the evidence establishes that there are no significant barriers to entry in the market for toy kitchens. It is not difficult for any would-be supplier to line up manufacturing capabilities in China—just like NH did when it started making its own knock-off toy kitchen. *Id.* ¶¶ 81–84. The absence of significant entry barriers is amply illustrated by Teamson, which was a tiny new entrant in 2014 and 2015, and then won the Costco account away from KidKraft in 2017. *Id.* ¶¶ 53, 80, 85. Similarly, Jupiter entered the market and quickly won the Sam's Club account from KidKraft in 2017 and 2018. *Id.* ¶¶ 56, 80. The evidence further shows that KidKraft competes intensely against a broad range of other suppliers (Melissa & Doug, Ikea, Hape, Little Tikes, Step2, and others). *Id.* ¶¶ 80, 87, 89.

Plaintiffs will no doubt argue that KidKraft is the largest supplier of wooden toy kitchens or point to snippets or adjectives from documents. But the marketplace facts here—which are undisputed—show that KidKraft has no power raise market prices by restricting its output, and therefore it has no monopoly power. *American Express,* 138 S.Ct. at 2288. Entry is easy, and it is undisputed that KidKraft lost a number of large accounts in the 2016-2018 period—including Costco, Sam's Club, Walmart, Toys R Us, and others—as new entrants and existing competitors grew dramatically at KidKraft's expense. SOF ¶¶ 80–89. This is no monopoly. See C. Vellturo Decl. ¶¶ 6, 94–98, 99 ("Monopoly power requires the ability to exclude com-petition. That power is notably absent here."), 100.

---

[6]   *See also Am. Prof'l Testing Serv., Inc., v. Harcourt Brace Jovanovich Legal & Prof'l Pub., Inc.*, 108 F.3d 1147, 1154 (9th Cir. 1997) ("Even if [a defendant] has a high market share, neither monopoly power nor a dangerous probability of achieving monopoly power can exist absent evidence of barriers to new entry or expansion."); *Am. Council of Certified Podiatric Physicians and Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 623 (6th Cir. 1999) ("The difficulty of entry into the market is relevant because if entry is easy, even a firm holding a commanding percentage of the market cannot charge a price above the competitive price, for once it does, competitors will enter the market and undercut the firm's price.").

IV.   **As a Matter of Law, MidOcean and KidKraft Cannot Conspire With One Another For the Purposes of Antitrust Law.**

In an effort to bolster their claims, Plaintiffs asserted a Sherman Act Section 1 claim against MidOcean, claiming that there was a conspiracy between MidOcean and KidKraft to terminate OJC.  *See* Compl. ¶¶ 63–74.  This is plainly not a viable claim.  The first element of a Sherman Act Section 1 claim is that Plaintiffs must identify two "entit[ies] with separate and distinct corporate interests" that have conspired with one another.  *McArthur Dairy LLC v. McCowtree Bros. Dairy, Inc.*, 2011 WL 2118701, at *7 (S.D. Fla. 2011) (Cooke, J.); *Copperweld*, 467 U.S. at 770–71.  KidKraft and MidOcean are NOT separate independent actors capable of conspiring, as MidOcean owns and controls KidKraft.  SOF ¶¶ 2–6.  Under *Copperweld,* they are, therefore, incapable of conspiring with one another.  Each of the following factors is independently sufficient to establish that KidKraft cannot conspire with MidOcean:

- MidOcean owned 57% of KidKraft in November 2016 and owns 80% today.  SOF ¶ 3; *Century Oil Tool, Inc. v. Prod. Spec., Inc.*, 737 F.2d 1316, 1317 (5th Cir. 1984) (holding that sister companies could not conspire and noting that 100% common ownership is not necessary to invoke *Copperweld*); *Direct Media Corp. v. Camden Tel. & Tel. Co.*, 989 F. Supp. 1211, 1217 (S.D. Ga. 1997) (parent and its 51%-owned subsidiary cannot conspire);

- MidOcean appoints a majority of the KidKraft Board of Directors, and therefore controls the hiring and firing of KidKraft's officers, as well as the strategic direction of KidKraft.  SOF ¶ 4; *Sonitrol of Fresno, Inc. v. AT & T*, 1986 WL 953, at *5 (D.D.C. April 30, 1986) (noting that if AT&T had legal control of the board of directors of its *minority*-owned subsidiaries, then AT&T would not have the capability to conspire with its subsidiaries in violation of Section 1); *Bell Atl. Bus. Sys. Servs. v. Hitachi Data Sys. Corp.*, 849 F. Supp. 702, 707 (N.D. Cal. 1994) (two subsidiaries under common ownership cannot conspire where the parent has legal control over them, even though one is not wholly owned).

- MidOcean has specific approval rights over major corporate decisions of KidKraft, including the hiring and firing of the CEO. SOF ¶¶ 5–6; *Arrington v. Burger King Worldwide*, 2020 WL 2479690, at *5 (S.D. Fla. March 24, 2020) (concluding that franchisees are a single economic entity, despite "some residual economic autonomy," because the franchisees were not set up to be competitors of the franchisor).

- MidOcean has no economic interest independent of KidKraft's as it relates to wooden toy kitchens, as MidOcean's only involvement in the toy industry is its investment and control over KidKraft.  SOF ¶ 2; C. Vellturo Decl. ¶¶ 6, 102–03; *American Needle, Inc. v. Nat'l Football League*, 130 S. Ct. 2201, 2212-15 (2010) (the "key" to the analysis is whether the alleged concerted action "joins together separate decisionmakers,"

19

such that an agreement among "separate economic actors pursuing separate economic interests . . . deprives the marketplace of independent centers of decisionmaking") (citation omitted); *Shaw v. Rolex Watch, U.S.A.*, 673 F. Supp. 674, 678 (S.D.N.Y. 1987) (concluding that a "not [] wholly owned" subsidiary could not conspire with other entities that were under "common ownership and control" because the alleged conspiracy did "not threaten to bring two previously competing entities together as one").

As a matter of law, any collaboration between MidOcean and its majority-owned portfolio company is not the sort of relationship subject to scrutiny under Section 1.

## V.   As a Matter of Law, MidOcean Cannot Have Tortiously Interfered with KidKraft's Contracts or Business Relationships.

Under Florida law, a plaintiff alleging tortious interference with a business relationship must establish "an intentional and unjustified interference with the relationship by the defendant." *Temurian v. Piccolo*, 2019 WL 1763022, at *8 (quoting *Duty Free Americas*, 797 F.3d at 1279). "For the interference to be unjustified, the interfering defendant must be a third party, a stranger to the business relationship." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So.2d 381, 386 (Fla. 4th Dist. Ct. App. 1999)). As such, an owner with direct control over a company and "a significant financial interest" in the company cannot tortiously interfere with that company's business relationship. *Volvo Aero Leasing, LLC v. VAS Aero Servs., LLC,* 268 So.3d 785, 790 (Fla. 4th Dist. Ct. App. 2019). As described above, MidOcean is the majority and controlling owner of KidKraft, and it is therefore not a stranger to KidKraft's business relationships. Accordingly, Plaintiffs' tortious interference claim against MidOcean fails as a matter of law. *Id*.

Moreover, Plaintiffs conceded at the motion to dismiss hearing that the only torts they allege are the alleged actions underlying the antitrust claims. Thus, if their antitrust claims fail, so too must their tortious interference claim. *See* Dkt. 101 (Hearing Tr.), at 23–26, 30; *see also Metzler v. Bear Automotive Service Equipment Co.*, 19 F. Supp. 2d 1345, 1364 (S.D. Fla. 1998) ("where the tort is grounded on precisely the same 'anticompetitive' behavior alleged in the failed antitrust claim, it cannot as a matter of law constitute tortious interference with a business relationship").

### CONCLUSION

For all of the reasons detailed above, Defendants respectfully request that the Court grant Defendants' motion for summary judgment and award it judgment on all of Plaintiffs' claims as a matter of law.

DATED:  May 28, 2020  Respectfully submitted,

/s/ Joshua Lipton
Joshua Lipton (*Pro Hac Vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:    202.955.8500
Facsimile:     202.467.0539
jlipton@gibsondunn.com

Scott K. Hvidt (*Pro Hac Vice*)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue
Dallas, Texas  75201-6911
Telephone:  (214) 698-3317
Facsimile:  (214) 571-2981
shvidt@gibsondunn.com

-and-

Lawrence D. Silverman, Esq.
Florida Bar Number:  7160
Email:  lawrence.silverman@akerman.com
Alexandra M. Mora, Esq.
Florida Bar Number:  052368
Email:  alexandra.mora@akerman.com
AKERMAN LLP
Three Brickell City Centre
98 Southeast Seventh Street
Suite 1100
Miami, FL  33131
Phone:  (305) 374-5600
Fax:  (305) 374-5095

ATTORNEYS FOR DEFENDANTS

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 28th day of May, 2020, a true and correct copy of the foregoing brief was served via the Court's CM/ECF System upon all counsel of record.

<u>/s/ Lawrence D. Silverman</u>
Lawrence D. Silverman

# DE 255

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 19-60341-Civ-COOKE/SNOW**

OJ COMMERCE LLC, and
NAOMI HOME, INC.,

      Plaintiffs,

vs.

KIDKRAFT LP,
and MID-OCEAN PARTNERS LP

      Defendants.

_____/

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT

    This matter is before the Court on Defendants' Motion for Summary Judgment ("Motion") (ECF NO. 130).  As discussed below, the Motion is **GRANTED**.

### I.    BACKGROUND

    This is an antitrust action brought by Plaintiffs OJ Commerce, LLC and Naomi Home, Inc. against Defendants KidKraft Inc. and Mid-Ocean Partners L.P asserting the following causes of action: (i) monopolization under Section 2 of the Sherman Act; (ii) attempted monopolization under Section 2 of the Sherman Act; (iii) concerted refusal to deal under Section 1 of the Sherman Act; (iv) conspiracy to commit concerted refusal to deal under Section 1 of the Sherman Act; and (v) tortious interference with a contract and business relationship. *See* ECF No.1 at 8-12.

    OJ Commerce, LLC ("OJC") is an online retailer that sells products to consumers through its website.  ECF No. 131-1 at 2; ECF No. 144 at 2.  OJC is also an "aggressive discounter," offering products to consumers at discounted prices.  ECF No. 144 at 16.  Naomi Home, Inc. ("Naomi Home") manufactures wooden play kitchens.  Naomi Home and OJC are owned by the same individual, Jacob Weiss.  ECF No. 131-1 at 3; ECF No. 144 at 2. KidKraft LP ("KidKraft") is a family owned manufacturer that sells many products including kids' furniture and wooden play kitchens.  ECF No. 131-1 at 2; ECF No. 144 at 2.  Mid-

Ocean Partners LP ("Mid-Ocean") is a private equity firm with some ownership interest in KidKraft.

Since 2011, OJC and KidKraft have had an agreement under which OJC was allowed to sell KidKraft products—including its wooden play kitchens—on its online platform. ECF No. 131-1 at 3; ECF No. 144 at 2. In 2012 or 2013, Naomi Home began manufacturing wooden play kitchens, and OJC began selling Naomi Home's wooden play kitchens sometime in 2013. ECF No. 131-1 at 3; ECF No. 144 at 2. Sometime after OJC started selling Naomi Home's wooden play kitchens, Matan Wolfson, a representative or employee of KidKraft had a conversation with Jacob Weiss about the Naomi Home wooden play kitchens. ECF No. 144-1- at 78-81. According to Weiss, who did not recall the exact details of the conversation, Wolfson was "very angry" about OJC selling what Wolfson reportedly considered a "competitive product." ECF No. 144-1- at 78-81. On the same call, Weiss offered to ensure that his company would refrain from producing any more products that would compete with KidKraft. ECF No. 144-1- at 78-81. This offer was never formally accepted, according to Weiss. ECF No. 144-1- at 78-81.

According to KidKraft's Executive Vice President of Sales, Chris Light, OJC's sister company's production and sale of its wooden play kitchens transformed OJC from customer to competitor in a manner that raised concerns about whether OJC could continue to advance KidKraft's interests. ECF No. 235-14 at 7. According to KidKraft, Naomi Home's wooden play kitchen was a "knock off" of KidKraft's wooden kitchens, and OJC was using KidKraft's as a "prop" to sell its sister company's wooden play kitchens. ECF No. 235-14 at 7; ECF No. 131-5 at 3. OJC disputes these statements. According to OJC, Mid-Ocean induced and directed KidKraft to terminate its relationship with OJC. ECF No. 144 at 16.

OJC continued to sell Naomi Home's wooden play kitchens, and in 2016, KidKraft terminated the agreement that allowed OJC to sell KidKraft's wooden play kitchens. There were some discussions about reestablishing the business arrangement, but the parties were not able to resolve their differences. After the failure to resolve this issue, Plaintiffs brought this lawsuit alleging antitrust violations and one state law claim. Defendants moved to dismiss the complaint, which the Court denied. *See* ECF No. 49. Defendants now move this Court for summary judgment on numerous grounds. Although Plaintiffs initially sought denial of

the motion on grounds enumerated in Rule 56(d), Plaintiffs have now conducted additional discovery and both parties have supplemented their briefs.

## II.    LEGAL STANDARD

Summary judgment is proper "when the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1314 (11th Cir. 2011); *see* Fed. R. Civ. P. 56(a), (c). Thus, the existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion. A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could find for the non-moving party. In determining whether a genuine dispute of material fact exists, the court must view the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party and must resolve any reasonable doubts in the non-movant's favor. The non-moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant must go beyond the pleadings and "identify affirmative evidence" that creates a genuine dispute of material fact." *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998). "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).

## III.    DISCUSSION

OJC and Naomi Home allege: two antitrust claims under Section 2 of the Sherman Act: monopolization and attempted monopolization; two antitrust claims of concerted refusal and concerted refusal to deal under Section 1 of the Sherman Act; and one claim of tortious interference with a contract and business relationship. The Court addresses each claim in turn.

### A. Monopolization Claim

The Complaint alleges that KidKraft unilaterally terminated its relationship with OJC to maintain monopoly power in the relevant market and for anti-competitive reasons.

Section 2 of the Sherman Act prohibits monopolizing or attempting to monopolize "any part of the trade or commerce among the several States." 15 U.S.C. § 2. Merely possessing "monopoly power[,] [however,] will not be found unlawful unless it is accompanied by an element of anticompetitive conduct." *Verizon Commc'ns Inc. v. Law Offices of Curtis v. Trinko, LLP*, 540 U.S. 398, 407 (2004). It is "the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Id.*

Businesses are generally free to choose the parties with whom they wish to deal, and monopolists are not excluded from this general rule. *Morris Communs. Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 1295 (11th Cir. 2004). This rule is not without exceptions. The Supreme Court has opined that there are some limited circumstances under which a refusal to deal can constitute anti-competitive conduct that gives rise to antitrust liability. *See Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 608-611, (1985). *See also Trinko, LLP*, 540 U.S. at 408 (2004) ("Under certain circumstances, a refusal to cooperate with rivals can constitute anticompetitive conduct and violate § 2. We have been very cautious in recognizing such exceptions…."). Before assessing whether there has been a Sherman Act violation, the Court must first determine the relevant market and whether the defendant possesses monopoly power in that market.

## 1. The Relevant Market & Monopoly Power

The relevant market is made up of two components: the geographic market and the product market. *Duty Free Americas, Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1263 (11th Cir. 2015). The Complaint alleges that the relevant geographic market is the continental entire United States, and that that the relevant product market is the wholesale markets for wooden play kitchens. *See* ECF No. 1 at ¶¶ 17, 22. There is at least a genuine issue of material fact regarding what the relevant product market is and whether KidKraft possess monopoly power that market. Plaintiffs' expert opined that KidKraft had over 70% market share in the wooden play kitchen market in 2017 and 2018. ECF No. 144-3 at ¶ 48. Although Defendants' expert contends that "a wood-only market is not a valid antitrust market," Defendants' expert's report notes that KidKraft held at least 50% market share in the wooden play kitchen market in 2017 and 2018. Defendants' expert also suggests that the relevant product market might be toy kitchens as a whole—including plastic toy kitchens. Plaintiffs' expert disagrees

with this definition of the relevant product market. *McWane, Inc. v. F.T.C.*, 783 F.3d 814, 828 (11th Cir. 2015) (defining a product market as "products that have reasonable interchangeability for the purposes for which they are produced").

Plaintiff has established that material issues of fact exist as to the relevant product market and market power, making summary judgment on this issue inappropriate. *See Duty Free Americas, Inc.*, 797 F.3d at 1263 ("Defining the relevant product market is a fact-intensive endeavor."). In any event, whether or not KidKraft possessed monopoly power in the wooden play kitchen market or in another yet to be determined relevant product market, Defendants are entitled to summary judgment as discussed below.

## 2.  Refusal to Deal

Plaintiffs seek to hold KidKraft liable under Section 2 of the Sherman Act for its refusal to deal with OJC because OJC continued selling Naomi Home's wooden play kitchens. OJC sold KidKraft's wooden play kitchens on its online platform between 2011 and 2016. In 2013, OJC's sister company began selling its own wooden play kitchens on OJC's online platform. Although the parties disagree about why, KidKraft ultimately ended the agreement that allowed OJC to sell its wooden play kitchens.

Unilateral conduct is generally protected from antitrust liability. Even monopolists are not required to do business with rivals. In *Aspen*, the Supreme Court recognized a narrow exception to this general rule. In that case, the defendant owned three of four ski mountains in the relevant market and plaintiff owned the fourth. The parties had maintained a joint venture under which they sold a joint ticket to customers. This joint ticket provided admission to all four ski mountains, and the parties shared the profits according to mountain usage percentage. At some point, the defendants proposed a new business structure under which plaintiff would receive a fixed profit percentage, instead of a profit allocation based on usage. The fixed percentage was much lower than what plaintiff had earned in the past based on the usage of its mountain, so plaintiff rejected the offer. Defendant subsequently stopped including plaintiff's mountain in the joint ticket. Plaintiff tried to attract customers by offering its own three-day pass which also included three vouchers to defendant's ski mountains. The defendant, however, refused to honor these vouchers. On these facts, the Supreme Court found that the jury could have concluded that the defendant "elected to forgo…short-run benefits because it was more interested in reducing competition in the Aspen market over the

long run by harming its smaller competitor." *Id.* at 608.  The Supreme Court has clarified that *Aspen* is a limited exception to the rule, and that it falls "at or near the outer boundary of § 2 liability" for unilateral conduct.  *Trinko*, 540 U.S. at 409.

For the *Aspen* exception to apply, "the monopolist's conduct must be irrational but for its anticompetitive effect." *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1075 (10th Cir. 2013).  Critical to the outcome in *Aspen* was the fact that competition was destroyed in the relevant market by the monopolist's conduct.  Terminating the joint venture in that case was irrational but for its anti-competitive goal of phasing out the fourth ski lodge's business eventually.  This is hardly the case here.  Although the Court does not find this case to fall within the *Aspen* exception, even if it did, Plaintiffs' failure to establish harm to competition is fatal to their anti-trust claims.

### 3. Harm to Competition

Harm to competition is a necessary element of all private antitrust claims. *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1069 (11th Cir. 2004).  Alleging and showing harm to one or more competitors will not suffice.  Here, Plaintiffs allege and contend that KidKraft's refusal to deal with OJC harmed competition in the form of increased prices and lowered consumer production selection.  Harm to competition can be shown through "reduction of output, increase in price, or deterioration in quality" and the plaintiff claiming such harm "should point to the specific damage done to consumers in the market." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1339 (11th Cir. 2010).  The Complaint here does not even allege these specific facts, and Plaintiffs have not provided evidence of competitive harm.  Sure, Plaintiffs assert that KidKraft did in fact raise the price of its wooden play kitchens in 2017 and in 2018.  However, "[h]igher prices alone are not the epitome of anticompetitive harm.  Rather, consumer welfare, understood in the sense of allocative efficiency, is the animating concern of the Sherman Act." *Id.*

Plaintiffs' expert also opines that the termination of the agreement caused harm to competition. *See* ECF No. 144-3 at 34.  The report states that KidKraft's threat caused Naomi Home to halt production of some other new items that it would otherwise have continued to produce and ultimately provided to the public. *Id.*  In addition to being speculative, the harm described here is harm to competitors—not harm to the competition process in general, as required by law.  As such, Plaintiffs have failed to establish harm to competition.

Where Plaintiff cannot show actual damage to competition, Plaintiff can show anti-competitive effect by alleging and ultimately showing potential for genuine adverse effects on competition.  To benefit from this alternative method of showing competitive harm, however, Plaintiff needs to, at minimum, "define the relevant market and establish that the defendants possessed power in that market." *Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1213 (11th Cir. 2002).  Here the Court has concluded that there are genuine issues of material fact regarding the relevant market and market power.  However, even if these were adequately defined and uncontested, and KidKraft's market share was sufficient to establish market power, this, by itself, would be insufficient to establish adverse effect.  *Spanish Broad. Sys.*, 376 F.3d at 1073 ("Market power, while necessary to show adverse effect indirectly, alone is insufficient.") (quoting *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 97 (2d Cir. 1998)).

#### 4.  Business Justification for Refusal to Deal

"[R]efusal to deal that is designed to protect or further the legitimate business purposes of a defendant does not violate the antitrust laws, even if that refusal injures competition." *Morris Communs*, 364 F.3d at 1295.  "A legitimate purpose renders any accompanying purpose irrelevant; regardless of motive no firm has a general duty to injure itself in order to benefit a rival." *Id.* at 1284 (quoting Areeda, Antitrust Law, Vol. IIIA, P1613(b) at 211).  Once a defendant has shown valid business justifications, the burden shifts and the plaintiff must show that the defendant's business justifications are pretextual.  *Id.*

KidKraft has asserted various reasons for its decision to terminate its agreement with OJC:  it determined that the Naomi Home kitchens was a "knock off" of KidKraft's kitchen (ECF No. 137-57 at 2; 137-58 at 2); OJC's sales of KidKraft plummeted, which KidKraft took as an indication that OJC was less focused on selling its kitchens; KidKraft believed that OJC was using KidKraft's kitchen as a "prop" to sell the Naomi Home toy kitchen; KidKraft believed that OJC's use of KidKraft as described was detrimental to Kidkraft; and KidKraft considered OJC to be a difficult and costly customer to work with because OJC's disputes with the sales and accounting team consumed a significant portion of KidKraft's time and resources. These justifications are mostly supported by deposition testimony from Chris Light, KidKraft's Executive Vice President of Sales.  Although it is questionable whether

Defendants have met their burden of establishing legitimate business justifications, the Court does not need to decide this issue because Plaintiffs have not shown harm to competition.[1]

## B. Attempted Monopolization Claim

Plaintiffs also assert an attempted monopolization claim under Section 2 of the Sherman Act, which prohibits attempts to monopolize.  Also necessary to succeeding on a claim of attempted monopolization is establishing harm to competition.  *Spanish Broad.*, 376 F.3d 1065, 1069 (11th Cir. 2004).  Because Plaintiffs have failed to show harm to competition in general, their attempted monopolization claim also fails.

## C. Concerted Refusal and Conspiracy to Commit Concerted Refusal to Deal

Relying heavily on *Copperweld*, Defendants argue that Plaintiffs' concerted refusal to deal claims fail as a matter of law because KidKraft and Mid-Ocean are not separate entities. Liability under Section 1 of the Sherman Act requires prohibited behavior between two separate entities.  In *Copperweld*, the Supreme Court opined that "[a] parent corporation and its wholly owned subsidiary are incapable of conspiring with each other for purposes of § 1 of the Sherman Act."  *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 777 (1984).  The parties agree that Mid-Ocean does not *wholly* own KidKraft.  Defendants, however, argue that Mid-Ocean controls KidKraft, and is thus incapable of conspiring with it.  Plaintiffs dispute whether this is, in fact, true, and the record indicates that there is at least a genuine issue of material fact on this issue.  Although the Court agrees with Plaintiffs that the issue is material and disputed, summary judgment is still due to be granted because Plaintiffs have not shown the necessary element of harm to competition.

## D. Tortious Interference with Contract or Business Relationship

At the hearing on Defendants' motion to dismiss, Plaintiffs conceded that their state law claim relies on their ability to succeed on their antitrust claim.  Having failed to establish their anti-trust claims, the Court also grants summary judgment.  Moreover, an element of a

---

[1] The Court also notes that Plaintiffs have not meaningfully responded to Defendants' assertions of legitimate business purposes.  Plaintiffs' main response to these assertions is that OJC was never informed of these reasons, even during negotiations to reinstate the agreement, and that KidKraft's failure to inform OJC of these reasons is evidence that they are pretextual.  ECF No. 144 at page 29.  However, the Court notes that the record contains enough evidence from which a jury could conclude that at least one of the reasons provided are pretextual.  For example, although KidKraft maintains that one of the reasons it ended its relationship with OJC was OJC's status as a difficult customer, Chris Light testified that KidKraft did not cut OJC off from all its other products.  *See* ECF No. 235-14 and 3-4.

tortious interference claim under Florida law is the absence of *any* justification, which Plaintiffs have not alleged or shown here.   *See Johnson Enters, of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1321 (11th Cir. 1998).

## IV.   CONCLUSION

Defendants' Motion for Summary Judgment (ECF NO. 130) is **GRANTED** as explained above.  The **CLERK** will **CLOSE** this case.  All other pending motion, if any, are **DENIED** *as moot*.

**DONE and ORDERED** in Chambers, in Miami, Florida, this 30th day of March 2021.

*Marcia G. Cooke*
_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Lurana S. Snow, U.S. Magistrate Judge*
*Counsel of Record*

**DE 256**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.: 0:19-CV-60341-CIV-COOKE/SNOW**

OJ COMMERCE LLC,
and NAOMI HOME, INC.,

      Plaintiffs,

v.

KIDKRAFT, INC., and
MIDOCEAN PARTNERS IV, L.P.,

      Defendants.

_____/

**PLAINTIFFS' NOTICE OF APPEAL**

      Pursuant to Fed. R. App. P. 3 and 4, notice is hereby given that all plaintiffs in the above-referenced case hereby appeal to the United States Court of Appeals for the Eleventh Circuit from the Order on Defendants' Motion for Summary Judgment (ECF No. 255) entered in this action on the 31st day of March, 2021.

Dated:  April 29, 2021             Respectfully submitted,

                     By: */s/ Velvel Devin Freedman*
                         Velvel (Devin) Freedman
                         Florida Bar No. 99762
                         Constantine Economides
                         Florida Bar No. 118177
                         **ROCHE FREEDMAN LLP**
                         P.O. Box 654139
                         Miami, Florida 33265
                         vel@rcfllp.com
                         ceconomides@rcfllp.com

                         Mark A. Schweikert
                         Florida Bar No. 70555
                         **SCHWEIKERT LAW PLLC**
                         1111 Biscayne Blvd., Suite 1550

Miami, Florida 33131
(305) 926-9452
mark@schweikertlaw.com

Shlomo Y. Hecht, P.A.
Florida Bar No.: 127144
11651 Interchange Cir S
Miramar, FL 33025
Phone: 954-861-0025
Fax: 615-413-6404
Email: sam@hechtlawpa.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 29, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Velvel Freedman*
VELVEL (DEVIN) FREEDMAN

2

**Certificate of Service**

I hereby certify that on July 21, 2021, a true and correct copy of the foregoing

*Plaintiffs-Appellants' Public Appendix* has been sent and served via CM/ECF, to all

counsel of record.

Dated: July 21, 2021        By: <u>/s/ Velvel (Devin) Freedman</u>
                                     Velvel (Devin) Freedman